# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

## No. 3:21-cv-356

FEDS FOR MEDICAL FREEDOM;

LOCAL 918, AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES;

HIGHLAND ENGINEERING, INC.;

RAYMOND A. BEEBE, JR.;

JOHN ARMBRUST;

N. ANNE ATKINSON;

JULIA BADGER;

MICHAEL BALL;

CRAIGAN BIGGS;

LAURA BRUNSTETTER;

MARK CANALES;

MICHELE CARAMENICO;

ANDREW CHAMBERLAND;

DAVID CLARK;

DIANE COUNTRYMAN;

KEVIN DANTUMA;

JOSE DELGADO;

JORDAN DEMANSS;

GEORGE DEMETRIOU;

KERI DIVILBISS;

MERCER DUNN IV;

WILLIAM FILKINS;

JONATHAN GRAGG;

BRYON GREEN;

THOMAS DAVID GREEN;

ERIKA HEBERT;

PETER HENNEMANN;

NEIL HORN;

CAREY HUNTER-ANDREWS;

TANA JOHNSTON;

TYLER KLOSTERMAN;

DEBORAH LAWSON;

DAN LEWIS;

MELISSA MAGILL;

KENDRA ANN MARCEAU;

DALIA MATOS;

STEPHEN MAY;

STEVEN MCCOMIS;

CHRISTOPHER MILLER;

JOSHUA MOORE;

BRENT MOORES;

JESSE NEUGEBAUER;

JOSHUA NICELY;

LESLIE CARL PETERSEN;

PATTI RIVERA;

JOSHUA ROBERTS;

ASHLEY RODMAN;

M. LEEANNE RUCKER-REED;

TREVOR RUTLEDGE;

NEVADA RYAN;

JAMES CHARLES SAMS III;

MICHAEL SCHAECHER;

CHRISTINA SCHAFF;

KURTIS SIMPSON;

BARRETT SMITH;

JACI RENEE SMITH;

JAROD SMITH;

JANA SPRUCE;

JOHN TORDAI;

SANDOR VIGH;

CHRISTINE VRTARIC;

PAMELA WEICHEL;

DAVID WENTZ;

JASON WILKERSON;

PATRICK WRIGHT;

PATRICK MENDOZA YORK,

*Plaintiffs*,

v.

JOSEPH R. BIDEN, JR., in his official capacity as President of the United States; THE UNITED STATES OF AMERICA;

PETE BUTTIGIEG, in his official capacity as Secretary of Transportation; DEPARTMENT OF TRANSPORTATION;

JANET YELLEN, in her official capacity as Secretary of Treasury; DEPARTMENT OF TREASURY;

DEB HAALAND, in her official capacity as Secretary of Interior; DEPARTMENT OF INTERIOR;

BILL NELSON, in his official capacity as Administrator of the National Aeronautics and Space Administration; NATIONAL AERONAUTICS AND SPACE ADMINISTRATION;

KILOLO KIJAKAZI, in her official capacity as Acting Commissioner of Social Security; SOCIAL SECURITY ADMINISTRATION;

MARCIA FUDGE, in her official capacity as Secretary of Housing and Urban Development; DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT;

DENIS MCDONOUGH, in his official capacity as Secretary of Veterans Affairs; DEPARTMENT OF VETERANS AFFAIRS;

LLOYD J. AUSTIN III, in his official capacity as Secretary of Defense; DEPARTMENT OF DEFENSE;

MERRICK B. GARLAND, in his official capacity as Attorney General; DEPARTMENT OF JUSTICE;

ALEJANDRO MAYORKAS, in his official capacity as Secretary of Homeland Security; DEPARTMENT OF HOMELAND SECURITY;

SAMANTHA POWER, in her official capacity as Administrator of the United States Agency for International Development; UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT;

TOM VILSACK, in his official capacity as Secretary of Agriculture; DEPARTMENT OF AGRICULTURE;

JENNIFER M. GRANHOLM, in her official capacity as Secretary of Energy; DEPARTMENT OF ENERGY;

ANTONY BLINKEN, in his official capacity as Secretary of State; DEPARTMENT OF STATE;

WILLIAM J. BURNS, in his official capacity as Director of the Central Intelligence Agency; CENTRAL INTELLIGENCE AGENCY;

JEFFREY ZIENTS, in his official capacity as co-chair of the Safer Federal Workforce Task Force; SAFER FEDERAL WORKFORCE TASK FORCE;

LESLEY A. FIELD, in her official capacity as
Federal Acquisition Regulatory Council
member; MATTHEW C. BLUM, in his official
capacity as Federal Acquisition Regulatory
Council member; JEFFREY A. KOSES, in his
official capacity as Federal Acquisition
Regulatory Council member; JOHN M.
TENAGLIA, in his official capacity as Federal
Acquisition Regulatory Council member;
KARLA S. JACKSON, in her official capacity
as Federal Acquisition Regulatory Council
member; FEDERAL ACQUISITION
REGULATORY COUNCIL;

SHALANDA D. YOUNG, in her official
capacity as Acting Director of the Office of
Management and Budget; OFFICE OF
MANAGEMENT AND BUDGET;

ROBIN CARNAHAN, in her official capacities
as Administrator of the General Services
Administration and Co-Chair of Safer Federal
Workforce Task Force; GENERAL SERVICES
ADMINISTRATION;

KIRAN AHUJA, in her official capacities as
Director of the Office of Personnel
Management and Co-Chair of Safer Federal
Workforce Task Force; OFFICE OF
PERSONNEL MANAGEMENT;

AVRIL HAINES, in her official capacity as
Director of National Intelligence; OFFICE OF
THE DIRECTOR OF NATIONAL
INTELLIGENCE;

DANIEL HOKANSON, in his official capacity
as Chief of the National Guard Bureau;
NATIONAL GUARD BUREAU;

GINA M. RAIMONDO, in her official capacity
as Secretary of Commerce; DEPARTMENT OF
COMMERCE;

MARTY WALSH, in his official capacity as
Secretary of Labor; DEPARTMENT OF
LABOR,

*Defendants.*

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.      Over a million Americans—hundreds of whom are named in this complaint

as plaintiffs or as supporters—who serve as federal employees and contractors have been

put in an intolerable bind: either submit to forced vaccination pursuant to illegal agency

mandates, or forfeit a career built up over years or decades of faithful public service.

2.      As part of an acknowledged "ultimate work-around" for the absence of valid

authority for a nationwide vaccine mandate, *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604,

612 n.13 (5th Cir. 2021), every federal agency has now mandated that its employees be

fully vaccinated by November 22, 2021 (which means receiving the last required shot by

November 8), or face cascading discipline, up to termination. Agencies issued these

binding rules by implementing "guidance" issued by the Safer Federal Workplace Task

Force ("Task Force"). Similarly, all agencies, at the command of the Office of Management

and Budget and Federal Acquisition Regulatory Council, have now implemented separate

"guidance" issued by the Task Force for contractors; these implementing directives require

that all government contracts include a clause requiring contractors to vaccinate almost all

of their employees by early January 2022, regardless of how tangential their connection is to federal contracting.

3.      These actions are reviewable under the long-established ultra vires cause of action. As court after court across the country has now held, none of the purported statutory authorities relied on by the President or federal agencies contains "clear language" allowing the Executive branch to undertake the economically and politically seismic act of mandating vaccines for so many Americans—an area of law traditionally reserved to the States and (at the very least) at the limits of Congress's own constitutional powers—under the guise of procurement and employee conduct regulations.

4.      Because the President acted beyond his lawful authority in issuing the Executive Orders, and the defendant agencies have likewise acted beyond their lawful authority in implementing the mandates, the Court should enjoin all defendants (except the President himself) from enforcing the mandates.

5.      Even if there were authority to issue these sweeping mandates, they still fail to comply with basic requirements of administrative law. As the Fifth Circuit has made clear, the Court's review under the Administrative Procedure Act "has serious bite" and requires not only that the agencies reach an acceptable result, but that they provide a proper explanation: "In reviewing an agency's action, we may consider only the reasoning articulated by the agency itself." *Wages & White Lion Invs., L.L.C. v. United States Food & Drug Admin.*, 16 F.4th 1130, 1136 (5th Cir. 2021).

6.      Defendant agencies have adopted the Task Force's guidance and made it binding on their employees. By doing so, the agencies' acts became subject to APA review.

Their mandates provide extensive lists of requirements—but almost zero rationale. Even if agencies could borrow rationale from the Task Force guidance itself, it provides no help. The explanation of the mandate for federal employees consists of a single sentence: "To ensure the safety of the Federal workforce, Federal employees must be fully vaccinated, except in limited circumstances where an employee is legally entitled to a reasonable accommodation."

7.      Such conclusory remarks fail the reasoned-decisionmaking requirement for agency action, especially given that the challenged actions fail to address, consider, or even acknowledge dozens of critical legal, factual, and economic issues and questions about the reasoning for such sweeping agency action, which President Biden announced would apply to tens of millions of Americans. For example:

   a.  There is no recognition of an alternative mechanism for compliance, such as testing and masking, even though a nearly-simultaneously-issued OSHA mandate for companies with 100 or more employees allows for testing and masking in lieu of mandatory vaccination and *expressly found that the two schemes "provide roughly equivalent protection."* It is arbitrary to treat similarly situated workers in such a different manner, but it is especially absurd not to even *consider* such an alternative for federal employees and contractors.

   b.  Vaccines are mandated for every employee, yet a separate 2021 OSHA rule for frontline healthcare workers (those *most* at risk of being exposed to

COVID) concluded that even though such workers face a "grave danger" from COVID, there was no need for a vaccine mandate.

c.   No explanation is provided for why employees with documented COVID antibodies must take a vaccine.

d.   Almost no differentiation is made based on agency or workplace—the definitions are so broad that even employees who work from home at all times must get vaccinated.

8.   The contractor mandate is also in excess of lawful authority because it violates statutes providing that only the FAR Council can issue government-wide procurement rules. The government tried to fix some of these issues after being sued across the country, but such post-hoc "do-overs" are not valid.

9.   The Court should declare the mandates and their accompanying actions illegal and enjoin Defendants from enforcing them.

## PARTIES

10.   Plaintiff Feds for Medical Freedom is a non-profit membership organization with its incorporation paperwork on file in Nevada. Feds for Medical Freedom has over 6,000 members (and growing) who are employees of or contractors for nearly every federal agency, and located in every U.S. state and in many foreign countries. The purpose of Feds for Medical Freedom is to fight back against the federal government's persistent mandates requiring employees and contractors to get vaccinated or be fired.

11.   Local 918, American Federation of Government Employees represents the bargaining unit members of the Federal Protective Service and Cybersecurity and

Infrastructure Security Agency components of the Department of Homeland Security. Local 918 salutes its heroes and supports this litigation to preserve their essential rights and freedoms of medical choice and confidentiality and to stop the abridgment of those rights and the undue and unnecessary employment complications resulting from the vaccination mandates.

12. Plaintiff Highland Engineering, Inc., is a federal contractor with its principal place of business in Michigan. It was started 35 years ago by Plaintiff Raymond A. Beebe, Jr. One hundred percent of Highland Engineering's employees are considered "covered contractors" under the federal contractor mandate, and Highland Engineering has contracts with the government valued at over $250,000. Because of the imminent deadline for them all to be vaccinated, the company is facing the decision of whether to terminate unvaccinated employees. If the company had to do so, it would cause a major disruption to operations and reputational damage. In October 2021, GSA unilaterally modified all of Highland Engineering's contracts with GSA to add the new provision requiring Highland Engineering to follow the Task Force guidance. This was not a one-time event. For ongoing contract bids—including as recently as December 10, 2021, for a contract where Highland Engineering was solicited to submit a bid as a sub-contractor—Highland Engineering has had to agree to accept the Task Force guidance clause or else be ineligible even to bid.

13. The dozens of named plaintiffs in this suit have taken a significant risk in identifying themselves publicly, as they very well may face retaliation for doing so. But they believe the risks are worth it to stand up for what they believe in. Plaintiffs do not

challenge individual employment decisions in this suit. Rather, they tell their stories for the benefit of the Court and for demonstrating Article III injury and irreparable harm.

14.     Plaintiff Raymond A. Beebe, Jr., is the Chairman and CEO of Highland Engineering.

15.     Plaintiff John Armbrust is a member of Feds for Medical Freedom, resides in Rutherford County, North Carolina, and is an employee of the Department of Transportation. He has not revealed his vaccination status to his agency and has no plans to do so. He has not requested any exemption from that agency's vaccine mandate, nor does he plan to do so. He was disciplined on November 30, 2021, in the form of written counseling saying he could face termination unless he is vaccinated. On December 14, 2021, she received a formal letter of reprimand. He is the primary provider in his household, he works from home full-time, and he previously served in the U.S. Armed Forces.

