**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| FEDS FOR MEDICAL FREEDOM, et al., | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) No. 3:21-cv-356 |
| | ) |
| JOSEPH R. BIDEN, JR., et al., | ) |
| | ) |
| *Defendants*. | ) |

---

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
AND MEMORANDUM OF LAW IN SUPPORT**

---

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................. 10

    I.    Plaintiffs Are Likely to Prevail on the Merits. ............................................. 10

        A.    The Challenged Actions Are Ultra Vires. ..................................... 10

        B.    The Challenged Actions Violate the APA. ..................................... 16

    II.    Plaintiffs Will Suffer Irreparable Harm. .................................................... 25

    III.    The Balance of Equities and Public Interest Favor Plaintiffs. ...................... 29

    IV.    Relief Should Be Universal in Scope .......................................................... 30

CONCLUSION .......................................................................................................................... 30

# TABLE OF AUTHORITIES

## Cases

*Ala. Ass'n of Realtors v. HHS,* 141 S. Ct. 2485 (2021) .......................................................11, 13, 29

*Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359 (1998) ...........................................18

*Arnett v. Kennedy*, 416 U.S. 134 (1974) ...................................................................................26

*Associated Builders & Contractors of Se. Texas v. Rung,* No. 1:16-CV-425, 2016 WL 8188655 (E.D. Tex. Oct. 24, 2016) .........................................................................................................11

*Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897 (5th Cir. 1983) ...........................16

*Batterton v. Marshall*, 648 F.2d 694 (D.C. Cir. 1980) ............................................................17

*BST Holdings, L.L.C. v. OSHA,* 17 F.4th 604 (5th Cir. 2021)...............1, 13, 15, 22, 26, 27, 28, 29

*Burgess v. Fed. Deposit Ins. Corp.*, 871 F.3d 297 (5th Cir. 2017) ............................................27

*Califano v. Yamasaki*, 442 U.S. 682 (1979) .............................................................................30

*Chamber of Commerce of U.S. v. Reich,* 74 F.3d 1322 (D.C. Cir. 1996).........................11, 15, 16

*Coliseum Square Ass'n v. Jackson*, 465 F.3d 215 (5th Cir. 2006) ............................................16

*Dep't of Com. v. New York*, 139 S. Ct. 2551 (2019) ..................................................................23

*Dep't of Navy v. Egan*, 484 U.S. 518 (1988) .............................................................................27

*DHS v. Regents of the Univ. of California,* 140 S. Ct. 1891 (2020) ...........................11, 16, 20, 24

*E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021) ....................................16, 29

*Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117 (2016) .....................................................18

*Georgia v. Biden*, ___ F. Supp. 3d ___,
    2021 WL 2021 WL 5779939 (S.D. Ga. Dec. 7, 2021)....................................................13, 29

*Gundy v. United States*, 139 S. Ct. 2116 (2019) .......................................................................15

*Humana, Inc. v. Avram A. Jacobson, M.D.*, 804 F.2d 1390, (5th Cir. 1986) ..............................25

*Industrial Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607 (1980) ............. 15

*Kentucky v. Biden*, ___ F. Supp. 3d ___, 2021 WL 5587446 (E.D. Ky. Nov. 30, 2021)........13, 14

*King v. Burwell,* 576 U.S. 473 (2015).......................................................................................12

*League of Women Voters of United States v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ...................25

*Liberty Mut. Ins. Co. v. Friedman*, 639 F.2d 164 (4th Cir. 1981) ............................................15

*Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360 (1989) ........................................................18

*Missouri v. Biden*, ___ F. Supp. 3d ___,
    2021 WL 5564501 (E.D. Mo. Nov. 29, 2021) ...................................................14, 22, 23, 24

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) .........18

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 664 (2007) ....................................20

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399 (D.C. Cir. 1998) .................30

*Nat. Res. Def. Council v. U.S. Nuclear Regul. Comm'n*, 879 F.3d 1202 (D.C. Cir. 2018) .........22

*Nken v. Holder*, 556 U.S. 418 (2009) .......................................................29

*Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279 (5th Cir. 2012)....................10

*Rodden v. Fauci,* 3:21-cv-317 (S.D. Tex. Nov. 27, 2021) .....................................17, 25

*Rupcich v. United Food & Com. Workers Int'l Union*, 833 F.3d 847(7th Cir. 2016) ...........22, 23

*Sambrano v. United Airlines, Inc.*, No. 21-11159, ___ F.4th ___,

    2021 WL 5881819 (5th Cir. Dec. 13, 2021) .............................................28

*Sloan v. HUD*, 231 F.3d 10 (D.C. Cir. 2000) .................................................17

*Solid Waste Agency v. U.S. Army Corps of Eng'rs*, 531 U.S. 159 (2001) ....................14

*Texas v. Becerra*, No. 2:21-CV-229, ___ F. Supp. 3d ___,

    2021 WL 5964687 (N.D. Tex. Dec. 16, 2021) .........................................19

*Texas v. EEOC*, 933 F.3d 433 (5th Cir. 2019) .............................................17

*Texas v. United States*, 524 F. Supp. 3d 598 (S.D. Tex. 2021) ...................................21

*Utility Air Reg. Grp. V. EPA,* 573 U.S. 302 (2014)............................................12

*Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047 (5th Cir. 1997) .................................27

*Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925 (D.C. Cir. 2008) .............................17

*Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130 (5th Cir. 2021) .............................2, 18

*Warth v. Seldin*, 422 U.S. 490 (1975) ......................................................30

## Regulations, Statutes, and Executive Orders

86 Fed. Reg. 7045 ..........................................................................4

86 Fed. Reg. 32376 ................................................................9, 22, 23

86 Fed. Reg. 50985 ..................................................................5, 7, 16

86 Fed. Reg. 53691 .....................................................................8, 24

86 Fed. Reg. 61402 ...........................................................10, 19, 21, 24

86 Fed. Reg. 63418 .....................................................................9, 20

EO 13991 ..................................................................................4

EO 14042 ...........................................................................7, 12, 25

EO 14043 ............................................................................6, 7, 12

3 U.S.C. § 301 ............................................................................12

5 U.S.C. § 7301...................................................................12, 17, 24

29 U.S.C. § 651...........................................................................13

40 U.S.C. § 101 ................................................................................................12

41 U.S.C. § 1303 ..............................................................................................24

41 U.S.C. § 6701 ..............................................................................................12

**Other Authorities**

Joseph Biden, *Remarks by President Biden on Fighting the Covid-19
    Pandemic* (Sept. 9, 2021)...........................................................4, 5, 7, 24

Joseph Biden, *Transcript: CNN Presidential Town Hall with President Joe Biden*,
    CNN (Oct. 21, 2021) ..............................................................................26

CDC, *Trends in Number of COVID-19 Vaccinations in the US*...................22

FAR Council, *Memorandum from FAR Council to Chief Acquisition Officers et al. re: Issuance
    of Agency Deviations to Implement Executive Order 14042* (Sept. 30, 2021) ......................8

Safer Federal Workforce Task Force, *COVID-19 Workplace Safety: Agency Model Safety
    Principles* (Sept. 13, 2021) .....................................................................5

Safer Federal Workforce Task Force, *COVID-19 Workplace Safety: Guidance for Federal
    Contractors and Subcontractors* (Sept. 24, 2021) ...........................7, 16

Safer Federal Workforce Task Force, *FAQ* .................................................6

Nabin K. Shrestha et al., *Necessity of COVID-19 Vaccination in Previously
    Infected Individuals* .............................................................................6, 23

White House, *Biden Administration Announces Details of Two Major Vaccination Policies*........9

## INTRODUCTION

Hundreds of thousands of Americans—including the named individual Plaintiffs in this suit—who serve as federal employees and contractors have been put in an intolerable bind: either submit to forced vaccination pursuant to illegal agency mandates, or forfeit a career built up over years or decades of faithful public service. This Court should issue a preliminary injunction to protect these critical workers from the Executive's overreach.