16.     Plaintiff N. Anne Atkinson is a member of Feds for Medical Freedom, resides in Franklin County, Ohio, and is an employee of the Department of Defense. She has either declined to get vaccinated or to attest to her vaccinated status, despite her agency's mandate. She is the primary provider in her household.

17.     Plaintiff Julia Badger is a member of Feds for Medical Freedom, resides in Galveston County, Texas, and is an employee of NASA. She has either declined to get vaccinated or to attest to her vaccinated status, despite her agency's mandate. She has a pending sincere religious accommodation request.

18.     Plaintiff Michael Ball is a member of Feds for Medical Freedom, resides in Alexandria, Virginia, and is an employee of the Department of State. He is not vaccinated and has not requested any exemption from that agency's vaccine mandate, nor does he plan to do so. He is the primary provider in his household, and he works from home full-time.

19.     Plaintiff Craigan Biggs is a member of Feds for Medical Freedom, resides in Yuma County, Arizona, and is an employee of the Department of Defense. He has not provided his vaccination status to his agency. He has not requested any exemption from that agency's vaccine mandate, nor does he plan to do so. He was disciplined on December 1, 2021, in the form of a written warning saying he is subject to a 14-day suspension without pay if he is not vaccinated against his will. He is the primary provider in his household.

20.     Plaintiff Laura Brunstetter is a member of Feds for Medical Freedom, resides in Galveston County, Texas, and is an employee of the Department of Justice. She has either declined to get vaccinated or to attest to her vaccinated status, despite her agency's mandate. She has a pending sincere religious accommodation request.

21.     Plaintiff Mark Canales is a member of Feds for Medical Freedom, resides in Eddy County, New Mexico, and is an employee of Nuclear Waste Partnership (Amentum), a federal contractor. He has either declined to get vaccinated or to attest to his vaccinated status, despite his employer's mandate, which was imposed after the federal government required contractors to vaccinate their employees. If he does not get fully vaccinated by the January 2022 deadline, he will be placed on unpaid leave for 30 days and then terminated. He is the primary provider in his household.

22.     Plaintiff Michele Caramenico is a member of Feds for Medical Freedom, resides in Pennsylvania and is an employee of the Department of Housing and Urban Development. She has either declined to get vaccinated or to attest to her vaccinated status, despite her agency's mandate.

23.     Plaintiff Andrew Chamberland is a member of Feds for Medical Freedom, resides in Ada County, Idaho, and is an employee of the Department of Homeland Security. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. He is the primary provider in his household.

24.     Plaintiff David Clark is a member of Feds for Medical Freedom, resides in Jefferson County, West Virginia, and is an employee of the Central Intelligence Agency. He has not revealed his vaccination status to his agency and has no plans to do so. He has not requested any exemption from that agency's vaccine mandate, nor does he plan to do so. He is the primary provider in his household and previously served in the U.S. Armed Forces.

25.     Plaintiff Diane Countryman is a member of Feds for Medical Freedom, resides in Weber County, Utah, and is an employee of federal contractors KBR and Honeywell. KBR has stated that "in accordance with KBR's duty to comply with President Biden's COVID-19 Action Plan, Executive Order 14042, and the provisions of the Safer Federal Workforce Task Force's guidance," KBR "must abide by" the contractor mandate and require full vaccination by the date set by the Task Force. Failure to comply will put "[y]our continued employment … at risk." Honeywell likewise expressly blames the contractor mandate for imposing vaccine requirements: "[W]e are found to follow the

federal Executive Order" that "mandates that all employees of government contractors who work on or in connection with" a covered contract be fully vaccinated by the Task Force deadline, and Honeywell must "preserve our ability to support existing federal government contract work and to pursue new contracts." Anyone who fails to comply will be "ineligible for work at Honeywell and subject to discipline, up to and including termination of employment without severance." Ms. Countryman is the primary provider in her household and previously served in the U.S. Armed Forces.

26.     Plaintiff Kevin Dantuma is a member of Feds for Medical Freedom, resides in Fairfax County, Virginia, and is an employee of Peraton, a federal contractor. He has not revealed his vaccination status and does not plan to do so. He has not requested any exemption from the vaccine mandate, nor does he plan to do so. Peraton had no vaccine mandate until the federal government required it. On October 1, 2021, in response to President Biden's September 9 speech, Peraton mandated that all employees be vaccinated by January 4, 2022, or else face discipline or termination. Dantuma's employer has told him that if does not provide proof of vaccination, he will be terminated. Dantuma is a "covered contractor" under the federal contractor mandate, and he is the primary provider in his household and previously served in the U.S. Armed Forces.

27.     Plaintiff Jose Delgado is a member of Feds for Medical Freedom, resides in Yuma County, Arizona, and is an employee of the Department of Homeland Security. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. He is the primary provider in his household and previously served in the U.S. Armed Forces.

28.     Plaintiff Jordan DeManss is a member of Feds for Medical Freedom, resides in Frederick County, Maryland, and is an employee of the Department of Justice. He has declined to get vaccinated, despite his agency's mandate. He is the primary provider in his household.

29.     Plaintiff George Demetriou is a member of Feds for Medical Freedom, resides in Nassau County, New York, and is an employee of the Department of Homeland Security. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. He is the primary provider in his household.

30.     Plaintiff Keri Divilbiss is a member of Feds for Medical Freedom, resides in Liberty County, Texas, and is an employee of the Department of Agriculture. She is not vaccinated and has not requested any exemption from that agency's vaccine mandate, nor does he plan to do so. She is the primary provider in her household and works from home full-time. She received a discipline letter on November 12, 2021, stating she had 5 days to submit proof of vaccination or else face further discipline, up to termination.

31.     Plaintiff Mercer Dunn IV is a member of Feds for Medical Freedom, resides in Loudon County, Virginia, and is an employee of the Central Intelligence Agency. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. He is the primary provider in his household and previously served in the U.S. Armed Forces.

32.     Plaintiff William Filkins is a member of Feds for Medical Freedom, resides in Jefferson County, New York, and is an employee of the Department of Homeland Security. He has either declined to get vaccinated or to attest to his vaccinated status,

despite his agency's mandate. He is the primary provider in his household and previously served in the U.S. Armed Forces.

33.     Plaintiff Jonathan Gragg is a member of Feds for Medical Freedom, resides in Ferry County, Washington, and is an employee of Forest Service Job Corps, which is under the Department of Agriculture. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. He is the primary provider in his household and previously served in the U.S. Armed Forces.

34.     Plaintiff Bryon Green is a member of Feds for Medical Freedom, resides in Yuma County, Arizona, and is an employee of the Department of Interior. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. He is the primary provider for his household and previously served in the U.S. Armed Forces.

35.     Plaintiff Thomas David Green is a member of Feds for Medical Freedom, resides in Pima County, Arizona, and is an employee of the Department of Homeland Security. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate, but he has supported his mother and grandmother getting vaccinated. He previously served as a Sergeant in the U.S. Marine Corps and as a Sergeant in the U.S. Army during Operation Iraqi Freedom III. He has had an exemplary career with no discipline. He is the single father and sole financial provider of four minor children.

36.     Plaintiff Erika Hebert is a member of Feds for Medical Freedom, resides in Fauquier County, Virginia, and is an employee of the Department of Homeland Security. She has either declined to get vaccinated or to attest to her vaccinated status, despite her

agency's mandate. She is the primary provider in her household and works from home full-time.

37.     Plaintiff Peter Hennemann is a member of Feds for Medical Freedom, resides in Marshall County, Mississippi, and is an employee of the Department of Justice. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. He is the primary provider in his household and previously served in the U.S. Armed Forces.

38.     Plaintiff Neil Horn is a member of Feds for Medical Freedom, resides in Minnesota and is an employee of the Department of State. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. He is the primary provider in his household and previously served in the U.S. Armed Forces.

39.     Plaintiff Carey Hunter-Andrews is a member of Feds for Medical Freedom, resides in New Hanover County, North Carolina, and is an employee of the Department of Justice. She has not requested any exemption from that agency's vaccine mandate. Carey was disciplined on November 10, 2021, in the form of a written reprimand saying she could face termination for not uploading proof of vaccination. She reluctantly agreed to get vaccinated to save her job, but she had a terrible reaction and refuses to take any more COVID vaccinations. Because booster requirements are inevitable and likely imminent, her injury is capable of repetition yet evading review. She is the primary provider in her household.

40.     Plaintiff Tana Johnston is a member of Feds for Medical Freedom, resides in Stevens County, Washington, and is an employee of the Department of Homeland Security.

She has either declined to get vaccinated or to attest to her vaccinated status, despite her agency's mandate. She is the primary provider in her household and works from home full-time.

41.     Plaintiff Tyler Klosterman is a member of Feds for Medical Freedom, resides in Burleigh County, North Dakota, and is an employee of the Department of Interior. He has declined to provide his vaccination status to his agency and has not requested a medical or religious exemption from that agency's vaccine mandate, nor does he plan to do so. He is the primary provider in his household and works from home full-time.

42.     Plaintiff Deborah Lawson is a member of Feds for Medical Freedom, resides in Montgomery County, Texas, and is an employee of the Department of Homeland Security. She has not requested any exemption from that agency's vaccine mandate, nor does she plan to do so. She reluctantly agreed to get vaccinated to save her job, but she had a terrible reaction and refuses to take any more COVID vaccinations. Because booster requirements are inevitable and likely imminent, her injury is capable of repetition yet evading review. She is the primary provider in her household and works from home full-time.

43.     Plaintiff Dan Lewis is a member of Feds for Medical Freedom, resides in Virginia and is an employee of federal sub-contractor J&S Cyber Solutions LLC. Updated guidance as of October 18, 2021, states any contractor performing on or in connection with a federal contract must be fully vaccinated by December 8, 2021, or be removed from the contract.   The government customer is not accepting exemption requests from subcontractors. Mr. Lewis is the primary provider in his household.

44.     Plaintiff Melissa Magill is a member of Feds for Medical Freedom, resides in Skagit County, Washington, and is an employee of the Department of Homeland Security. She has declined to get vaccinated, despite her agency's mandate.

45.     Plaintiff Kendra Ann Marceau is a member of Feds for Medical Freedom, resides in Chittenden County, Vermont, and is an employee of the Department of Homeland Security. She has either declined to get vaccinated or to attest to her vaccinated status, despite her agency's mandate. She is the primary provider in her household.

46.     Plaintiff Dalia Matos is a member of Feds for Medical Freedom, resides in Berkeley County, West Virginia, and is an employee of the Department of Treasury. She has either declined to get vaccinated or to attest to her vaccinated status, despite her agency's mandate. She is the primary provider in her household and works from home full-time.

47.     Plaintiff Stephen May is a member of Feds for Medical Freedom, resides in Los Angeles County, California, and is an employee of the Department of Justice. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. He is the primary provider in his household.

48.     Plaintiff Steven McComis is a member of Feds for Medical Freedom, resides in Pasco County, Florida, and is an employee of the Department of Defense. He is not vaccinated and has not requested any exemption from that agency's vaccine mandate. He is the primary provider in his household and currently serves in the U.S. Armed Forces Reserve. He requires a security clearance to keep his job but believes DOD will revoke his clearance if he does not comply with DOD's vaccination policy.

49.     Plaintiff Christopher Miller is a member of Feds for Medical Freedom, resides in Lee County, Florida, and is an employee of the Department of State. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. He is the primary provider in his household.

50.     Plaintiff Joshua Moore is a member of Feds for Medical Freedom, resides in Maricopa County, Arizona, and is an employee of the Department of Homeland Security. He does not consent to having to share his medical history with the federal government pursuant to the mandates. He is the primary provider in his household.

51.     Plaintiff Brent Moores is a member of Feds for Medical Freedom, resides in San Diego County, California, and is an employee of the Department of Homeland Security. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. He is the primary provider in his household and works from home full-time.

52.     Plaintiff Jesse Neugebauer is a member of Feds for Medical Freedom, resides in Stephens County, Oklahoma, and is an employee of the Department of Defense. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. He is the primary provider in his household and previously served in the U.S. Armed Forces.

53.     Plaintiff Joshua Nicely is an employee of the National Security Agency. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. He is the primary provider for his household.

54.     Plaintiff Leslie Carl Petersen is a member of Feds for Medical Freedom, resides in Fairfax County, Virginia, and is an employee of the United States Agency for International Development. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. He is the primary provider for his household.

55.     Plaintiff Patti Rivera is a member of Feds for Medical Freedom, resides in Fairfax County, Virginia, and is an employee of the Department of Defense. She has either declined to get vaccinated or to attest to her vaccinated status, despite her agency's mandate. She is the primary provider in her household, she works from home full-time, and is previously served in the U.S. Armed Forces.