In September 2021, as part of an acknowledged "work-around" for the absence of valid authority, *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 612 n.13 (5th Cir. 2021), the President issued Executive Orders directing all federal agencies and nearly all federal contractors to vaccinate their workers—or terminate them. Every federal agency has now mandated that its employees be fully vaccinated by November 22, 2021, or face cascading discipline, up to termination. That process has begun. One Plaintiff has received written notice that he will be fired on January 10, 2022. Others have received written warnings.

Similarly, all defendant agencies, acting pursuant to "guidance" from the Office of Management and Budget and Federal Acquisition Regulatory Council, are requiring that nearly all government contracts include a clause requiring contractors to have fully vaccinated almost all employees by January 18, 2021 (which, given the 14-day lag time, means the last necessary shot must have been administered on or before January 4, 2021).

These mandates are reviewable under the long-established *ultra vires* cause of action. As court after court across the country has now held in rejecting these types of federal vaccine mandates, none of the purported statutory authorities relied on by Defendants contain "clear language" allowing the Executive branch to undertake the

1

economically and politically seismic act of mandating vaccines for so many Americans—
an area of law traditionally reserved to the States—under the guise of "procurement" and
employee "conduct" regulations. Because the President acted beyond his lawful delegated
authority in issuing the Executive Orders, and thus the defendant agencies have likewise
acted beyond their lawful authority in implementing the mandates, the Court should enjoin
all defendants (except the President himself) from enforcing the mandates.

Even if there were statutory authority to issue these sweeping mandates, they still
fail to comply with basic requirements of administrative law. As the Fifth Circuit has made
clear, the Court's review under the Administrative Procedure Act "has serious bite" and
requires not only that the agencies reach an acceptable result, but that they provide a proper
explanation. *Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1136 (5th Cir. 2021).

Defendant agencies have adopted the Safer Federal Workplace Task Force's
guidance and made it binding on their employees. By doing so, the agencies' acts became
subject to APA review. Their mandates often provide extensive lists of requirements—but
almost zero rationale. Even if agencies could borrow rationale from the Task Force
guidance itself, it provides no help. The explanation of the mandate for federal employees
consists of a single sentence: "To ensure the safety of the Federal workforce, Federal
employees must be fully vaccinated, except in limited circumstances where an employee
is legally entitled to a reasonable accommodation."

Such conclusory remarks fail the reasoned-decisionmaking requirement for agency
action, especially given that the challenged actions fail to address, consider, or even
acknowledge dozens of critical legal, factual, and economic issues and questions about the

reasoning for such sweeping agency action. For example:

- There is no recognition of an alternative mechanism for compliance, such as testing and masking, even though the contemporaneous OSHA mandate for companies with 100 or more employees allows for testing and masking in lieu of mandatory vaccination and *expressly found that the two schemes "provide roughly equivalent protection."* It is arbitrary to treat similarly situated workers in such a different manner, but it is especially absurd not to even *consider* such an alternative for federal employees and contractors.

- Vaccines are mandated for every employee, yet a separate OSHA rule for frontline healthcare workers (those *most* at risk of being exposed to COVID) concluded that even though such workers face a "grave danger" from COVID, there was no need for a vaccine mandate.

- No explanation is provided for why employees with documented COVID antibodies must take the jab.

- No differentiation is made based on agency or workplace—even employees who work from home at all times must get injected.

The mandate for contractors likewise failed to consider the important issues above, or to review relevant data (and the government's later "do-over" does not solve those flaws), and is also in excess of authority because it violates statutes providing that only the FAR Council can issue government-wide procurement rules.

With so many statutory and procedural flaws, the employee and contractor mandates are likely to be held invalid.

3

The remaining requirements for a preliminary injunction are also satisfied. As the Fifth Circuit has recognized, employment actions that damage an employee's reputation, as well as those that effectively preclude him from entire fields of employment, are "irreparable." The President labels unvaccinated employees as dangerous and selfish to the point that they are "kill[ing]" others. This is far from an ordinary employment dispute. Plaintiffs also include individuals whose termination would have uniquely devastating consequences. For example, Plaintiff Joshua Roberts's hopes of adopting two foster infants in his family's care may be dashed if he loses his job. If that is not irreparable, nothing is.

Finally, it would be catastrophic to the security and functioning of the government if Defendants follow through on their threats to suspend and terminate unvaccinated workers, who number at least in the hundreds of thousands and perform critical work for the nation.

## STATEMENT OF FACTS

### A.    President Biden's COVID Actions

On January 20, 2021, President Biden established the Safer Federal Workforce Task Force and charged it with "provid[ing] ongoing guidance to heads of agencies on the operation of the Federal Government, the safety of its employees, and the continuity of Government functions during the COVID-19 pandemic." 86 Fed. Reg. 7045, 7046.

On September 9, 2021, President Biden announced that he would issue a slew of vaccine mandates "to protect vaccinated workers from unvaccinated co-workers." Joseph Biden, *Remarks by President Biden on Fighting the Covid-19 Pandemic* (Sept. 9, 2021), https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/09/09/remarks-by-president-biden-on-fighting-the-covid-19-pandemic-3/.   One   such   mandate   would   be

4

issued by OSHA via an emergency rule mandating that private employers with 100 or more employees require their employees to get fully vaccinated or submit to weekly testing.

He also announced that federal agencies would create and implement mandates for federal employees and contractors, the two mandates at issue in this case.

**B.    Federal Employee Mandate**

That same day, President Biden issued EO14043, which states that "it is necessary to require COVID-19 vaccination for all Federal employees, subject to such exceptions as required by law." 86 Fed. Reg. 50989 (attached as Ex. 1). EO14043 tasked every federal agency with "implement[ing], to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its Federal employees." *Id.* at 50990. The Agencies were to receive "implementation" guidance from the Task Force, which would issue guidance within seven days. *Id.*

On September 13, 2021, the Task Force issued a guidance document, recommending a deadline of November 22, 2021, for all federal employees to be fully vaccinated. Safer Federal Workforce Task Force, *COVID-19 Workplace Safety: Agency Model Safety Principles* 2 (Sept. 13, 2021) (attached as Ex. 2).