56.     Plaintiff Joshua Roberts is a member of Feds for Medical Freedom, resides in Hidalgo County, Texas, and is an employee of the Department of Homeland Security. He is not vaccinated and has not requested any exemption from that agency's vaccine mandate, nor does he plan to do so. He is the primary provider in his household and previously served in the U.S. Armed Forces. He and his wife are currently fostering two infants, whom they hope to adopt but fear they will be precluded from doing so if Joshua is terminated or suspended without pay from DHS.

57.     Plaintiff Ashley Rodman is a member of Feds for Medical Freedom, resides in Boone County, Arkansas, and is an employee of the Department of Interior. She has either declined to get vaccinated or to attest to her vaccinated status, despite her agency's mandate. She is the primary provider for her household.

58.     Plaintiff M. LeeAnne Rucker-Reed is a member of Feds for Medical Freedom, resides in Paulding County, Georgia, and is an employee of the Department of Justice. She is not vaccinated and has not requested any exemption from that agency's vaccine mandate, nor does she plan to do so at this time. She is the primary provider in her household.

59.     Plaintiff Trevor Rutledge is a member of Feds for Medical Freedom, resides in Randall County, Texas, and is an employee of the Department of Energy. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. He is the primary provider for his household and previously served in the U.S. Armed Forces.

60.     Plaintiff Nevada Ryan is a member of Feds for Medical Freedom, resides in Los Angeles County, California, and is an employee of the Department of Transportation. She has not attested to her vaccinated status, nor has she requested any exemption. She was disciplined on November 30, 2021, in the form of written counseling saying she could face termination unless she attests to her vaccinated status. On December 14, 2021, she received a formal letter of reprimand. She works from home full-time.

61.     Plaintiff James Charles Sams III is a member of Feds for Medical Freedom, resides in Jasper County, Indiana, and is an employee of the Department of Treasury. He is not vaccinated and has not requested any exemption from that agency's vaccine mandate. He is the primary provider in his household, and he works from home full-time.

62.     Plaintiff Michael Schaecher is a member of Feds for Medical Freedom, resides in North Carolina, and is a civilian federal employee of the North Carolina National

Guard, whose vaccine policy is set by the National Guard Bureau, a federal agency under control of the Department of Defense. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. On December 10, 2021, he received a letter saying he will be terminated on January 10, 2022.

63. Plaintiff Christina Schaff is a member of Feds for Medical Freedom, resides in Virginia and is an employee of the Department of Defense. She has either declined to get vaccinated or to attest to her vaccinated status, despite her agency's mandate. She is the primary provider in her household, she teleworks from home full-time since the onset of the pandemic, and she previously served in the U.S. Armed Forces.

64. Plaintiff Kurtis Simpson is a member of Feds for Medical Freedom, resides in Canyon County, Idaho, and is an employee of Valiant Integrated Services, a federal contractor. He is not vaccinated. Valiant had no vaccine mandate until the federal government required it. On October 27, 2021, Valiant set a vaccination compliance date of full vaccination by December 8, 2021, matching the date in the President's September 9, 2021, Executive Order 14042. On November 12, 2021, Valiant changed the full vaccination compliance date to January 18, 2022, again to match the federal government's new date for contractors. If Simpson does not get vaccinated, he faces termination. Simpson is a "covered contractor" under the federal contractor mandate, and he is the primary provider in his household and previously served in the U.S. Armed Forces.

65. Plaintiff Barrett Smith is a member of Feds for Medical Freedom, resides in Anne Arundle County, Maryland, and is an employee of the Department of Justice. He has

either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate.

66.     Plaintiff Jaci ReNee Smith is a member of Feds for Medical Freedom, resides in Anne Arundel County, Maryland, and is an employee of the Department of Homeland Security. She has either declined to get vaccinated or to attest to her vaccinated status, despite her agency's mandate.

67.     Plaintiff Jarod Smith is a member of Feds for Medical Freedom, resides in California and is an employee of the Department of Homeland Security. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. He is the primary provider in his household.

68.     Plaintiff Jana Spruce is a member of Feds for Medical Freedom, resides in Galveston County, Texas, and is an employee of Collins Aerospace (a Raytheon Technologies subsidiary), a federal contractor for NASA. Raytheon announced its vaccine mandate September 15, 2021, followed by an email on the 16th. The initial deadline to get fully vaccinated was January 1, 2022. This was in response to President Biden's Executive Order on September 9, 2021. When the Safer Federal Workforce Task Force issued its COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors on September 24, 2021, it set an earlier deadline of December 8. Raytheon moved its deadline up to match the December 8 federal deadline. Since then, the federal deadline has pushed out, and on December 3, Raytheon announced they would again match the federal deadline of January 18, 2022. Spruce is a "covered contractor" under the federal contractor mandate, and she is the primary provider for her household. Although she was recently given an

exemption, it applies only to the Pfizer, Moderna, and Johnson & Johnson vaccines, and she still must endure weekly testing, masking, and social distancing. Thus, while she has received a partial and temporary reprieve from forced vaccination, it is only that—partial and temporary. Her employer is requiring all of this only because of the pressure from the federal government's mandate.

69. Plaintiff John Tordai is a member of Feds for Medical Freedom, resides in Whatcom County, Washington, and is an employee of the Department of Homeland Security. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. He is the primary provider in his household.

70. Plaintiff Sandor Vigh is a member of Feds for Medical Freedom, resides in Oakland County, Michigan, and is an employee of the Department of Homeland Security. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. He is the primary provider in his household and previously served in the U.S. Armed Forces.

71. Plaintiff Christine Vrtaric is a member of Feds for Medical Freedom, resides in Bucks County, Pennsylvania, and is an employee of the Department of State. She is not vaccinated, nor does she plan to get vaccinated. She is the primary provider in her household.

72. Plaintiff Pamela Weichel is a member of Feds for Medical Freedom, resides in Yellowstone County, Montana, and is an employee of the General Services Administration. She has either declined to get vaccinated or to attest to her vaccinated status, despite her agency's mandate. She is the primary provider for her household.

Although she was recently given an exemption, it applies only to the Pfizer-BioNTech, Moderna, and Johnson & Johnson/Hanssen vaccines (it says nothing about the inevitable requirement for boosters), and the exemption specifically says that "GSA may reevaluate this decision based on additional information, including, among other things, development of additional vaccines or treatments for COVID-19, updated CDC guidance, and circumstances impacting the agency's ability to accomplish its mission." Thus, while she has received a partial and temporary reprieve from forced vaccination, it is only that— partial and temporary, subject to being revoked at any moment.

73.     Plaintiff David Wentz is a member of Feds for Medical Freedom, resides in Jefferson County, New York, and is an employee of the Department of Homeland Security. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. He is the primary provider in his household.

74.     Plaintiff Jason Wilkerson is a member of Feds for Medical Freedom, resides in Frederick County, Virginia, and is an employee of the Department of Transportation. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. He is the primary provider in his household.

75.     Plaintiff Patrick Wright is a member of Feds for Medical Freedom, resides in Galveston County, Texas, and is an employee of the Department of Justice, where he a Bomb Technician with the FBI. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. He is the primary provider for his household.

76.     Plaintiff Patrick Mendoza York is a member of Feds for Medical Freedom, resides in Galveston County, Texas, and is an employee of the Department of Justice. He has either declined to get vaccinated or to attest to his vaccinated status, despite his agency's mandate. He is the primary provider for his household.

77.     Approximately 330 additional members of Feds for Medical Freedom are not individually named as plaintiffs but voiced a desire to pledge public support for the suit. The following list represents a mere 5% of Feds for Medical Freedom's members who oppose the mandates: Aaron Robert McKeever, Abraham Taylor, Adam Hawkins, Adam Joseph Newell, Adam Majestic, Aimee Marie Morrissey, Alberto Espinoza Jr, Alexander Mihailitchenko, Alexander White, Alicia Centeno, Amanda Lee Gould, Amy Elizabeth Padgett, Amy Heather LaBruyere, Andrew Joseph Nowakowski, Angela Garcia, Anne Lee Day, Anorine M. Ledet, Anthony Dale Peters, Anthony Rivera, Aron Paul Trzyna, Ashley Marie Kjarbo, Ashley Nicole Mateo, Audra Michele Morris, Aurelia Morales, Benjamin J Wheeler, Benjamin R Tarrell, Billy Lee Ward III, Brandon L Dalton, Brandon Law, Brandon McLaughlin, Brandon William Holt, Brant Cottingham, Brendan C. Wheeler, Brent David Ziarnick, Brett A. Gloss, Brian Christopher Lombardi, Brian Dean Cherry, Brian James Olson, Brian Matthew Kjarbo Sr, Brian Michael Flynn, Brian Steven Patterson, Brian Thomas Fiddelke, Brigitte S. Sills, Brittany Radke, Byron Alan Anderson, Cameron Lisle Parker, Candace Ann Hubble, Carl Eugene Marshall, Carl Milazzo, Carla Rexing, Catherine Ann Dudley, Chad Bailey, Chantel Michelle Lasky, Charles E. Joe, Charles Edward Goodine, Charles L. Carpenter, Charles Lee Collier Jr, Charlie Everett Wade, Charlotte Frances Gallowitch, Christian Robert Boyce, Christina L Schroeder,

Christopher Alan Stinchfield, Christopher Alicea, Christopher Charles Kopac, Christopher Clinton Cox, Christopher Cullen, Christopher John Rupp, Christopher M. Baugh, Christopher S. Yingling, Christopher Steven Grubb, Clayton Markham Newman, Cynthia M Fellows, Damon Bill Musick, Dana Gharib, Daniel A. Espinosa, Daniel Joseph VanDeKerkhove, Danielle E. Condon, David A. Schmidt, David Burton Swineford, David Daniel Pembertom, David Hanson Colburn, David J Coverdill, David Shawn Caywood, David Tanana, Davy Reid, Dawn Mahoney, Daytha Danae Heintzelman, Deborah Anne, Debra R. Libera, Dennis J. Rulli, Derek Michael Baker, Derrick Shane Mincey, Donald Evan Snively, Donald James Runyon, Donald Leroy Carroll, Donovan Peter Jenkinson, Douglas Lee Popovich, Douglas Lewis Cole, Dwight Douglas King, Elfriede Maxine Roberts, Elizabeth G Montero, Elizabeth M. Young, Eric Scott Gano, Eric Ward Burkett, Erick M. Lombardo, Erik R Johnson, Francis P Boenzi, Francisco Alvarado Jr., Garret James O'Boyle, Geoffrey Butlak, George Demetriou, George Tandy Cook IV, Gerald Jung, Glenn Michael Riccio, Glory Shinas, Gregory Allan Brown, Gregory Dombrowski, Gregory N. Glenn, Hans Eric Tolf, Heather Joy Kerrigan, Henry Jacob Brown, Isaac Andrew Flores Sr., Ivan Chokan, Jacek Baran, Jacob Scott Nissen, James D. Cernock, James Dale Dusenbery Jr, James Hughes, James Kenneth Brown, James Martin Head, Jr., James Patrick Tanksley, Jarrid L. Tealer, Jason Allen Parnell, Jason Andrew Clarke, Jason Anthony Morelli, Jason John Ives, Jason M Bolin, Jason William Cupedro, Jay Douglas Whitacre, Jeff F. Podolski, Jeffery WayneCrowder, Jeffrey Allen Dice, Jeffrey Hugh Murdoch, Jeffrey Paul Paplawsky, Jeffrey Reza, Jeffrey Scott Walters Jr., Jennifer Ann Adams, Jennifer Cottingham, Jennifer Kelley Roames, Jennifer Palmisano Pedersen,

Jeremiah Austin Howe, Jeremy D. Battenfield, Jeremy Landon Tate, Jesse Daniel McCoy, Jessica Mae Cowan, Jessica Myers Hayes, Jill C. Lasseter, Joel Stacey Dunn, John A. Warchal, John Caligiuri, John Christopher Dymond Jr., John Lattuca, John Robert Garrett, II, John Robert Harris, John Steven Rivera Jr, Jonathan Chrisna Chang, Jonathan David Sheets, Jonathan David Williams, Jordan Joseph Bastedo, Jose A Acosta, Jose Alessandro Romero Belleza, Joseph A. Cerar, Joseph A. Rossi, Joseph Charles Ainsworth, Joshua Andrew Porvaznik, Joshua David Nicely, Joshua Delaney Mireles Sr., Joshua DeWayne Guell, Joshua James Hamilton, Joshua Morency, Josue Menendez Matos, Juan Carlos Aragon, Justin Alan Cowan, Justin Samuel Haney, Karla Kay Dishun, Kathryn Ann Singer, Kathryn Sue Borchert, Kenneth Jay Coates Jr., Kenneth Joshua Bradley, Kenneth T. Duffy, Jr., Kennith Douglas Murray, Kevin Landis Wade, Kevin Michael Ramirez, Kevin Wilber King, Khristina Anne Johnson, Kim Jones Macmillan, Kimberly Ann Singer, Kimberly Kessel Elsholz, Kimberly Richman, Kimberly Ruth Christoff, Kristen Denise Grace, Lacey LeAmbra Proffit, Larry J. Solecki, Lisa Elaine Jones, Lisa Fairchild Van Holsbeke, Liza Ludovico, Loren K. Frost, Lorenzo Ballesteros Jr., Lori May Kocol, Lori Sue Marquez, Luis A. Astudillo, Luke May, Maia E Gmitro, Manuel J. Ballard, Marcus Antonio Lopez, Marcus William Thornton, Maria Lourdes Veliz, Marie Carmen Thomas, Mark A. Powell, Mark Andrew Gerrish, Mark Anthony McDaneld, Mark Edward Jackson, Mark Robert Klee, Matthew Joseph Tripi, Matthew Lee Harris, Matthew Phiilip Townsend, Matthew Roger Heiser, Maury Abreu, Max Eric Johnson, Melinna Muir, Melissa Herrera, Melissa Math Cobb, Melissa R. Decker, Michael Andrew Sauder, Michael Brian Pennington, Michael Carey, Michael Christopher Orloff, Michael D. Preston, Michael David Williams,