In a subsequent "FAQ" posted online, the Task Force stated that "[e]mployees who are on maximum telework or working remotely are not excused from this requirement." Safer Federal Workforce Task Force, *FAQ* (attached as Ex. 3). All federal employees, regardless of whether the employee has antibodies from a prior infection of COVID, are required to receive the vaccination. *Id.* The medical community agrees, however, that "[i]ndividuals who have had SARS-CoV-2 infection are unlikely to benefit from COVID-

19 vaccination." Nabin K. Shrestha et al., *Necessity of COVID-19 Vaccination in Previously Infected Individuals* at 2, https://www.medrxiv.org/content/10.1101/2021.06.01.21258176v3.full.pdf.

Federal employees who fail to comply with the requirement to be fully vaccinated by November 22, 2021, "are in violation of a lawful order" and are subject to discipline, "up to and including termination or removal." Safer Federal Workforce Task Force, *FAQ*. The Task Force permits Agencies to "initiate the enforcement process as soon as November 9, 2021, for employees who fail to submit documentation to show that they have completed receiving required vaccination dose(s) by November 8." *Id.* On October 1, 2021, OPM published agency rules tracking Task Force guidance, applying to current and incoming federal employees. *See* Ex. 4.

All Defendant agencies have implemented the Task Force guidance and/or OPM rules, which extend far beyond the details stated expressly in EO14043, and made it binding, final agency action. *See, e.g.*, Ex. 5. Approximately 330,000 unvaccinated federal employees are subject to the Federal Employee Mandate. Compl. ¶ 126.[1]

## C.    Contractor Mandate

As noted above, during his September 9 announcement, President Biden also stated that he would require all federal contractors to vaccinate their employees: "If you want to work with the federal government and do business with us, get vaccinated. If you want to do business with the federal government, vaccinate your workforce." *Remarks by President*

---

[1] "Federal Employee Mandate" or "Employee Mandate" refers to EO14043 and the policies of each Defendant Agency adopting and implementing the Task Force and OPM guidance.

*Biden*, *supra*. He then issued EO14042, 86 Fed. Reg. 50985 (attached as Ex. 6), which directs agencies to ensure that all "contracts and contract-like instruments [covered by the executive order] … include a clause that the contractor or subcontractor shall, for the duration of the contract, comply with all guidance for contractor or subcontractor workplace locations published by the [Task Force], subject to that guidance being approved by the OMB Director." *Id.*

EO14042 instructs the Task Force to develop this guidance and directs the OMB Director to determine whether the guidance will promote efficiency in procurement. *Id.* at 50,985–86. EO14042 instructs the Federal Acquisition Regulatory Council to "amend the [FAR]" to include the clause referenced above, and also tasks agencies with implementing the contract clause in contracts not covered by the FAR. *Id.* at 50,986.

On September 24, 2021, the Task Force issued its guidance, recommending vaccination of "covered" contractor employees, except in limited circumstances where an employee is legally entitled to an accommodation. *COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors*, Safer Federal Workforce Task Force (Sept. 24, 2021) (attached as Ex. 7). The scope is as broad as possible. It defines "covered contractor employee" to mean "any full-time or part time employee of a covered contractor working on or *in connection with* a covered contract or working at a covered contractor workplace." *Id.* at 3. This includes doing "human resources, billing, and legal review." *Id.* at 13. A "covered contractor workplace" "means a location controlled by a covered contractor at which any employee of a covered contractor working on or in connection with a covered contract is likely to be present during the period of performance for a covered

7

contract." *Id.* at 4. If there is any chance of even fleeting contact in "elevators, stairwells, ... and parking garages," the entire facility must be vaccinated. *Id.* at 10. Even *subcontractors* must comply. *Id.* at 12. The Task Force guidance set a deadline of December 8, 2021, for covered contractors to be fully vaccinated.

On September 28, the OMB Director published a notice of determination ("First OMB Rule") stating in conclusory fashion that the Task Force guidance "will improve economy and efficiency by reducing absenteeism and decreasing labor costs for contractors and subcontractors working on or in connection with a [f]ederal [g]overnment contract." 86 Fed. Reg. 53,691–53,692 (Sept. 28, 2021) (attached as Ex. 8). On September 30, 2021, the FAR Council issued a directive ("FAR Council Directive") that agencies must include language in new contracts stating that contractors will follow Task Force guidance, and that agencies should unilaterally insist on adding the clause to *ongoing* contracts because it will "get[] more people vaccinated and decrease the spread of COVID-19."[2]

On November 4, in the face of a growing number of lawsuits, the White House delayed the contractor deadline for full vaccination to January 18, 2022. *Biden Administration Announces Details of Two Major Vaccination Policies,* https://www.whitehouse.gov/briefing-room/statements-releases/2021/11/04/fact-sheet-biden-administration-announces-details-of-two-major-vaccination-policies/.

On November 10, the OMB Director published another notice of determination ("Second OMB Rule") providing additional details about how a mandate supposedly

---

[2] *Memorandum from FAR Council to Chief Acquisition Officers et al. re: Issuance of Agency Deviations to Implement Executive Order 14042* (Sept. 30, 2021) (attached as Ex. 9).

benefits procurement but reaching precisely the same conclusion as previously issued, 86 Fed. Reg. 63418 (Nov. 10, 2021) (attached as Ex. 10), and the Task Force issued new guidance also reflecting the new compliance date (attached as Ex. 11).

Although the exact number is unknown, an estimate of the number of unvaccinated employees of contractors subject to the Contractor Mandate is 790,000. Compl. ¶ 136.[3]

## D.    Other Relevant COVID Measures Taken By Biden Administration

On June 21, 2021, OSHA issued an emergency temporary standard for healthcare workers to "reduce transmission of COVID-19 in their workplaces." *Occupational Exposure to COVID-19; Emergency Temporary Standard*, 86 Fed. Reg. 32376 (June 21, 2021) ("Healthcare ETS"). The Healthcare ETS targets healthcare workers specifically because of "the nature of their work often involving frequent and sustained close contact with COVID–19 patients." *Id.* at 32385. The Healthcare ETS found that such workers face a "grave danger" from COVID—but still did not require vaccination. *Id.* at 32599.

On November 4, 2021, OSHA issued an emergency standard requiring private companies with 100 or more employees either to vaccinate all of their employees, or have them wear masks and undergo weekly testing. *COVID-19 Vaccination and Testing; Emergency Temporary Standard*, 86 Fed. Reg. 61402 (Nov. 5, 2021) ("Private ETS"). The Private ETS found that regular testing/masking and mandatory vaccination "are similar but slightly different schemes that provide roughly equivalent protection." *Id.* at 61515.

---

[3] "Contractor Mandate" refers to Executive Order 14042, the OMB Rule, the FAR Council Directive, and the policies of each Defendant Agency adopting and implementing those documents.