Michael Earl Cox, Michael F. Scotto, Michael McGuire, Michael Patton, Michael Philip Desmond, Michael Robert Pignatelli, Michael Sean Kirchner, Michael Sei Davis, Michael Stephen Perez Jr, Micheal E. Weinfurtner, Michelle Dawn Lutz, Michelle M Kolbus, Michelle Nuño, Natacha lugo, Nathan Andrew Sommers, Nathan Brent Moize, Nathan Tyler Anderberg, Nathaniel Webb, Neil Anthony Dickes, Neil Robert Funk, Nicole Christine Kelly, Nicole Renee Johnson, Nicole Solander, Nikki Petersen, Nikole Pasqualina Najorka, Pamela Trongard, Patrick Francis Smith, Patrick John Harvey, Patrick John Henning, Patrick Tshingombe Kola, Paul Edward Davis II, Paul Scott Olmes Rogers, Peter Anothony DeSimone, Peter C. Little, Peter J Stewart, Phillip Jeffery Lee Sr, Rachel Cathie, Rachel Cole, Ramon A. Alicea, Rebekah Lynn Tucker, Reginaldo Ruiz, Renee Tuinstra, Reuben Daniel Mitchell, Richard Curtis Stanford, Richard Gerald Hurda, Richard Thomas Joy III, Robert A McArdle, Robert Craig Rocheleau, Robert Wendall Phillips III, Robert William Dodge, Roger Adam Niehaus, Ronald Westly Severson Jr., Ronnald Gene Easterling, Roseann Manning Bailey, Ryan J Quinn, Ryan Jones, Ryan King, Sabrina Donna-Melody Hinson, Sage B Collins, Samuel Adam Cepello, Samuel Bradford Hendrix, Samuel Bryan Schnell, Sandra Jackson, Sandra Lynn Teichert, Scott Albert Biel, Sean Patrick Atienza, Serge S. Mihailitchenko, Shaun Burnhauser, Shawn David Scollon, Sherry Lynn Cormier Bartkowicz, Stephanie Nicole Coyne, Stephen Duane Fleury-Islas, Steven Christopher Thornhill, Steven Gregory Towe, Steven Peter Ragge, Sue Ann Duhrkopf, Summer Cantu, Suzanne Renee Welton, Taiga Sky Rohrer, Teresa Anne Harrison, Terry Reginald Muise, Thera VanDerveer Saylor, Theresa Millie Thomas, Thomas Ervin Beckman Jr., Thomas M Couch Jr, Troy Landon Hess, Vickki A Striedel,

Walter M Hauk Iii, Walter Pinkevich, Wendy A Shrewsbury, Wendy Beth Mervine, Wendy Kaye Dolin, Wendy Lee Greenlaw, Wendy M Schummer, William A. Carr Jr., William Lamont Willard Jr,William S. MacTavish Jr., Yesenia Leon, Young Kim, Zachary Owen Rebro.

78.    Defendants are the United States, the President of the United States, appointed officials of the United States government, and United States governmental agencies responsible for the issuance and implementation of the challenged actions. The human defendants are all sued in their official capacities.

79.    Defendant Joseph R. Biden, Jr., is President of the United States. He issued the executive orders that began the process leading to the mandates.

80.    Defendant Pete Buttigieg, Secretary of Transportation, of Defendant Department of Transportation, has implemented the challenged mandates by requiring that all employees of the agency and all contractors be "fully vaccinated" against COVID-19 and provide proof of said vaccination (or qualify under a narrow exemption for religious and medical claims), or face disciplinary action, up to and including termination or removal from the contract. Plaintiff Feds for Medical Freedom has one or more members who are employees of this agency.

81.    Defendant Janet Yellen, Secretary of Treasury, of Defendant Department of Treasury, has implemented the challenged mandates by requiring that all employees of the agency and all contractors be "fully vaccinated" against COVID-19 and provide proof of said vaccination (or qualify under a narrow exemption for religious and medical claims), or face disciplinary action, up to and including termination or removal from the contract.

Plaintiff Feds for Medical Freedom has one or more members who are employees of this agency.

82.     Defendant Deb Haaland, Secretary of the Interior, of Defendant Department of the Interior, has implemented the challenged mandates by requiring that all employees of the agency and all contractors be "fully vaccinated" against COVID-19 and provide proof of said vaccination (or qualify under a narrow exemption for religious and medical claims), or face disciplinary action, up to and including termination or removal from the contract. Plaintiff Feds for Medical Freedom has one or more members who are employees of this agency.

83.     Defendant Bill Nelson, Administrator of Defendant NASA, has implemented the challenged mandates by requiring that all employees of the agency and all contractors be "fully vaccinated" against COVID-19 and provide proof of said vaccination (or qualify under a narrow exemption for religious and medical claims), or face disciplinary action, up to and including termination or removal from the contract. Plaintiff Feds for Medical Freedom has one or more members who are employees of this agency.

84.     Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, of Defendant Social Security Administration, has implemented the challenged mandates by requiring that all employees of the agency and all contractors be "fully vaccinated" against COVID-19 and provide proof of said vaccination (or qualify under a narrow exemption for religious and medical claims), or face disciplinary action, up to and including termination or removal from the contract. Plaintiff Feds for Medical Freedom has one or more members who are employees of this agency.

85.     Defendant Marcia Fudge, Secretary of Housing and Urban Development, of Defendant Department of Housing and Urban Development, has implemented the challenged mandates by requiring that all employees of the agency and all contractors be "fully vaccinated" against COVID-19 and provide proof of said vaccination (or qualify under a narrow exemption for religious and medical claims), or face disciplinary action, up to and including termination or removal from the contract. Plaintiff Feds for Medical Freedom has one or more members who are employees of this agency.

86.     Defendant Denis McDonough, Secretary of Veterans Affairs, of Defendant Department of Veterans Affairs, has implemented the challenged mandates by requiring that all employees of the agency and all contractors be "fully vaccinated" against COVID-19 and provide proof of said vaccination (or qualify under a narrow exemption for religious and medical claims), or face disciplinary action, up to and including termination or removal from the contract. Plaintiff Feds for Medical Freedom has one or more members who are employees of this agency.

87.     Defendant Lloyd J. Austin, III, Secretary of Defense, of Defendant Department of Defense, has implemented the challenged mandates by requiring that all employees of the agency and all contractors be "fully vaccinated" against COVID-19 and provide proof of said vaccination (or qualify under a narrow exemption for religious and medical claims), or face disciplinary action, up to and including termination or removal from the contract. Plaintiff Feds for Medical Freedom has one or more members who are employees of this agency.

88.     Defendant Merrick B. Garland, Attorney General, of Defendant Department of Justice, has implemented the challenged mandates by requiring that all employees of the agency and all contractors be "fully vaccinated" against COVID-19 and provide proof of said vaccination (or qualify under a narrow exemption for religious and medical claims), or face disciplinary action, up to and including termination or removal from the contract. Plaintiff Feds for Medical Freedom has one or more members who are employees of this agency.

89.     Defendant Alejandro Mayorkas, Secretary of Homeland Security, of Defendant Department of Homeland Security, has implemented the challenged mandates by requiring that all employees of the agency and all contractors be "fully vaccinated" against COVID-19 and provide proof of said vaccination (or qualify under a narrow exemption for religious and medical claims), or face disciplinary action, up to and including termination or removal from the contract. Plaintiff Feds for Medical Freedom has one or more members who are employees of this agency.

90.     Defendant Samantha Power, Administrator of Defendant United States Agency for International Development, has implemented the challenged mandates by requiring that all employees of the agency and all contractors be "fully vaccinated" against COVID-19 and provide proof of said vaccination (or qualify under a narrow exemption for religious and medical claims), or face disciplinary action, up to and including termination or removal from the contract. Plaintiff Feds for Medical Freedom has one or more members who are employees of this agency.

91.     Defendant Tom Vilsack, Secretary of Agriculture, of Defendant Department of Agriculture, has implemented the challenged mandates by requiring that all employees of the agency and all contractors be "fully vaccinated" against COVID-19 and provide proof of said vaccination (or qualify under a narrow exemption for religious and medical claims), or face disciplinary action, up to and including termination or removal from the contract. Plaintiff Feds for Medical Freedom has one or more members who are employees of this agency.

92.     Defendant Jennifer M. Granholm, Secretary of Energy, of Defendant Department of Energy, has implemented the challenged mandates by requiring that all employees of the agency and all contractors be "fully vaccinated" against COVID-19 and provide proof of said vaccination (or qualify under a narrow exemption for religious and medical claims), or face disciplinary action, up to and including termination or removal from the contract. Plaintiff Feds for Medical Freedom has one or more members who are employees of this agency.

93.     Defendant Antony Blinken, Secretary of State, of Defendant Department of State, has implemented the challenged mandates by requiring that all employees of the agency and all contractors be "fully vaccinated" against COVID-19 and provide proof of said vaccination (or qualify under a narrow exemption for religious and medical claims), or face disciplinary action, up to and including termination or removal from the contract. Plaintiff Feds for Medical Freedom has one or more members who are employees of this agency.

94. Defendant William J. Burns, Director of Defendant Central Intelligence Agency, has implemented the challenged mandates by requiring that all employees of the agency and all contractors be "fully vaccinated" against COVID-19 and provide proof of said vaccination (or qualify under a narrow exemption for religious and medical claims), or face disciplinary action, up to and including termination or removal from the contract. Plaintiff Feds for Medical Freedom has one or more members who are employees of this agency.

95. Defendant Jeffrey Zients is co-chair of Defendant Safer Federal Workforce Task Force and is President Biden's COVID-19 Response Coordinator.

96. Defendant Lesley A. Field is the Acting Administrator for Federal Procurement of Defendant Office of Management and Budget, and she is a member of Defendant FAR Council.

97. Defendant Matthew C. Blum is Associate Administrator, Office of Management and Budget, and he is a member of Defendant FAR Council.

98. Defendant Jeffrey A. Koses is the Senior Procurement Executive & Deputy Chief Acquisition Officer for Defendant General Services Administration, and he is a member of Defendant FAR Council.

99. Defendant John M. Tenaglia is Principal Director of Defense Pricing and Contracting, Department of Defense, and is a member of Defendant FAR Council.

100. Defendant Karla S. Jackson is Assistant Administrator for Procurement, NASA, and is a member of Defendant FAR Council.

101.    Defendant Federal Acquisition Regulatory Council is responsible for "manag[ing], coordinat[ing], control[ing], and monitor[ing] the maintenance of, issuance of, and changes in the Federal Acquisition Regulation." 41 U.S.C. § 1303(d). The FAR Council issued the challenged FAR Council guidance.

102.    Defendant Shalanda D. Young is the acting Director of Defendant Office of Management and Budget, which is an agency within the Executive Office of the President. OMB issued the rule approving the Task Force guidance.

103.    Defendant Robin Carnahan is co-chair of Defendant Safer Federal Workforce Task Force and also Administrator of Defendant General Services Administration. Plaintiff Feds for Medical Freedom has one or more members who are employees of GSA.

104.    Defendant Kiran Ahuja is co-chair of Defendant Safer Federal Workforce Task Force and also is Director of Defendant Office of Personnel Management.

105.    Defendant Avril Haines is Director of National Intelligence and head of the Intelligence Community, which includes the CIA, NSA, DIA, OIC, NGA, and other intelligence members. Plaintiff Feds for Medical Freedom has one or more members who are employees of multiple of those agencies.

106.    Defendant Daniel Hokanson is Chief of Defendant National Guard Bureau, which has implemented the challenged mandates by requiring that all employees of the agency and all contractors be "fully vaccinated" against COVID-19 and provide proof of said vaccination, or face disciplinary action, up to and including termination or removal

from the contract. Plaintiff Feds for Medical Freedom has one or more members who are employees of this agency.