E.      **Plaintiffs**

Plaintiff Feds for Medical Freedom is a membership organization with thousands of members across the globe who are federal employees and federal contractors. *See* Ex. 14 (Thornton Affidavit). Individual named plaintiffs are a variety of employees and contractors who work at or for Defendant agencies. *Id.* Feds for Medical Freedom's members and named Plaintiffs include employees and contractors with no pending exemption requests and who have already been subjected to discipline. *See, e.g.*, Exs. 15, 17, 27, 29 (Armbrust, Biggs, Ryan, Schaecher Affidavits).

Local 918, American Federation of Government Employees represents the bargaining unit members of several components of the Department of Homeland Security.

Plaintiff Highland Engineering, Inc., is a federal contractor whose contracts have been unilaterally modified to include a clause requiring Highland to follow all Task Force guidance. As recently as December 10, 2021, Highland Engineering had to agree to follow Task Force guidance just to be able to submit a bid for a contract. Ex. 13 (Beebe Affidavit).

## ARGUMENT

A party seeking a preliminary injunction must show (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 288 (5th Cir. 2012).

I.      **Plaintiffs Are Likely to Prevail on the Merits.**

A.      **The Challenged Actions Are Ultra Vires.**

There has long been authority for a plaintiff to "institute a non-statutory review

action" against an agency head "for allegedly exceeding his statutory authority." *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1327–28 (D.C. Cir. 1996) (the APA "does not repeal the review of *ultra vires* actions," which pre-dated the APA itself). "Even if the [agency head] were acting at the behest of the President, this does not leave the courts without power to review the legality of the action, for courts have power to compel subordinate executive officials to disobey illegal Presidential commands." *Id.* (alterations omitted); *Associated Builders & Contractors of Se. Texas v. Rung*, No. 1:16-CV-425, 2016 WL 8188655, at *5 (E.D. Tex. Oct. 24, 2016) (when "a federal agency operating within the Executive Branch" has "implemented the President's Executive Order by issuing … Guidance incorporated by reference in [a] new Rule," the "Executive Order may be challenged by Plaintiffs on both statutory and non-statutory grounds").

Several key interpretive doctrines demonstrate that the Employee and Contractor Mandates (including the EOs themselves) are beyond the power statutorily authorized by Congress and thus are *ultra vires*.

*First*, under the "major questions doctrine," Congress must "speak[] clearly when it delegates the power to make decisions of vast economic and political significance." *DHS v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1925 (2020) (Thomas, J., concurring in part); *see Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021) ("We expect Congress to speak clearly when authorizing an agency to exercise powers of 'vast economic and political significance.'"); *King v. Burwell*, 576 U.S. 473, 486 (2015). When the Executive "claims to discover in a long-extant statute an unheralded power to regulate a significant portion of the American economy, [courts] typically greet its announcement

11

with a measure of skepticism." *Utility Air Reg. Grp. v. EPA*, 573 U.S. 302, 324 (2014).

But none of the statutory authorities relied on in the Mandates indicate—let alone *clearly* state—that Congress handed over the extraordinary power to require vaccines for millions of Americans on pain of termination. The statutes listed in EO14043 state that the "President may prescribe regulations for the conduct of employees in the executive branch," 5 U.S.C. § 7301, "may prescribe rules governing the competitive service," *id.*, § 3302, and "may … prescribe such regulations for the admission of individuals into the civil service in the executive branch as will best promote the efficiency of that service," *id.*, § 3301. These general grants give no indication that they can be used to require every single federal employee to be vaccinated or terminated. Such a requirement does not regulate "conduct" or "efficiency"—it regulates status, one that is untethered to job requirements, no less. And although the President can "ascertain" the fitness of "applicants" including "age, health, character, knowledge, and ability," *id.*, that says nothing about *current* employees, nor does the ability to "ascertain" information authorize the President to impose *new* requirements for employment. The statutes cited in EO14042 likewise are bereft of authority to mandate forced vaccinations for millions of Americans. *See* 40 U.S.C. § 101 (stating general purpose of "[p]rocuring and supplying property and nonpersonal services"), 102(4)(A) (defining "executive agency"); 3 U.S.C. § 301 (authorizing certain delegations); 41 U.S.C. § 6701 (definitions). This is why the government admitted to needing a "work-around" for the similar OSHA mandate. *BST*, 17 F.4th at 612 n.13.

To the extent there is any doubt about the President's power under these statutes, the major-questions doctrine requires those doubts to be resolved against such a massive

assertion of Executive power—one unclaimed in the Nation's history. Given that the Fifth Circuit held that OSHA's enabling statute (which provides authority to ensure "every man and woman in the Nation safe and healthful working conditions," 29 U.S.C. § 651) does not contemplate a nationwide vaccine mandate for private employers with 100 or more employees, *BST*, 17 F.4th at 615–17, it begs belief that such a power nonetheless exists in statutes that reference *procurement* and federal employee *"conduct." See Kentucky v. Biden*, ___ F. Supp. 3d ___, 2021 WL 5587446, at *6 (E.D. Ky. Nov. 30, 2021) (enjoining Contractor Mandate because "it strains credulity that Congress intended FPASA, a procurement statute, to be the basis for promulgating a public health measure such as mandatory vaccination"); *Georgia v. Biden*, ___ F. Supp. 3d ___, 2021 WL 2021 WL 5779939, at *9 (S.D. Ga. Dec. 7, 2021) ("EO 14042 goes far beyond addressing administrative and management issues in order to promote efficiency and economy in procurement and contracting, and instead, in application, works as a regulation of public health…."). This lack of clear statutory authority is fatal.

*Second*, courts require clear authorization from Congress for an agency to undertake actions—such as "mandat[ing]" that wide swaths of the population "receive a vaccine"— that "fall[] squarely within the States' police power." *BST*, 17 F.4th at 617; *see Ala. Ass'n*, 141 S. Ct. at 2489 (expressing especially strong skepticism of federal mandate that "intrudes into an area that is the particular domain of state law"). Courts around the country have already enjoined the Contractor Mandate and a related healthcare mandate on this basis, *see, e.g.*, *Kentucky*, 2021 WL 5587446, at *10, and the Employee Mandate fails for the same reason: they are all attempts to impose *widespread* mandatory vaccine campaigns,

a power traditionally vested with the States.

*Third*, "[w]here an administrative interpretation of a statute invokes the outer limits of Congress' power," Congress must provide "a clear indication that [it] intended that result." *Solid Waste Agency v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172 (2001). The Fifth Circuit has held that Congress itself likely cannot impose such widespread vaccine mandates, *BST*, 17 F.4th at 617, and thus agencies cannot put that limit to the test, absent clear language—which, as noted above, is entirely missing here.