107. Defendant Gina M. Raimondo is Secretary of Commerce, of Defendant Department of Commerce, which has implemented the challenged mandates by requiring that all employees of the agency and all contractors be "fully vaccinated" against COVID-19 and provide proof of said vaccination, or face disciplinary action, up to and including termination or removal from the contract. Plaintiff Feds for Medical Freedom has one or more members who are employees of this agency.

108. Defendant Marty Walsh is Secretary of Labor, of Defendant Department of Labor, which has implemented the challenged mandates by requiring that all employees of the agency and all contractors be "fully vaccinated" against COVID-19 and provide proof of said vaccination, or face disciplinary action, up to and including termination or removal from the contract. Plaintiff Feds for Medical Freedom has one or more members who are employees of this agency.

## JURISDICTION AND VENUE

109. This Court has jurisdiction under 5 U.S.C. §§ 701–706, and 28 U.S.C. §§ 1331, 1346, 1361, 2201, under the United States Constitution, and pursuant to the Court's equitable powers.

110. The Court is authorized to award the requested declaratory and injunctive relief under 5 U.S.C. §§ 702 and 706 and 28 U.S.C. §§ 1361, 2201, 2202, and the Court's equitable powers.

111. Venue is proper under 28 U.S.C. § 1391(e)(1)(B) because the United States, one or more of its agencies, and one or more of its officers in his or her official capacity are Defendants; and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District. Venue is also proper under 28 U.S.C. § 1391(e)(1)(C) because the United States, one or more of its agencies, and one of its officers in his official capacity are Defendants, and Plaintiffs Joshua Roberts, Deborah Lawson, Laura Brunstetter, Julia Badger, Patrick Mendoza York, Patrick Wright, and Jana Spruce reside in this District, and no real property is involved.

112. Further, there are related cases pending in this division. *See Texas v. Biden*, No. 3:21-cv-309 (S.D. Tex.); *Rodden v. Fauci*, No. 3:21-cv-317 (S.D. Tex.).

## FACTUAL BACKGROUND

### *President Biden's COVID Mandate Groundwork*

113. COVID-19 was declared to have reached pandemic status in March of 2020—more than a year and a half ago. And vaccines have been available since December 2020.

114. On January 20, 2021, President Biden issued EO 13991, 86 Fed. Reg. 7045, which established the Task Force and charged it with "provid[ing] ongoing guidance to heads of agencies on the operation of the Federal Government, the safety of its employees, and the continuity of Government functions during the COVID-19 pandemic." 86 Fed. Reg. at 7046.

115. On September 9, 2021, President Biden announced that he was "increasing testing" because "America has failed to do enough COVID-19 testing." Joseph Biden,

*Remarks by President Biden on Fighting the Covid-19 Pandemic* (Sept. 9, 2021), https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/09/09/remarks-by-president-biden-on-fighting-the-covid-19-pandemic-3/. He promised "to make testing more available, more affordable, and more convenient," including the dramatic invocation of the Defense Production Act "to increase production of rapid tests, including those that you can use at home." *Id.* He went on to emphasize his commitment, as shown by $2 billion for rapid testing and working with major retailers to reduce the price of tests. *Id.* In short, "[y]ou'll be able to test them at home and test those around them." *Id.*

116. The Biden Administration had—until very recently—made clear that mandating vaccines is "not the role of the federal government." Press Briefing by Press Secretary Jen Psaki, July 23, 2021, https://www.whitehouse.gov/briefing-room/press-briefings/2021/07/23/press-briefing-by-press-secretary-jen-psaki-july-23-2021/.

117. But during the same September 9 press conference, President Biden also emphasized that while "fully vaccinated" individuals are "highly protected from severe illness even if [they] get Covid-19," and that being fully vaccinated renders these individuals "as safe as possible," he was nonetheless issuing vaccine mandates "to protect vaccinated workers from unvaccinated co-workers." *Id.* One mandate would be issued by the Department of Labor via an emergency rule mandating that private employers with 100 or more employees require their employees to become fully vaccinated or submit to weekly testing.

118. President Biden also announced that federal agencies would create and implement the vaccine mandates for federal employees and contractors.

*Federal Employee Mandate*

119. The President said he would "sign an executive order that will now require all executive branch federal employees to be vaccinated—all." *Id.* That same day, he issued EO 14043, which states "it is necessary to require COVID-19 vaccination for all Federal employees, subject to such exceptions as required by law." 86 Fed. Reg. 50989. EO 14043 tasked every federal agency with "implement[ing], to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its Federal employees." *Id.* at 50990. The Agencies were to receive "implementation" guidance from the Task Force, which would issue guidance within seven days. *Id.*

120. On September 13, 2021, the Task Force issued an 8-page guidance document. Safer Federal Workforce Task Force, *COVID-19 Workplace Safety: Agency Model Safety Principles* (Sept. 13, 2021), https://www.saferfederalworkforce.gov/downloads/updates%20to%20model%20safety%20principles%209.13.21.pdf. It recommended a deadline of November 22, 2021, for all federal employees to be fully vaccinated, meaning 14 days after the last required shot. *Id.* at 2.

121. In a subsequent "FAQ" posted online, the Task Force stated that "[e]mployees who are on maximum telework or working remotely are not excused from this requirement." Safer Federal Workforce Task Force, *FAQ*, https://www.saferfederalworkforce.gov/faq/vaccinations/. All federal employees, regardless of whether the employee has antibodies from a prior infection of COVID, are required to receive the vaccination. *Id.* The medical community agrees, however, that

"[i]ndividuals who have had SARS-CoV-2 infection are unlikely to benefit from COVID-19 vaccination." Nabin K. Shrestha et al., *Necessity of COVID-19 Vaccination in Previously Infected Individuals* at 2, https://www.medrxiv.org/content/10.1101/2021.06.01.21258176v3.full.pdf.

122.    Federal employees who fail to comply with the requirement to be fully vaccinated by November 22, 2021, "are in violation of a lawful order" and are subject to discipline, "up to and including termination or removal." Safer Federal Workforce Task Force, *FAQ*, https://www.saferfederalworkforce.gov/faq/vaccinations/. The Task Force permits Agencies to "initiate the enforcement process as soon as November 9, 2021, for employees who fail to submit documentation to show that they have completed receiving required vaccination dose(s) by November 8." *Id.*

123.    On October 1, 2021, OPM published rules tracking Task Force guidance, applying both to current and incoming federal employees. OPM, *Memorandum for Heads of Executive Departments and Agencies*, https://www.chcoc.gov/content/guidance-applying-coronavirus-disease-2019-vaccination-requirements-new-hires-%E2%80%93-executive (Oct. 1, 2021); OPM, *Memorandum for Heads of Executive Departments and Agencies*, https://www.chcoc.gov/content/guidance-enforcing-coronavirus-disease-2019-vaccination-requirement-federal-employees-%E2%80%93 (Oct. 1, 2021).

124.    Defendant agencies have implemented the Task Force guidance and/or OPM rules, which extend far beyond the details stated expressly in EO 14043. Ex. A. Not every Defendant agency has issued a formal document, but each has the same policy of

mandating full vaccination, or receipt of a religious or medical accommodation, by November 22, 2021—or else face discipline up to and including termination.

125. The government cannot in good faith dispute that each Defendant agency has this policy.

126. Conservatively, there are 330,000 unvaccinated federal employees. *See* Courtney Rozen, *Unvaccinated Federal Workers to Get Unpaid Leave, Pink Slips*, BLOOMBERG, https://news.bloomberglaw.com/daily-labor-report/unvaccinated-federal-workers-to-face-unpaid-leave-termination (OPM says 2.1 million civilian federal employees); CDC, *COVID-19 Vaccinations in the United States*, https://covid.cdc.gov/covid-data-tracker/#vaccinations_vacc-total-admin-rate-total (15.8% of adults have received no vaccine shots) (last visited Dec. 12, 2021). The government has claimed, without evidence, that the figure is lower.

127. These employees are subject to the "Federal Employee Mandate" (or "Employee Mandate"), which refers to EO 14043 and the policies of each Defendant Agency adopting and implementing the Task Force and OPM guidance.

### Contractor Mandate

128. As noted above, during his September 9 announcement, President Biden also stated that he would require all federal contractors to be vaccinated: "If you want to work with the federal government and do business with us, get vaccinated. If you want to do business with the federal government, vaccinate your workforce." *Remarks by President Biden*, *supra*. He then issued EO 14042, 86 Fed. Reg. 50985, which directs agencies to ensure that all "contracts and contract-like instruments [covered by the executive order] …

include a clause [that specifies] that the contractor or subcontractor shall, for the duration of the contract, comply with all guidance for contractor or subcontractor workplace locations published by the [Task Force], subject to that guidance being approved by the OMB Director." *Id.*

129.    Like EO 14043, EO 14042 instructs the Task Force to develop this guidance and directs the OMB Director to determine whether the Task Force guidance will promote economy and efficiency in federal procurement. *Id.* at 50,985–86. EO 14042 also instructs the Federal Acquisitions Regulatory Council to "amend the [FAR]" to include the clause referenced above, and also tasks agencies with implementing the contract clause in contracts not covered by the FAR. *Id.* at 50,986. EO 14042 applies to contracts entered into, renewed, or with an option to be exercised on or after October 15, 2021. *Id.* at 50,987.

130.    On September 24, 2021, the Task Force issued its guidance, which recommends vaccination of "covered" contractor employees, except in limited circumstances where an employee is legally entitled to an accommodation. *COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors*, Safer Federal Workforce Task Force (Sept. 24, 2021), https://www.saferfederalworkforce.gov/downloads/Draft%20contractor%20guidance%20 doc_20210922.pdf. The scope is as broad as possible. It defines "covered contractor employee" to mean "any full-time or part time employee of a covered contractor working on or in connection with a covered contract or working at a covered contractor workplace. *Id.* This includes employees of covered contractors who are not themselves working on or in connection with a covered contract." *Id.* A "covered contractor workplace" "means a

location controlled by a covered contractor at which any employee of a covered contractor working on or in connection with a covered contract is likely to be present during the period of performance for a covered contract." *Id.*

131.    In an incorporated Q&A, the guidance states that proof of COVID antibodies does not satisfy the vaccination requirement, and employees who work exclusively outdoors are subject to the same stringent requirements. *Id.* The Task Force guidance set a deadline of December 8, 2021, for all covered contractor employees to be fully vaccinated (*i.e.*, two weeks after the last shot).

132.    On September 28, 2021, the OMB Director published a notice of determination ("First OMB Rule"), without reasoning or explanation, finding that the Task Force guidance "will improve economy and efficiency by reducing absenteeism and decreasing labor costs for contractors and subcontractors working on or in connection with a [f]ederal [g]overnment contract." 86 Fed. Reg. 53,691, 53,691–92 (Sept. 28, 2021).

133.    On September 30, 2021, the FAR Council issued a directive ("FAR Council Directive") that agencies must include language in new contracts stating that contractors must follow Task Force guidance, and that agencies should unilaterally insist on adding the clause to *ongoing* contracts because it will "get[] more people vaccinated and decrease the spread of COVID-19." *Memorandum from FAR Council to Chief Acquisition Officers et al. re: Issuance of Agency Deviations to Implement Executive Order 14042* (Sept. 30, 2021),        https://www.whitehouse.gov/wp-content/uploads/2021/09/FAR-Council-Guidance-on-Agency-Issuance-of-Deviations-to-Implement-EO-14042.pdf.

134.    On November 4, 2021, the White House delayed the contractor deadline for full vaccination to January 4, 2022. *Biden Administration Announces Details of Two Major Vaccination Policies,* https://www.whitehouse.gov/briefing-room/statements-releases/2021/11/04/fact-sheet-biden-administration-announces-details-of-two-major-vaccination-policies/.

135.    On November 10, 2021, the OMB Director published another notice of determination ("Second OMB Rule") reflecting the new date and purporting to provide bases for support, 86 Fed. Reg. 63418 (Nov. 10, 2021), and the Task Force issued new guidance also reflecting the new January 4 date. The Second OMB Rule is a post hoc attempt to cure the failures in the prior OMB notice, but the outcome of this "do-over" was a foregone conclusion and not the result of a reasoned and independent judgment or analysis.

136.    Conservatively, there are 790,000 unvaccinated federal contractors, and the number is likely much higher because of sub-contractors covered by the mandate. *See* Paul C. Light, *The True Size of Government is Nearing a Record High*, Brookings Institute, https://www.brookings.edu/blog/fixgov/2020/10/07/the-true-size-of-government-is-nearing-a-record-high/ (estimating 5 million contractors in 2020); CDC, *COVID-19 Vaccinations in the United States*, https://covid.cdc.gov/covid-data-tracker/#vaccinations_vacc-total-admin-rate-total (15.8% of adults have received no vaccine shots) (last visited Dec. 12, 2021).