In sum, as one court recently held in enjoining a similar vaccine mandate: "Courts have long required Congress to speak clearly when providing agency authorization if it (1) intends for an agency to exercise powers of vast economic and political significance; (2) if the authority would significantly alter the balance between federal and state power; or (3) if an administrative interpretation of a statute invokes the outer limits of Congress' power. *Any one of those fundamental principles would require clear congressional authorization for this mandate, but here, all three are present*." *Missouri v. Biden*, ___ F. Supp. 3d ___, 2021 WL 5564501 *2 (E.D. Mo. Nov. 29, 2021) (emphasis added).

If the government is right that the President can force millions of Americans to be vaccinated-or-terminated, then he could use that power for almost limitless means so long as he can conceive of a connection to contracting or employment. He could mandate that every single federal employee and contractor be terminated unless they: ingest caffeine pills and Adderall to work harder; undergo weight-reduction surgery to improve physical performance; buy Teslas to commute efficiently to work; and eat exclusively vegan meals to be healthier. *See Reich*, 74 F.3d at 1337 (finding EO regulating government contracting

14

to be ultra vires because, *inter alia*, it sought "to set a broad policy governing the behavior of thousands of American companies and affecting millions of American workers").

That cannot be right, and it demonstrates that the generic language in the cited statutes did not hand the President powers never previously asserted by any Executive.

And specifically regarding the Contractor Mandate: as discussed below, even where the clear-statement rules above do not apply, the President's contracting authority is still limited to (at most) actions with a "reasonably close nexus" to procurement. *Reich*, 74 F.3d at 1330-31. But the contrived nature (the "work-around") of the President's actions defeats this, as he apparently recognized he is using the procurement powers for non-procurement purposes. The Contractor Mandate's absurdly broad definitions of a covered contractor and workplace also confirm the President's contrivance. *See Liberty Mut. Ins. Co. v. Friedman*, 639 F.2d 164, 171–72 (4th Cir. 1981) (finding a lack of nexus where entity does not directly contract with federal government).

The lack of statutory authority is dispositive because the President lacks inherent constitutional authority to undertake such drastic actions. *BST*, 17 F.4th at 618 ("Nor can the Article II executive breathe new power into OSHA's [vaccine mandate] authority.").

Finally, if the Executive did have such dramatic power uncabined by statutory text, it would violate the nondelegation doctrine. *See Gundy v. United States*, 139 S. Ct. 2116, 2134-37 (2019) (Gorsuch, J., dissenting); *Industrial Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 646 (1980) (plurality) (where agency asserts generic statutory language authorizes regulation of the national economy, "the statute would make such a sweeping delegation of legislative power that it might be unconstitutional under the

15

Court's reasoning in" nondelegation cases); Compl. ¶¶ 179–84.

Plaintiffs are likely to succeed on their claims that the Mandates are *ultra vires*.

### B.    The Challenged Actions Violate the APA.

Even if the Executive had statutory authority to undertake such drastic actions as the Mandates, they would still violate the APA.

The "Government should turn square corners in dealing with the people." *Regents*, 140 S. Ct. at 1909. As an important enforcement mechanism for that requirement, agency action implementing an Executive Order is subject to judicial review under the APA. *See, e.g.*, *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 669 (9th Cir. 2021); *Coliseum Square Ass'n v. Jackson*, 465 F.3d 215, 232 (5th Cir. 2006); *Reich*, 74 F.3d at 1326–28 (holding that mere fact that "regulations are based on the President's Executive Order hardly seems to insulate them from judicial review under the APA, even if the validity of the Order were thereby drawn into question"); *see also Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897 (5th Cir. 1983) (holding that the APA's broad definition of the term "rule" includes "virtually every statement an agency may make").

The Federal Employee Mandate and Contractor Mandate qualify as reviewable agency actions. President Biden expressly told agencies to "implement … a program to require COVID-19 vaccinations" for employees, 86 Fed. Reg at 50990, which has now happened as they adopted and are enforcing the detailed Task Force guidance; and he asked OMB and the FAR Council to decide whether to "implement" vaccine-mandate clauses in government contracts, *id.* at 50985–86, which has likewise happened, and agencies are following these requirements. Indeed, the EOs are only a few pages, but the Task Force

"guidance" for employees and contractors—subsequently implemented by agencies—amount to over 50 pages. This Court held in *Rodden v. Fauci* that the Task Force guidance itself is not final agency action, but rather "any final agency action will likely be taken by the specific agency for which each plaintiff works," as those agencies announce "whether and what additional remedial measures and procedures should be taken." Opinion 8, *Rodden*, 3:21-cv-317 (S.D. Tex. Nov. 27, 2021). Each agency has adopted and implemented the Task Force guidance, and that act of adoption *is* final agency action.

As agency implementations and expansions of EOs, with significant real-world legal consequences and obligations, the agencies' actions are therefore subject to APA review. *See Sloan v. HUD*, 231 F.3d 10, 14 (D.C. Cir. 2000); *Batterton v. Marshall*, 648 F.2d 694, 701–02 (D.C. Cir. 1980).

All agencies have the same requirements in terms of deadlines and vaccines required, the refusal to make exceptions for telework or previously infected individuals, and the abject failure to provide reasoned decisionmaking. *See* Ex. 5. Not every agency has publicly advertised its policy, but that makes no difference. The APA authorizes review even when there is no written policy at all, or where its precise terms are unclear. *Texas v. EEOC*, 933 F.3d 433, 441–42 (5th Cir. 2019); *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925, 929–30 (D.C. Cir. 2008) (applying APA where "the details of the Commission's disclosure policy are still unclear, [but] the record leaves no doubt the Commission has a policy of disclosing confidential information without notice").

In any event, the government could not in good faith dispute that every agency has imposed these vaccine policies—it would mean admitting there are no such requirements.

17

As demonstrated next, the Mandates violate the APA's bar on agency action that is "arbitrary [or] capricious." 5 U.S.C. § 706(2)(A).

### 1.    Lack of Reasoned Decisionmaking

Federal administrative agencies must engage in "reasoned decisionmaking." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998) (quotation marks omitted). This means that "[n]ot only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational." *Id.* The "agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). This means the agency "decision was based on a consideration of the relevant factors.'" *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989). The Court "may consider only the reasoning articulated by the agency itself; we cannot consider post hoc rationalizations." *Wages & White Lion*, 16 F.4th at 1136. This "review is not toothless. … [I]t has serious bite." *Id.*

The Employee Mandate abjectly fails this test. The individual agency documents provide almost zero reasoning—only diktats. *See* Ex. 5. Even if the Task Force guidance is deemed incorporated into agency mandates, it provides no help because it contains only one sentence (really, one clause) of rationale: "To ensure the safety of the Federal workforce, Federal employees must be fully vaccinated, except in limited circumstances where an employee is legally entitled to a reasonable accommodation." Ex. 2.

Such conclusory justifications are *per se* arbitrary and capricious. *See Encino*

*Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2127 (2016) ("[C]onclusory statements do not suffice to explain [an agency's] decision.").