137.    This past fiscal year alone, the government awarded $145.7 billion in federal contract dollars just to small businesses. SBA, *Federal Government Awards Record-*

*Breaking $145.7 Billion in Contracting to Small Businesses*, July 28, 2021, https://www.sba.gov/article/2021/jul/28/federal-government-awards-record-breaking-1457-billion-contracting-small-businesses.

138.    These contractors are subject to the Contractor Mandate, which refers to EO 14042, the First and Second OMB Rules, and the FAR Council Directive.

139.    The Contractor Mandate is designed to, and in fact does, act naturally and predictably through the contracting entities to coerce them to vaccinate their employees who are considered covered contractors (who, in effect, are often the entire workforce of the contracting entity). Indeed, the Mandate would have almost no effect or purpose if it did *not* predictably cause contracting entities to force their unvaccinated workers to get vaccinated—or, alternatively, to terminate them for non-compliance that would prevent the entity from contracting with the federal government. Given that contracting entities often depend on the federal government for continued existence, there is no choice: the Contractor Mandate directly forces their workers to get vaccinated, or be fired. Accordingly, contracting entities and their employees are the objects of the Contractor Mandate. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 733–34 (D.C. Cir. 2003).

**Other Relevant COVID Measures Taken By Biden Administration**

140.    On June 21, 2021, during the height of the delta-variant COVID spike, the Department of Labor issued an emergency temporary standard under the Occupational Safety and Health Act, setting forth workplace requirements for healthcare workers to "reduce transmission of COVID-19 in their workplaces." *Occupational Exposure to COVID-19; Emergency Temporary Standard*, 86 Fed. Reg. 32376 (June 21, 2021)

("Healthcare ETS"). The Healthcare ETS targets healthcare workers specifically because "the nature of their work often involving frequent and sustained close contact with COVID–19 patients." *Id.* at 32385. The Healthcare ETS did not require employees to be vaccinated. In fact, it "recognize[d] that some employees may decline vaccination for a number of reasons, including underlying medical conditions or conscience-based objections (moral or religious)." *Id.* at 32599.

141.    On November 4, 2021, the Department of Labor issued another emergency standard (promulgated a day later in the Federal Register), this one requiring private companies with 100 or more employees to either vaccinate all of their employees, or to have them wear masks and undergo weekly testing. *COVID-19 Vaccination and Testing; Emergency Temporary Standard*, 86 Fed. Reg. 61402 (Nov. 5, 2021) ("Private ETS"). The Private ETS found that regular testing/masking and mandatory vaccination "are similar but slightly different schemes that provide roughly equivalent protection." *Id.* at 61515.

142.    The Private ETS likewise acknowledged that "it is well established that … regularly testing individuals for COVID-19 infection can be an effective method for reducing virus transmission," *id.* at 61438, and that "State and local regulations of general applicability that mandate face coverings *or* vaccination … have significantly reduced the harmful effects of the pandemic and total fatalities," *id.* at 61509.

143.    Some agencies have already started "recommending" boosters for all adults, and it is inevitable that Defendants will soon mandate boosters-or-termination.

*Injuries to Plaintiffs and the Country*

144.   Plaintiffs are harmed by the government's Mandates and accompanying actions and impending actions—and indeed are the direct targets of the Mandates.

145.   Feds for Medical Freedom asserts harm via its members, which include nearly every named individual Plaintiff, as well as thousands of others who have not been expressly named but who are entitled to relief in the event Feds for Medical Freedom prevails.  *Warth v. Seldin*, 422 U.S. 490, 515 (1975) ("[I]t can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.").

146.   Local 918 asserts harm via its members, many of whom have declined to attest to a fully-vaccinated status. Those members are likewise entitled to relief in the event Local 918 prevails. *Id.*

147.   Over a dozen named Plaintiffs have declined to seek exemptions from the Mandates. One of them (Andrew Schaecher) has been given written notice that he will be fired on January 10, 2022. Several others have been disciplined with written reprimands and warnings saying that failure to attest to a fully-vaccinated status could result in imminent suspension followed by termination.

148.   These Plaintiffs undoubtedly face not just harm—but imminent harm. *See* Opinion 5, *Rodden*, No. 3:21-cv-317 (S.D. Tex. Nov. 27, 2021) (noting that plaintiff who had "not claimed an exemption" and for whom "the process to discipline her has already begun" "appears" to have "shown a likely irreparable injury"). This is enough to warrant relief for *all* Plaintiffs, given the lockstep nature of the federal government's vaccine

deadlines. *See League of Women Voters of United States v. Newby*, 838 F.3d 1, 8–9 (D.C. Cir. 2016).

149.    Indeed, it would be disingenuous for the government to dispute that these harms are imminent. The entire point of the Mandates is to force vaccinations quickly by threatening to initiate drastic employment or contractual harms *at any moment*—action that can be avoided only by giving in and getting vaccinated unwillingly. "[T]he value of a sword of Damocles is that it hangs—not that it drops. For every employee who risks his job by testing the limits of the [government's action], many more will choose the cautious path." *Arnett v. Kennedy*, 416 U.S. 134, 231 (1974) (Marshall, J., dissenting).

150.    These harms are also irreparable. Plaintiffs will suffer unique reputational and career harm that would never apply to mine-run federal employment actions. The President has labeled these employees as pariahs who cannot and should not be hired anywhere else. He has deemed them lawbreakers ("violat[ors] of a lawful order") and "kill[ers]." *Transcript: CNN Presidential Town Hall with President Joe Biden*, CNN (Oct. 21, 2021), https://transcripts.cnn.com/show/se/date/2021-10-21/segment/01. This is far more than just losing a job. The government's pernicious targeting and blackballing result in severe reputational damage that cannot be undone with money. And it also makes uniquely challenging to find other employment, especially given that *all* federal employment and contractor work will be prohibited due to the Mandates.

151.    The Fifth Circuit has long recognized this kind of severe employment action—causing serious reputational harm—is irreparable, even when it does not result in a permanent bar from industry work. *See BST*, 17 F.4th at 618; *Burgess v. Fed. Deposit*

*Ins. Corp.*, 871 F.3d 297, 304 (5th Cir. 2017) (finding irreparable harm where the government would make plaintiff "withdraw from the banking industry," which caused "reputational harm" and would leave him "unable to find employment in the banking industry so long as the [government's] order remains in place"); *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997) (same).

152.    Moreover, any employee who loses his job because his security clearance was withdrawn for violating a "lawful" vaccine order will be forever barred from challenging his removal. *See Dep't of Navy v. Egan*, 484 U.S. 518, 529–30 (1988) (no jurisdiction in court or MSPB to review revocation of security clearance). It is truly now or never for these employees (such as Plaintiff Steve McComis).

153.    Further, employees with religious objections face a "crisis of conscience" that is irreparable. "It is difficult to imagine how a crisis of conscience, whether instigated by government or industry, could be remedied by an award of monetary damages. Take this case: The person who acquiesces to [his agency's] mandate despite his faith doesn't lose any pay. But he will have to wrestle with self-doubt—questioning whether he has lived up to the calling of his faith. Likewise, the person who refuses must also wrestle with self-doubt—questioning whether his faith has hurt his family, and whether living up to his commitments was worth sacrificing the interests of his loved ones." *Sambrano v. United Airlines, Inc.*, No. 21-11159, ___ F.4th ___, 2021 WL 5881819, at *3 (5th Cir. Dec. 13, 2021) (Ho, J., dissenting).

154.    In addition to direct employment harms, some plaintiffs face uniquely damaging losses that money could never repair. For example:

155.    If Plaintiff Joshua Roberts is terminated, he and his wife may be deemed jobless and barred from adopting the two infants they have fostered since the babies were only a few weeks old. No amount of money could ever repair that.

156.    Plaintiff Thomas David Green is a DHS employee who served as a Sergeant in the U.S. Marine Corps and as a Sergeant in the U.S. Army during Operation Iraqi Freedom III, and *he is a single father and the sole financial provider for four minor children*.

157.    The Mandates also cause irreparable harm for *employers* via lost employees and unrecoverable compliance costs. *BST*, 17 F.4th at 618. Plaintiff Highland Engineering is suffering imminent harm from having to agree to comply with Task Force guidance just to be able to bid on government contracts or sub-contracts as they arise (as recently as December 10, 2021), and Highland Engineering already had GSA unilaterally impose that term for all of their existing contracts.

158.    Finally, Plaintiffs cannot recover money damages under the APA or an *ultra vires* claim, rendering any damages irreparable. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021)  ("[W]here parties cannot typically recover monetary damages flowing from their injury—as is often the case in APA cases—economic harm can be considered irreparable.").

159.    Unvaccinated federal employees work in every single component of the federal government, performing some of the most sensitive and critical work to protect the country. The public therefore has an exceedingly strong interest in seeing that Plaintiffs

remain on the job performing critical functions like national security, firefighting, border patrol, medic services, military weapons development, and airport security.

160.    Again, to be clear, Plaintiffs do not challenge any individual employment decision in this suit. Rather, they tell their stories for the benefit of the Court and for demonstrating Article III injury and irreparable harm.

161.    The number of individuals involved in this case—although staggering—still represents only a small fraction of how many employees and contractors will suffer because of the Mandates. The federal government has very few positions that are not important to the public in some way.

162.    Because of these Mandates, the country is suddenly facing perhaps hundreds of thousands of these critical employees and contractors being placed on leave or terminated, during an already terrible workforce shortage. The economic and national security consequences will be disastrous for the country at every level, in every State, and even across the world.

## CLAIMS FOR RELIEF

## COUNT ONE

### (Ultra Vires Acts)

163.    A plaintiff may "institute a non-statutory review action" against an agency head "for allegedly exceeding his statutory authority." *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1327–28 (D.C. Cir. 1996) (the APA "does not repeal the review of ultra vires actions"). "Even if the [agency head] were acting at the behest of the President, this does not leave the courts without power to review the legality of the action, for courts

have power to compel subordinate executive officials to disobey illegal Presidential commands." *Id.* (alterations omitted); *Associated Builders & Contractors of Se. Texas v. Rung*, No. 1:16-CV-425, 2016 WL 8188655, at *5 (E.D. Tex. Oct. 24, 2016) (when "a federal agency operating within the Executive Branch" has "implemented the President's Executive Order by issuing … Guidance incorporated by reference in [a] new Rule," the "Executive Order may be challenged by Plaintiffs on both statutory and non-statutory grounds").

164. The Employee Mandate is ultra vires. Under the "major questions doctrine," Congress must "speak[] clearly when it delegates the power to make decisions of vast economic and political significance." *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1925 (2020) (Thomas, J., concurring in part); *see Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021) ("We expect Congress to speak clearly when authorizing an agency to exercise powers of 'vast economic and political significance.'"); *King v. Burwell*, 576 U.S. 473, 486 (2015); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000). There is no doubt that the challenged acts are ones of "vast economic and political significance," given the sheer numbers of employees involved.

165. The Mandate also targets an area traditionally occupied by the States—vaccinations and general health. It is also questionable whether Congress itself could issue the Mandate under the Commerce Clause.

166. Any one of these grounds would require Congress to provide clear authorization to the Executive to issue the Mandate.

167. But none of the statutory authorities relied on in the Mandate (including EO 14043) or any other possibly relevant document or action here *even hints*—let alone clearly states—that Congress handed over the power to do something as drastic as vaccinate every federal employee and contractor, on pain of termination of employment and contracts. *See, e.g.*, 5 U.S.C. §§ 3301, 3302, 7301. These statutes refer to selecting civil service applicants and regulating federal employees' "conduct"—subjects far afield from requiring vaccination (which indeed is not employee "conduct" at all, but rather a "status").

168. The lack of statutory authority is dispositive. The President lacks inherent constitutional authority to force all federal employees to get vaccinated. *BST*, 17 F.4th at 618 ("Nor can the Article II executive breathe new power into OSHA's [vaccine mandate] authority—no matter how thin patience wears.").

169. The Employee Mandate is therefore ultra vires and should be enjoined and declared illegal.

## COUNT TWO
### (Ultra Vires Acts)

170. The allegations in each of the preceding paragraphs are expressly incorporated herein as if restated in full.

171. A plaintiff may "institute a non-statutory review action" against an agency head "for allegedly exceeding his statutory authority." *Reich*, 74 F.3d at 1327-28 (the APA "does not repeal the review of ultra vires actions"). "Even if the [agency head] were acting at the behest of the President, this does not leave the courts without power to review the legality of the action, for courts have power to compel subordinate executive officials to

disobey illegal Presidential commands." *Id.* (alterations omitted); *Associated Builders & Contractors of Se. Texas v. Rung*, No. 1:16-CV-425, 2016 WL 8188655, at *5 (E.D. Tex. Oct. 24, 2016) (when "a federal agency operating within the Executive Branch" has "implemented the President's Executive Order by issuing … Guidance incorporated by reference in [a] new Rule," the "Executive Order may be challenged by Plaintiffs on both statutory and non-statutory grounds").