And there are plenty of important aspects of the challenged actions that are never justified or even mentioned. For example: Why are vaccines mandated for federal employees when OSHA *just said* that private employers can use testing and masking to provide "roughly equivalent protection" as a vaccine mandate? 86 Fed. Reg. at 61515 (discussed below in more detail). Why are vaccines mandated when OSHA also said that frontline healthcare workers face "grave danger" from COVID but *still* do not need to be vaccinated? 86 Fed. Reg. at 32599. Why are teleworkers covered? Why is every agency and employee treated the same regardless of location and workplace? Why are people with antibodies forced to get vaccinated? What data was examined about the economic and societal damages from imposing the mandates, or the reliance interests in the Executive's repeated statements that there would be no mandates? How many employees will be covered? How many will be fired? What side effects will they suffer, and why are those side effects outweighed by the benefits of vaccination?

There may be reasonable answers to these questions, but Defendants simply ignored them. *See Texas v. Becerra*, No. 2:21-CV-229, ___ F. Supp. 3d ___, 2021 WL 5964687, at *13 (N.D. Tex. Dec. 16, 2021) (invalidating similar vaccine mandate because, *inter alia*, "Defendants allowed regular testing as an alternative to vaccination in the OSHA mandate but provide no explanation why that exception cannot apply here," and the mandate made an unjustifiable "sweeping application … sans exceptions"); *Missouri*, 2021 WL 5564501, at *7–*11 (invalidating similar federal vaccine mandate for agency's utter failure to

19

address significant questions like those above). *Cf.* 86 Fed. Reg. at 61436 (in Private ETS issued November 4, 2021, OSHA refused to mandate vaccines because there has not been "a full opportunity to study the potential spectrum of impacts on employers and employees, including the economic and health impacts"). Moreover, the failure to take "any consideration whatsoever' of a [more limited] policy" is itself arbitrary and capricious. *Regents*, 140 S. Ct. at 1912.

Turning to the Contractor Mandate: nowhere did the First OMB Rule nor the FAR Council Directive provide an explanation for how they promote economy and efficiency in procurement, other than *ipse dixit*, and thus they failed to address the same critical questions listed above for the Employee Mandate. After facing nearly a dozen lawsuits pointing out these flaws, the Second OMB Rule was issued on November 10, 2021, with a somewhat longer justification, but it predictably reached the exact same conclusion. 86 Fed. Reg. 63418. The Supreme Court has rejected this type of foregone-conclusion "re-do" in the face of persuasive litigation, and accordingly those reasons cannot be considered. *Regents*, 140 S. Ct. at 1907, 1909 (refusing to countenance DACA rescission memo issued after courts "had identified flaws in the original explanation," because "[i]t is a foundational principle of administrative law that judicial review of agency action is limited to the grounds that the agency invoked when it took the action").

In short, the Mandates are *ipse dixit*, not reasoned decisionmaking. *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 664, 658 (2007) (action is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem").

These challenged actions are strikingly reminiscent of the Administration's 100-day

pause on alien removals, which this Court (per Judge Tipton) held had violated the APA. The Court noted "a disconnect" between the government's action and its stated concerns. *Texas v. United States*, 524 F. Supp. 3d 598, 654 (S.D. Tex. 2021). The Court demonstrated that disconnect by posing a series of questions—similar to the list above—that were left entirely unaddressed. The government's failure to address such important questions meant that it had failed to provide the needed "rational connection between the facts found and the choice made." *Id.* The same is true here.

### 2.    Inconsistent, Illogical, and Pretextual

The Mandates are arbitrary and capricious for the additional reason that they are illogical, inconsistent, and contrived.

***Inconsistent with Private ETS.*** The Mandates are arbitrary and capricious for not providing *any* alternative to vaccination. This is inconsistent with the OSHA Private ETS, which allows masking and weekly testing as an alternative to mandated vaccinations because "they are similar but slightly different schemes that provide roughly equivalent protection." 86 Fed. Reg. at 61515. The Private ETS likewise acknowledged that "it is well established that … regularly testing individuals for COVID-19 infection can be an effective method for reducing virus transmission," *id.* at 61438, and that "State and local regulations of general applicability that mandate face coverings *or* vaccination … have significantly reduced the harmful effects of the pandemic and total fatalities," *id.* at 61509.

There is no rational reason why OSHA gave private employees the option to do regular testing and masking in lieu of vaccination, but federal contractors and federal employees cannot have that same option—especially when these schemes were

promulgated contemporaneously as part of a single COVID policy announced by President Biden on September 9. "Treating similar situations differently without adequate explanation is the very embodiment of arbitrary conduct." *Rupcich v. United Food & Com. Workers Int'l Union*, 833 F.3d 847, 856 (7th Cir. 2016); *Nat. Res. Def. Council v. U.S. Nuclear Regul. Comm'n*, 879 F.3d 1202, 1214 (D.C. Cir. 2018) ("[I]t would be arbitrary and capricious for the agency's decision making to be 'internally inconsistent.'"); *see Missouri*, 2021 WL 5564501, at *8 (invalidating similar mandate where agency "failed to consider or rejected obvious alternatives to a vaccine mandate without evidence").

The Fifth Circuit held that the Private ETS itself was a "one-size-fits-all sledgehammer," yet it still looks like a "delicately handled scalpel" when compared to the Federal Employee and Contractor Mandates. *BST*, 17 F.4th at 612.

*Inconsistent with Healthcare ETS.* The federal Healthcare ETS issued in June concluded there was no need to mandate vaccines even for the most at-risk workers in the country (frontline healthcare workers), despite the conclusion that they faced a "grave danger" from COVID, and despite the fact that the Delta variant became the predominant strain just a few days afterwards. 86 Fed. Reg at 32599. Unlike the Healthcare ETS, the Federal Employee and Contractor Mandates make no attempt to account for agency- or workplace-specific factors that might increase exposure risk. They apply across the board. Since the Healthcare ETS was issued in June, over 30 million *more* Americans have been fully vaccinated, suggesting that the need for vaccination is lower now than it was when that ETS was issued. *See* CDC*, Trends in Number of COVID-19 Vaccinations in the US*, https://covid.cdc.gov/covid-data-tracker/#vaccination-trends.    The    Healthcare    ETS

22

"recognize[d] that some employees may decline vaccination for a number of reasons, including underlying medical conditions or conscience-based objections (moral or religious)." 86 Fed. Reg. at 32599. There is no rational reason why this applies to healthcare workers—but not to federal employees or contractors. *Rupcich*, 833 F.3d at 856.

*Zero Consideration of Employee Characteristics.* The Mandates make almost zero distinction between employees. Someone who works in close contact with infected people for 12 hours a day is treated the same as someone with COVID antibodies who never leaves his house. It is textbook arbitrariness to require every single employee to get vaccinated (and potentially suffer side effects) despite already having protection against infection, or never interacting with other federal workers, or doing so only outside in ventilated or outdoor areas. The lack of consideration for employees with documented antibodies is especially arbitrary because "[i]ndividuals who have had SARS-CoV-2 infection are unlikely to benefit from COVID-19 vaccination." Nabin K. Shrestha et al., *Necessity of COVID-19 Vaccination in Previously Infected Individuals* at 2, https://www.medrxiv.org/content/10.1101/2021.06.01.21258176v3.full.pdf.