172.    The Contractor Mandate is ultra vires. Under the "major questions doctrine," Congress must "speak[] clearly when it delegates the power to make decisions of vast economic and political significance." *Regents*, 140 S. Ct. at 1925 (Thomas, J., concurring in part); *see Alabama Ass'n*, 141 S. Ct. at 2489 ("We expect Congress to speak clearly when authorizing an agency to exercise powers of 'vast economic and political significance.'"); *King v. Burwell*, 576 U.S. 473, 486 (2015); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000). There is no doubt that the challenged acts are ones of "vast economic and political significance," given the sheer numbers of employees, contractors, and contracts involved.

173.    The Mandate also targets an area traditionally occupied by the States—vaccinations and general health. It is also questionable whether Congress itself could issue the Mandate under the Commerce Clause.

174.    Any one of these grounds would require Congress to provide clear authorization to the Executive to issue the Mandates.

175.    But none of the statutory authorities relied on in Contractor Mandate (including EO 14042, the FAR Council Directive, the First and Second OMB Rules) or

any other possibly relevant document or action here *even hints*—let alone clearly states—that Congress handed over the power to do something as drastic as vaccinate every federal employee and contractor, on pain of termination of employment and contracts. *See, e.g.*, 40 U.S.C. § 102(4)(A); 3 U.S.C. § 301; 41 U.S.C. § 6701. These statutes refer to definitions, delegation, and procurement—far afield from requiring vaccinations for millions of Americans, many of whom do not even work for companies that contract directly with the federal government.

176. The lack of statutory authority is dispositive. The President lacks inherent constitutional authority to force all contractors and subcontractors to get vaccinated. *BST*, 17 F.4th at 618 ("Nor can the Article II executive breathe new power into OSHA's [vaccine mandate] authority—no matter how thin patience wears.").

177. Moreover, as noted above the President lacks authority to set nationwide procurement policy—that belongs only to the FAR Council. Also, the President may only issue EOs that have a "reasonably close nexus" to efficiency and economy in procurement. *Reich*, 74 F.3d at 1330–31. But the pretextual nature defeats this, as do the Contractor Mandate's absurdly broad definitions of a covered contractor and workplace.

178. The Contractor Mandate is therefore ultra vires and should be enjoined and declared illegal.

## COUNT THREE

### (Violation of Article I Of The Constitution: Nondelegation)

179. The allegations in each of the preceding paragraphs are expressly incorporated herein as if restated in full.

180.     Article I, § 1 of the U.S. Constitution states, "[a]ll legislative powers herein granted shall be vested in a Congress of the United States." Under Article I, § 1, only Congress may engage in lawmaking.

181.     To the extent any of the statutes on which the Employee or Contractor Mandates rely or are based are indeed construed to allow the President to force perhaps millions of employees and contractors to be vaccinated or fired, the statutes are unconstitutional because they purport to provide vast, unchecked legislative powers to the Executive Branch, many of them without even the fig leaf of an "intelligible principle," let alone the stricter level of detail required by the original understanding of nondelegation principles. *See Gundy v. United States*, 139 S. Ct. 2116, 2134–37 (2019) (Gorsuch, J., dissenting, joined by Roberts, C.J., and Thomas, J.).

182.     For example, EO 14043 invoked 5 U.S.C. § 7301, which states, in full: "The President may prescribe regulations for the conduct of employees in the executive branch." This says nothing more than, in essence, "the President shall make laws." That violates the nondelegation doctrine. *Mistretta v. United States*, 488 U.S. 361, 373 n.7 (1989) (violates nondelegation where "Congress had failed to articulate *any* policy or standard").

183.     Moreover, to the extent the Court agrees that FPASA authorizes the President to require contractors to mandate vaccines to their employees to promote economy and efficiency in procurement, FPASA lacks an intelligible principle and represents an unconstitutional delegation.

184. At the very least, the Court should construe these statutes narrowly to avoid such an unconstitutional interpretation, which means finding in Plaintiffs' favor on their ultra vires claims.

## COUNT FOUR

### (Violation Of APA: Arbitrary & Capricious)

185. The allegations in each of the preceding paragraphs are expressly incorporated herein as if restated in full.

186. The Employee Mandate is arbitrary and capricious.

187. When an agency implements an Executive Order, that agency action is subject to APA review. *See, e.g.*, *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 669 (9th Cir. 2021); *Coliseum Square Ass'n v. Jackson*, 465 F.3d 215, 232 (5th Cir. 2006); *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1326–28 (D.C. Cir. 1996) (holding that mere fact that "regulations are based on the President's Executive Order hardly seems to insulate them from judicial review under the APA, even if the validity of the Order were thereby drawn into question"); *see also City of Carmel-by-the-Sea v. U.S. Dep't of Transp.*, 123 F.3d 1142, 1166 (9th Cir. 1997); *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897 (5th Cir. 1983) (holding that the APA's broad definition of the term "rule" includes "virtually every statement an agency may make").

188. Federal administrative agencies are required to engage in "reasoned decisionmaking." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998) (internal quotation omitted). This necessarily means that "[n]ot only must an agency's decreed result be within the scope of its lawful authority, but the process by which it

reaches that result must be logical and rational." *Id.* More specifically, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43.

189.   The Employee Mandate is arbitrary and capricious because it fails to provide reasoned decisionmaking.

190.   The Task Force guidance for employees (adopted by the Defendant agencies in promulgating the Federal Employee Mandate) contains only one sentence of rationale for its unprecedented decision to impose a vaccine mandate on millions of employees: "To ensure the safety of the Federal workforce, Federal employees must be fully vaccinated, except in limited circumstances where an employee is legally entitled to a reasonable accommodation." *COVID-19 Workplace Safety: Agency Model Safety Principles*, Safer Federal Workforce Task Force (Sept. 13, 2021), https://www.saferfederalworkforce.gov/downloads/updates%20to%20model%20safety%20principles%209.13.21.pdf.

191.   The Mandates themselves fail to explain any of the incredibly important (or downright bizarre) aspects of the Mandates. For example: Why are vaccines mandated for federal employees when OSHA *just said* that private employers can use testing and masking to provide "roughly equivalent protection" as a vaccine mandate? 86 Fed. Reg. at 61515 (discussed below in more detail). Why are vaccines mandated when OSHA also said that frontline healthcare workers face "grave danger" from COVID but still do *not* need to be vaccinated? *Id.* at 32599. Why are teleworkers covered? Why is every agency and

employee treated the same regardless of location and work place? Why are people with antibodies forced to get vaccinated? What data was examined about the economic and societal damages from imposing the mandates, or the reliance interests in the Executive's repeated statements that there would be no mandates? How many employees will be covered? How many will be fired? What side effects will they suffer, and why are those side effects outweighed by the benefits of vaccination?

192.    Moreover, these challenged actions failed to take "any consideration whatsoever' of a [more limited] policy," such as allowing for testing, or excluding individuals with documented antibodies. *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1912 (2020).

193.    The Mandate is also arbitrary and capricious because it is rife with unexplained inconsistencies, utterly baffling requirements, and pretextual bases. For example:

194.    There is no alternative to vaccination. This is inconsistent with the just-issued OSHA Private ETS, which allows masking and weekly testing as an alternative to mandated vaccinations because "they are similar but slightly different schemes that provide roughly equivalent protection." 86 Fed. Reg. at 61515. The Private ETS likewise acknowledged that "it is well established that … regularly testing individuals for COVID-19 infection can be an effective method for reducing virus transmission," *id.* at 61438, and that "State and local regulations of general applicability that mandate face coverings *or* vaccination … have significantly reduced the harmful effects of the pandemic and total fatalities," *id.* at 61509.

195.    There is no rational reason why OSHA gave private employees the option to do regular testing and masking in lieu of vaccination, but federal employees are not (and the option was not even *considered*)—especially when these schemes were promulgated nearly simultaneously as part of a single COVID policy announced by President Biden on September 9. "Treating similar situations differently without adequate explanation is the very embodiment of arbitrary conduct." *Rupcich v. United Food & Com. Workers Int'l Union*, 833 F.3d 847, 856 (7th Cir. 2016); *Nat. Res. Def. Council v. U.S. Nuclear Regul. Comm'n*, 879 F.3d 1202, 1214 (D.C. Cir. 2018) ("[I]t would be arbitrary and capricious for the agency's decision making to be 'internally inconsistent.'").

196.    Similarly, the federal Healthcare ETS issued in June concluded there was no need to mandate vaccines even for the most at-risk workers in the country (frontline healthcare workers), despite the conclusion that they faced a "grave danger" from COVID, and despite the fact that the Delta variant became the predominant strain just a few days afterwards. 86 Fed. Reg at 32599. Unlike the Healthcare ETS, the Federal Employee Mandate makes no attempt to account for agency- or workplace-specific factors that might increase exposure risk. The rules apply across the board. Since the Healthcare ETS was issued in June, over 30 million *more* Americans have been fully vaccinated, suggesting that the need for vaccination is lower now than it was when that ETS was issued, and indeed cases have dropped dramatically since then, highlighting even further the illogic of forcing every federal employee and contractor to get vaccinated when it was not necessary for frontline healthcare workers. *See* CDC*, Trends in Number of COVID-19 Vaccinations in the US*, https://covid.cdc.gov/covid-data-tracker/#vaccination-trends. The Healthcare ETS

"recognize[d] that some employees may decline vaccination for a number of reasons, including underlying medical conditions or conscience-based objections (moral or religious)." 86 Fed. Reg. at 32599. There is no rational reason why this applies to healthcare workers—but not to federal employees. *Rupcich*, 833 F.3d at 856.

197.    The challenged actions make no distinction between employees. Someone who works in close contact with infected people for 12 hours a day is treated the same as someone with COVID antibodies who never leaves his house. It is textbook arbitrariness to require every single employee to get vaccinated (and potentially suffer side effects) despite already having protection against infection, or never interacting with other federal workers, or doing so only outside in ventilated or outdoor areas. The lack of consideration for employees with documented antibodies is especially arbitrary because the medical community has confirmed that "[i]ndividuals who have had SARS-CoV-2 infection are unlikely to benefit from COVID-19 vaccination." Nabin K. Shrestha et al., *Necessity of COVID-19 Vaccination in Previously Infected Individuals* at 2, https://www.medrxiv.org/content/10.1101/2021.06.01.21258176v3.full.pdf.

198.    The Mandate is also premised on a pretextual and contrived basis: the purpose is not to govern employee "conduct"—it is to issue a "work-around" for a vaccine mandate. Even if that goal were otherwise legal, giving a false explanation for agency action is necessarily arbitrary and capricious. *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573–76 (2019). This contrived premise is demonstrated by President Biden's inconsistent statements: he said being vaccinated renders someone "as safe as possible," but then said vaccinated people needed to be "protect[ed]" from unvaccinated people. *Remarks by*

*President Biden*, *supra*. When the government cannot keep its story straight on the foundational premise of its most significant actions, it is a strong indicator of arbitrary-and-capricious and pretextual action.

## COUNT FIVE

### (Violation Of APA: Arbitrary & Capricious)

199. The allegations in each of the preceding paragraphs are expressly incorporated herein as if restated in full.

200. The Contractor Mandate is arbitrary and capricious.

201. When an agency implements an Executive Order, that agency action is subject to APA review. *See, e.g.*, *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 669 (9th Cir. 2021); *Coliseum Square Ass'n v. Jackson*, 465 F.3d 215, 232 (5th Cir. 2006); *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1326-28 (D.C. Cir. 1996) (holding that mere fact that "regulations are based on the President's Executive Order hardly seems to insulate them from judicial review under the APA, even if the validity of the Order were thereby drawn into question"); *see also City of Carmel-by-the-Sea v. U.S. Dep't of Transp.*, 123 F.3d 1142, 1166 (9th Cir. 1997); *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897 (5th Cir. 1983) (holding that the APA's broad definition of the term "rule" includes "virtually every statement an agency may make").

202. Federal administrative agencies are required to engage in "reasoned decisionmaking." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998) (internal quotation omitted). This necessarily means that "[n]ot only must an agency's decreed result be within the scope of its lawful authority, but the process by which it

reaches that result must be logical and rational." *Id.* More specifically, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43.