In short, the Mandates are arbitrary because their sheer breadth is so discontinuous with the reasons offered for them. *Missouri*, 2021 WL 5564501, at *7–11.

*Stated Rationale is Pretextual and Inconsistent.* Both Mandates are premised on a contrived basis: the purpose is not to govern employee conduct or improve government contracting—it is (as the Fifth Circuit has recognized regarding OSHA) part of a "work-around" for a nationwide vaccine mandate. Even if a vaccine mandate were otherwise legal, giving a false explanation is necessarily arbitrary and capricious. *Dep't of Com. v. New*

*York*, 139 S. Ct. 2551, 2573–76 (2019). This contrived premise is demonstrated by President Biden's inconsistent statements: he said being vaccinated renders someone "as safe as possible," but then said vaccinated people need to be "protect[ed]" *from* the unvaccinated. *Remarks by President Biden*, *supra*. But the Private ETS said—in its very first paragraph—that the purpose of vaccine mandates is to protect the *unvaccinated*. 86 Fed. Reg. at 61402. When the government cannot keep its story straight on the foundational premise of its most significant actions, it is a strong indicator of arbitrary-and-capricious and pretextual action.

*Failure to Consider Reliance Interests.* None of the Mandates provided meaningful responses about reliance interests on the previous Executive policy of not requiring vaccines. This was arbitrary and capricious. *Regents*, 140 S. Ct. at 1913–14; *see Missouri*, 2021 WL 5564501, at *7–*11 (invalidating similar mandate on this ground).

### 3.   The Contractor Mandate Is also Contrary to Law.

The APA requires courts to "hold unlawful" agency action that is "not in accordance with law." 5 U.S.C. § 706(2)(A). Congress has tasked the FAR Council—and only the FAR Council—with the duty to "issue and maintain … a single [g]overnment-wide procurement regulation," 41 U.S.C. § 1303(a)(1), and thus "[o]ther regulations relating to procurement issued by an executive agency [are] limited to" *agency-specific* regulations, *id.*, § 1303(a)(2). The First and Second OMB Rules thus violate § 1303 because they carry out the President's unlawful instruction to issue a government-wide procurement regulation requiring vaccines—a task exclusively reserved to the FAR Council. 86 Fed. Reg. at 53,691–92. The FAR Council Directive violates § 1303 because it abdicates the FAR

Council's responsibility to issue such procurement regulations, and instead "remind[s]" agencies to do what EO14042 requires. Because the President and OMB Director attempt to directly exercise authority exclusively reserved to the FAR Council and because the FAR Council acquiesces to this intrusion, the Contractor Mandate is contrary to law.

* * *

For all these reasons, Plaintiffs are likely to succeed on these claims.

## II.   Plaintiffs Will Suffer Irreparable Harm.

"To show irreparable injury if threatened action is not enjoined, it is not necessary to demonstrate that harm is inevitable and irreparable." *Humana, Inc. v. Avram A. Jacobson, M.D.*, 804 F.2d 1390, 1394 (5th Cir. 1986). "The plaintiff need show only a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not *fully* repair the harm." *Id.*

Over a dozen named Plaintiffs have declined to seek exemptions from the Mandates. Exs. 15–20, 22–30 (Armbrust, Ball, Biggs, Clark, Dantuma, Divilbiss, Klosterman, Lawson, McComis, Roberts, Rucker-Reed, Ryan, Sams, Schaecher, Simpson Affidavits). One of them has been given written notice that he will be fired on January 10, 2022. Ex. 29 (Schaecher). Several others have been disciplined with written reprimands and warnings saying that failure to attest to a fully-vaccinated status could result in imminent suspensions and terminations. Exs. 15, 17, 27 (Armbrust, Biggs, Ryan). These Plaintiffs undoubtedly face not just harm—but imminent harm. *See* Opinion 5, *Rodden*, No. 3:21-cv-317 (S.D. Tex. Nov. 27, 2021) (noting that plaintiff who had "not claimed an exemption" and for whom "the process to discipline her has already begun" "appears" to have "shown a likely

25

irreparable injury"). This is enough to warrant relief for *all* Plaintiffs, given the imminent nature of the federal government's discipline. *See League of Women Voters of United States v. Newby*, 838 F.3d 1, 8–9 (D.C. Cir. 2016) ("[I]t is unclear whether Alabama and Georgia are currently enforcing their proof-of-citizenship laws. But that does not mean that the Alabama and Georgia [plaintiffs] cannot show a likely injury. Indeed, based on the experience of [other plaintiffs], it seems almost certain that similar obstacles to registration will spring up in Alabama and Georgia when those States decide to enforce their laws. As a preliminary injunction requires only a likelihood of irreparable injury, Damocles's sword does not have to actually fall on all appellants before the court will issue an injunction.").

Indeed, it would be disingenuous for the government to dispute that these harms are imminent. The entire point of the Mandates is to force vaccinations quickly by threatening to initiate drastic employment or contractual harms *at any moment*—action that can be avoided only by giving in and getting vaccinated unwillingly. "[T]he value of a sword of Damocles is that it hangs—not that it drops. For every employee who risks his job by testing the limits of the [government's action], many more will choose the cautious path." *Arnett v. Kennedy*, 416 U.S. 134, 231 (1974) (Marshall, J., dissenting).

These harms are also irreparable. Anyone forced to get vaccinated pursuant to an invalid regulation will never be made whole with cash damages. *BST*, 17 F.4th at 618; *see* Ex. 23 (Lawson Affidavit). Further, as federal personnel expert Spencer Chretien explains in his attached affidavit, Plaintiffs who resist the Mandates and suffer discipline will incur unique reputational and career harm that would never apply to mine-run federal employment actions. *See* Ex. 12. The President labels these employees as pariahs who

cannot and should not be hired anywhere else. He has deemed them lawbreakers ("violat[ors] of a lawful order") and "kill[ers]." *Transcript: CNN Presidential Town Hall with President Joe Biden*, CNN (Oct. 21, 2021), https://transcripts.cnn.com/show/se/date/2021-10-21/segment/01. In his speech announcing the Mandates, he vented his "anger at those who haven't gotten vaccinated." *Remarks by President Biden*, *supra*. He accused them of killing the innocent: "The unvaccinated overcrowd our hospitals, are overrunning the emergency rooms and intensive care units, leaving no room for someone with a heart attack, or pancreitis [*sic*], or cancer." *Id.* He said those opposed to forced vaccination "ha[ve] cost us all," they "stand in the way of protecting the large majority of Americans who have done their part and want to get back to life as normal," and are "undermining you and … lifesaving actions"—and he would invoke his tremendous "power as President to get them out of the way." *Id.* Unvaccinated workers are so dangerous that he would have to step in and "protect vaccinated workers from unvaccinated co-workers." *Id.*

This is far more than just losing a job. As Chretien's expert affidavit explains, the government's pernicious targeting and blackballing result in severe reputational damage that cannot be undone with money. Ex. 12, ¶¶ 12–13. And it also makes it uniquely difficult to find other employment, especially given that *all* federal employment and contractor work will be prohibited due to the Mandates.