203.    Although the Second OMB Rule provided some details as to why the Mandate is supposedly in the interests of contracting, that document was issued after the fact and after numerous lawsuits had argued that the First OMB Rule was flawed, and the outcome was a foregone conclusion. Accordingly it cannot be considered, as courts look to the rationale when the agency decision was made—not after it gets sued and realizes it needs to drum up something post hoc. That leaves the First OMB Rule (which had no reasoning), and the Task Force guidance for contractors (implemented by agencies in their Contractor Mandate), which includes just one sentence of justification: the guidance "will improve economy and efficiency by reducing absenteeism and decreasing labor costs for contractors and subcontractors working on or in connection with a [f]ederal [g]overnment contract." *COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors*, Safer Federal Workforce Task Force (Sept. 24, 2021), https://www.saferfederalworkforce.gov/downloads/Draft%20contractor%20guidance%20 doc_20210922.pdf. The Contractor Mandate is therefore invalid for the same reasons as the Employee Mandate.

204.    The Contractor Mandate is arbitrary and capricious because it fails to provide reasoned decisionmaking. For example: Why are vaccines mandated for contractors when OSHA *just said* that private employers can use testing and masking to provide "roughly

equivalent protection" as a vaccine mandate? 86 Fed. Reg. at 61515 (discussed below in more detail). Why are vaccines mandated when OSHA also said that frontline healthcare workers face "grave danger" from COVID but still do *not* need to be vaccinated? *Id.* at 32599. Why are teleworkers covered? Why is almost every employee treated the same regardless of location and work place? Why are people with antibodies forced to get vaccinated? What data was examined about the economic and societal damages from imposing the mandates, or the reliance interests in the Executive's repeated statements that there would be no mandates? How many employees will be covered? How many will be fired? What side effects will they suffer, and why are those side effects outweighed by the benefits of vaccination?

205. Moreover, these challenged actions failed to take "any consideration whatsoever' of a [more limited] policy," such as allowing for testing, or excluding individuals with documented antibodies. *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1912 (2020).

206. The challenged actions are also arbitrary and capricious because they are rife with unexplained inconsistencies, utterly baffling requirements, and pretextual bases. For example:

207. The challenged actions do not provide (or even address, as noted above) *any* alternative to vaccination. This is inconsistent with the just-issued OSHA Private ETS, which allows masking and weekly testing as an alternative to mandated vaccinations because "they are similar but slightly different schemes that provide roughly equivalent protection." 86 Fed. Reg. at 61515. The Private ETS likewise acknowledged that "it is well

established that … regularly testing individuals for COVID-19 infection can be an effective method for reducing virus transmission," *id.* at 61438, and that "State and local regulations of general applicability that mandate face coverings *or* vaccination … have significantly reduced the harmful effects of the pandemic and total fatalities," *id.* at 61509.

208.    There is no rational reason why OSHA gave private employees the option to do regular testing and masking in lieu of vaccination, but federal contractors are not (and the option was not even *considered*)—especially when these schemes were promulgated nearly simultaneously as part of a single COVID policy announced by President Biden on September 9. "Treating similar situations differently without adequate explanation is the very embodiment of arbitrary conduct." *Rupcich v. United Food & Com. Workers Int'l Union*, 833 F.3d 847, 856 (7th Cir. 2016); *Nat. Res. Def. Council v. U.S. Nuclear Regul. Comm'n*, 879 F.3d 1202, 1214 (D.C. Cir. 2018) ("[I]t would be arbitrary and capricious for the agency's decision making to be 'internally inconsistent.'").

209.    Similarly, the federal Healthcare ETS issued in June concluded there was no need to mandate vaccines even for the most at-risk workers in the country (frontline healthcare workers), despite the conclusion that they faced a "grave danger" from COVID, and despite the fact that the Delta variant became the predominant strain just a few days afterwards. 86 Fed. Reg at 32599. Unlike the Healthcare ETS, the Contractor Mandate makes almost no attempt to account for agency- or workplace-specific factors that might increase exposure risk. It defines "covered contractor" so broadly as to capture almost every employee. Since the Healthcare ETS was issued in June, over 30 million *more* Americans have been fully vaccinated, suggesting that the need for vaccination is lower

now than it was when that ETS was issued, and indeed cases have dropped dramatically since then, highlighting even further the illogic of forcing every federal contractor to get vaccinated when it was not necessary for frontline healthcare workers. *See* CDC*, Trends in Number of COVID-19 Vaccinations in the US*, https://covid.cdc.gov/covid-data-tracker/#vaccination-trends. The Healthcare ETS "recognize[d] that some employees may decline vaccination for a number of reasons, including underlying medical conditions or conscience-based objections (moral or religious)." 86 Fed. Reg. at 32599. There is no rational reason why this applies to healthcare workers—but not to federal employees or contractors. *Rupcich*, 833 F.3d at 856.

210.     The challenged actions make almost no distinction between employees— even people who may fleetingly pass each other in a stairwell must be vaccinated, as must subcontractors. It is textbook arbitrariness to require nearly every single employee to get vaccinated (and potentially suffer side effects) despite already having protection against infection, or never interacting with other workers, or doing so only outside in ventilated or outdoor areas. The lack of consideration for employees with documented antibodies is especially arbitrary because the medical community has confirmed that "[i]ndividuals who have had SARS-CoV-2 infection are unlikely to benefit from COVID-19 vaccination." Nabin K. Shrestha et al., *Necessity of COVID-19 Vaccination in Previously Infected Individuals*               at                       2, https://www.medrxiv.org/content/10.1101/2021.06.01.21258176v3.full.pdf.

211.     The Mandate is also premised on a pretextual and contrived basis: the purpose is not to improve government contracting—it is to issue a "work-around" for a

vaccine mandate. Even if that goal were otherwise legal, giving a false explanation for agency action is necessarily arbitrary and capricious. *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573–76 (2019). This contrived premise is demonstrated by President Biden's inconsistent statements: he said being vaccinated renders someone "as safe as possible," but then said vaccinated people needed to be "protect[ed]" from unvaccinated people. *Remarks by President Biden*, *supra*. When the government cannot keep its story straight on the foundational premise of its most significant actions, it is a strong indicator of arbitrary-and-capricious and pretextual action.

## COUNT SIX

### (Violation Of APA: Acts Not In Accordance With Law)

212.    The allegations in each of the preceding paragraphs are expressly incorporated herein as if restated in full.

213.    When an agency implements an Executive Order, that agency action is subject to APA review. *See, e.g.*, *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 669 (9th Cir. 2021); *Coliseum Square Ass'n v. Jackson*, 465 F.3d 215, 232 (5th Cir. 2006); *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1326-28 (D.C. Cir. 1996) (holding that mere fact that "regulations are based on the President's Executive Order hardly seems to insulate them from judicial review under the APA, even if the validity of the Order were thereby drawn into question"); *see also City of Carmel-by-the-Sea v. U.S. Dep't of Transp.*, 123 F.3d 1142, 1166 (9th Cir. 1997); *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897 (5th Cir. 1983) (holding that the APA's broad definition of the term "rule" includes "virtually every statement an agency may make").

214. Under the APA, courts must "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations" or "not in accordance with law." 5 U.S.C. § 706(2)(A), (C).

215. The Contractor Mandate is contrary to law and exceeds agency authority relating to procurement.

216. In 1988, after decades of failure by officials in the Executive Office of the President charged with coordinating government-wide procurement, Congress established the FAR Council "to assist in the direction and coordination of [g]overnment-wide procurement policy and [g]overnment-wide procurement regulatory activities in the [f]ederal [g]overnment." Office of Federal Procurement Policy Act Amendments of 1988, Pub. L. No. 100-679, § 3, 102 Stat. 4056, later codified at 41 U.S.C. §1302(a). The FAR Council consists of the OFPP Administrator, the Secretary of Defense, the Administrator of NASA, and the GSA Administrator. 41 U.S.C. § 1302(b).

217. Subject to limited exceptions, only the FAR council has the power to "issue and maintain … a single [g]overnment-wide procurement regulation," 41 U.S.C. § 1303(a)(1), and thus "[o]ther regulations relating to procurement issued by an executive agency [are] limited to" *agency-specific* regulations, *id.*, § 1303(a)(2).

218. EO 14042 violates § 1303 because it asks OMB to issue a government-wide procurement regulation requiring vaccines—a task exclusively reserved to the FAR Council. 86 Fed. Reg. at 50,985–96. The First and Second OMB Rules similarly violate § 1303 because they carry out the President's unlawful instruction. 86 Fed. Reg. at 53,691– 92. And the FAR Council Directive violates § 1303 because it abdicates the FAR Council's

responsibility to issue government-wide procurement regulations, instead "remind[ing]" agencies to do what EO 14042 requires. Because the President and OMB Director attempt to exercise authority exclusively reserved to the FAR Council and because the FAR Council acquiesces to and even encourages this intrusion, the challenged actions are contrary to law.

219. EO 14042 apparently seeks to circumvent § 1303 by delegating the President's power under the Federal Property and Administrative Services Act ("FPASA") to the OMB Director. 86 Fed. Reg. at 50,985.

220. That attempt is unlawful because the President has no authority to issue regulations under § 1303—only the FAR Council may issue government-wide procurement regulations. Relatedly, the First and Second OMB Rules are contrary to law because FPASA does not otherwise grant the President the power to issue orders with the force or effect of law. Congress authorized the President to "prescribe policies and directives that the President considers necessary to carry out" FPASA. 40 U.S.C. § 121(a). "[P]olicies and directives" describe the President's power to direct the exercise of procurement authority throughout the government. It does not authorize the President to issue regulations himself.

221. Even if FPASA authorized the President to issue orders with the force or effect of law, it would not authorize approval of the Task Force guidance. The President appears to assume that FPASA authorizes him to issue any order that he believes, as FPASA's statement of purpose states, promotes "an economical and efficient" procurement system. 40 U.S.C. § 101; *see* 86 Fed. Reg. at 50,985 ("This order promotes

economy and efficiency in [f]ederal procurement."). But that mistakes a prefatory purpose statement for a grant of authority. *District of Columbia v. Heller*, 554 U.S. 570, 578 (2008) ("[A]part from [a] clarifying function, a prefatory clause does not limit or expand the scope of the operative clause.").

222.    And even if FPASA did authorize the President to issue binding procurement orders solely because they may promote economy and efficiency, the First and Second OMB Rules do not legally do so. Congress's provision of an "economic and efficient system for" procurement is not a broad enough delegation to impose nationwide social policy that Congress has not clearly authorized. Further, the executive order is divorced from the practical needs of procurement. It will exclude otherwise competitive bidders, cause contractors to suffer labor shortages, and is substantially overbroad in, for example, refusing to account for natural immunity and ignoring the low transmission risk for COVID-19 outdoors.

223.    Finally, the First and Second OMB Rules inconsistent with the requirements of the Competition in Contracting Act, which requires federal agencies to "provide for full and open competition through the use of competitive procedures." 41 U.S.C. § 3301; *see* 40 U.S.C. § 121(a) (requiring "policies" issued by the President pursuant to FPASA to be "consistent with this subtitle"); 40 U.S.C. § 111 (defining "this subtitle" to include portions of Title 41, including § 3301). The First and Second OMB Rules preclude an entire class of contractors from obtaining federal contracts without regard to their capability to perform the contract. That is unlawful. *See Nat'l Gov't Servs., Inc. v. United States*, 923 F.3d 977, 986 (Fed. Cir. 2019) (finding invalid an agency policy that "effectively exclude[ed] an

offeror from winning an award, even if that offeror represent[ed] the best value to the government"). Because the First and Second OMB Rules violate § 1303(a), seek to exercise a delegated power the President does not possess, rely on a misreading of FPASA, and violate § 3301, they are contrary to law.

## COUNT SEVEN

### (Declaratory judgment)

224.    The allegations in each of the preceding paragraphs are expressly incorporated herein as if restated in full.

225.    For the same reasons described in each of the previous counts, Plaintiffs are entitled to a declaratory judgment that the Defendants have been and are violating the law.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court:

A.  Hold unlawful and set aside the Federal Employee Mandate and the Contractor Mandate;

B.  Issue preliminary and permanent injunctive relief enjoining all Defendants (excluding President Biden, but including all officers, agents, servants, employees, attorneys, persons who are in active concert or participation, and successors in office of every Defendant) from enforcing or implementing the Federal Employee Mandate and the Contractor Mandate.

C.  Issue declaratory relief declaring Defendants' actions unlawful.

D.  Award reasonable attorneys' fees and allowable costs, including under the Equal Access to Justice Act; and

E.  Grant Plaintiffs such other and further relief to which they are justly entitled at law

and in equity.

Dated: December 21, 2021

Respectfully submitted,

/s/ R. Trent McCotter
R. TRENT MCCOTTER (So. Dist. No. 3712529)
JONATHAN BERRY (*pro hac vice forthcoming*)
MICHAEL BUSCHBACHER (*pro hac vice forthcoming*)
BOYDEN GRAY & ASSOCIATES
801 17th St. NW, #350
Washington, DC 20006
(202) 706-5488
mccotter@boydengrayassociates.com