The Fifth Circuit has long recognized this kind of severe employment action— causing serious reputational harm—is irreparable, even when it does not result in a permanent bar from industry work. *See BST*, 17 F.4th at 618; *Burgess v. Fed. Deposit Ins.*

*Corp.*, 871 F.3d 297, 304 (5th Cir. 2017) (finding irreparable harm where the government would make plaintiff "withdraw from the banking industry," which caused "reputational harm" and would leave him "unable to find employment in the banking industry so long as the [government's] order remains in place"); *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997) (same, for teacher who supplied expert affidavit in support).

Moreover, any employee who loses his job because his security clearance was withdrawn for violating a "lawful" vaccine order will be forever barred from challenging his removal. *See Dep't of Navy v. Egan*, 484 U.S. 518, 529–30 (1988) (no jurisdiction in court or MSPB to review revocation of security clearance). It is truly now or never. *See* Ex. 24 (McComis Affidavit).

In addition to direct employment harms, some plaintiffs face uniquely damaging losses that money could never repair. If Plaintiff Joshua Roberts is terminated, he and his wife may be deemed jobless and barred from adopting the two infants they have fostered since the babies were only a few weeks old. Ex. 25. Plaintiff Thomas David Green is a DHS employee who served in the Marine Corps and Army during Operation Iraqi Freedom III, and he is a single father whose job provides the sole financial support for four minor children. Ex. 21. If these harms are not irreparable, nothing is.

Finally, employees with religious objections face a "crisis of conscience" that is irreparable. *See Sambrano v. United Airlines, Inc.*, No. 21-11159, ___ F.4th ___, 2021 WL 5881819, at *3 (5th Cir. Dec. 13, 2021) (Ho, J., dissenting); Compl. ¶¶ 17, 20.

The Mandates also cause irreparable harm for *employers* via lost employees and unrecoverable compliance costs. *BST*, 17 F.4th at 618. Plaintiff Highland Engineering is

suffering imminent harm from having to agree to comply with Task Force guidance just to be able to bid on government contracts or sub-contracts as they arise (as recently as December 10, 2021), and Highland Engineering already had GSA unilaterally impose that term for all of their existing contracts. Ex. 13.

Finally, Plaintiffs cannot recover money damages under the APA or an *ultra vires* claim, rendering those particular injuries irreparable. *E. Bay Sanctuary*, 993 F.3d at 677.

## III.    The Balance of Equities and Public Interest Favor Plaintiffs.

Where the government is the defendant, the consideration of equities and the public interest merge. *Nken v. Holder*, 556 U.S. 418, 426 (2009). These factors strongly favor Plaintiffs. They have committed years to serving the United States and even putting their lives on the line for our freedoms, but now they face discipline and discharge for refusal to comply with Mandates that failed to follow basic tenets of law.

The public also has an exceedingly strong interest in seeing that Plaintiffs remain on the job performing critical functions like national security, border patrol, crime prevention, and signals intelligence. Exs. 15, 16, 18, 19, 20, 23, 24, 25, 26, 28, 29, 30 (Armbrust, Ball, Clark, Dantuma, Divilbiss, Lawson, McComis, Roberts, Rucker-Reed, Sams, Schaecher, Simpson Affidavits). The "mere specter of the Mandate[s] has contributed to untold economic upheaval in recent months." *BST*, 17 F.4th at 618.

To be sure, "the public has a strong interest in combating the spread of the COVID–19 Delta variant. But our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n*, 141 S. Ct. at 2490; *see BST*, 17 F.4th at 618 ("Any interest [the government] may claim in enforcing an unlawful" regulation "is illegitimate.").

**IV.    Relief Should Be Universal in Scope.**

Plaintiff Feds for Medical Freedom has over 6,000 members (and growing), including both employees and contractors, located in every state and across the world and employed by or contracting with nearly every federal agency in existence. Ex. 14 (Thornton Affidavit). This is therefore the rare case where the only practical way to provide full relief is via a universal injunction. *See Georgia*, 2021 WL 2021 WL 5779939, at *12 (granting nationwide relief because "the geographic scope of [plaintiff] ABC's membership [is] broad"). This is especially true because Feds for Medical Freedom has members who are prohibited from publicly acknowledging their government jobs, *see* Ex. 14—and thus, as a practical matter, can obtain relief only as members of Feds for Medical Freedom. *Warth v. Seldin*, 422 U.S. 490, 515 (1975) ("[I]t can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.").

Moreover, such an injunction is appropriate because the Mandates are void, and "the scope of injunctive relief is dictated by the extent of the violation established." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998).

## CONCLUSION

The Court should preliminarily enjoin all Defendants (excluding President Biden himself but including all parties listed in Rule 65) from implementing or enforcing the Federal Contractor and Employee Mandates; and requiring no bond.

Dated: December 22, 2021

Respectfully submitted,

/s/ R. Trent McCotter
R. TRENT MCCOTTER (So. Dist. No. 3712529)
JONATHAN BERRY (*pro hac vice forthcoming*)
MICHAEL BUSCHBACHER (*pro hac vice forthcoming*)
BOYDEN GRAY & ASSOCIATES
801 17th St. NW, #350
Washington, DC 20006
(202) 706-5488
mccotter@boydengrayassociates.com

## CERTIFICATE OF WORD AND PAGE COUNTS

I hereby certify that the total number of words in this document, exclusive of those sections designated for omission, is 8268 words, as registered by Microsoft Word. I further certify that this document, exclusive of those sections designated for omission for word limit purposes, is 30 pages. I further certify that this document is in size 13 Times New Roman font.

/s/ R. Trent McCotter

R. Trent McCotter

## CERTIFICATE OF SERVICE

I certify that on December 22, 2021, a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) and served on all counsel of record. I will also email a copy to U.S. Department of Justice attorneys Kristin Taylor and Zachary Avallone. I will also send copies certified mail to all Defendants with the summons, complaint, and this Court's rules of practice.

/s/ R. Trent McCotter

R. Trent McCotter

## CERTIFICATE OF CONFERENCE

I certify that, on December 21, 2021, shortly after filing the Complaint in this matter, I emailed a copy to Kristin Taylor at the U.S. Department of Justice and also indicated that I would promptly be moving for a preliminary injunction. Later that day, I spoke on the phone with Zachary Avallone at the U.S. Department of Justice about timing and the possibility of agreeing to a briefing schedule for this motion. Those discussions are still ongoing. On December 22, 2021, Defendants confirmed that they oppose the motion for a preliminary injunction.

/s/ R. Trent McCotter

R. Trent McCotter