**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| FEDS FOR MEDICAL FREEDOM, *et al.*, | |
| Plaintiffs, | Civil Action 3:21-cv-00356 |
| v. | |
| JOSEPH R. BIDEN, JR., in his official capacity, *et al.*, | |
| Defendants. | |

## <u>DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION</u>

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................4

I.      The COVID-19 Pandemic ..................................................................................4

II.     Executive Order 14043 .......................................................................................5

III.    Executive Order 14042 .......................................................................................6

IV.     This Lawsuit ........................................................................................................7

LEGAL STANDARD ..........................................................................................................7

ARGUMENT .......................................................................................................................7

I.      The Court Lacks Jurisdiction. ............................................................................7

        A.      The Federal Employees' Claims Are Precluded By The CSRA. ...........8

        B.      The Federal Employee Plaintiffs' Claims Are Not Ripe. ....................12

        C.      The Labor Organization Plaintiff Lacks Standing and Cannot Pursue
                Relief in District Court in Any Event. .................................................14

II.     Plaintiffs Fail To Establish Irreparable Injury. ...............................................15

III.    Plaintiffs' Challenge To EO 14043 Is Unlikely To Succeed On The Merits. ...............20

        A.      Plaintiffs' APA Claim Fails. ................................................................20

                i.      Plaintiffs Do Not Challenge Final Agency Action. ................20

                ii.     Plaintiffs' APA Claim Fails On Its Merits. ...........................22

        B.      EO 14043 Is Not Ultra Vires. .............................................................25

                i.      Plaintiffs Cannot Invoke Non-Statutory Review. ..................25

                ii.     EO 14043 Is A Valid Exercise of the President's Authority. ...............26

                iii.    Plaintiffs' Extra-Textual Interpretive Doctrines Are
                        Inapplicable. ...........................................................................27

                iv.     Plaintiffs' Reliance on the Nondelegation Doctrine Fails ......30

IV.     Plaintiffs' Challenge to EO 14042 Is Unlikely To Succeed On The Merits. ...............32

A.     The President's Powers Under The FPASA Are Well-Settled..........................32

B.     The APA Does Not Apply to the President or the OMB Determination.............................................................................................34

V.     The Public Interest Weighs Against Injunctive Relief. ....................................36

VI.    Any Relief Should Be Narrowly Tailored. ......................................................38

CONCLUSION ...........................................................................................................39

# TABLE OF AUTHORITIES

## CASES

*AFGE v. Carmen,*
   669 F.2d 815 (D.C. Cir. 1981) ................................................................................33

*AFGE v. Sec'y of Air Force,*
   716 F.3d 633 (D.C. Cir. 2013) ................................................................................12

*Ala. Ass'n of Realtors v. Dep't of Health & Human Servs.,*
   141 S. Ct. 2485 (2021) ............................................................................................28

*Altschuld v. Raimondo,*
   No. 21-cv-2779, 2021 WL 6113563 (D.D.C. Nov. 8, 2021) ........................ 1, 15, 37

*Am. Fed. of Gov't Emps. v. Hoffman,*
   543 F.2d 930 (D.C. Cir. 1976) ................................................................................27

*Am. Fed'n of Govt. Emps., AFL-CIO v. Trump,*
   929 F.3d 748 (D.C. Cir. 2019) ................................................................................15

*Am. Fed'n of Labor & Cong. of Indus. Orgs. v. Kahn,*
   618 F.2d 784 (D.C. Cir. 1979) ................................................................................32

*Am. Petroleum Inst. v. EPA,*
   683 F.3d 382 (D.C. Cir. 2012) ................................................................................13

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.,*
   627 F.3d 547 (5th Cir. 2010) ..................................................................................14

*Barber v. Bryant,*
   860 F.3d 345 (5th Cir. 2017) ....................................................................................8

*Bennett v. Spear,*
   520 U.S. 154 (1997) ................................................................................................20

*Broadway v. Block,*
   694 F.2d 979 (5th Cir. 1982) ..................................................................................10

*BST Holdings, LLC v. OSHA,*
   17 F.4th 604 (5th Cir. 2021) .....................................................................................3

*Burgess v. Federal Deposit Insurance Corp.,*
   871 F.3d 297 (5th Cir. 2017) ..................................................................................17

*Caldwell v. L-3 Vertex Aerospace*,
  No. 3:13CV123TSL-JMR, 2013 WL 1768683 (S. D. Miss. Apr. 24, 2013) ..........................10

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ..................................................................................................39

*California v. Azar*,
  950 F.3d 1067 (9th Cir. 2020) ..................................................................................24

*Carrieri v. Jobs.com Inc.*,
  393 F.3d 508 (5th Cir. 2004) ....................................................................................27

*Chamber of Com. of U.S. v. Napolitano*,
  648 F. Supp. 2d 726 (D. Md. 2009) ..........................................................................33

*Chamber of Commerce of the United States v. Reich*,
  74 F.3d 1322 (D.C. Cir. 1996) ............................................................................ 26, 33

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984) ..................................................................................................28

*Church v. Biden*,
  No. 21-cv-2815, 2021 WL 5179215 (D.D.C. Nov. 8, 2021) ...............................*passim*

*City of Abilene v. EPA*,
  325 F.3d 657 (5th Cir. 2003) ....................................................................................22

*City of Albuquerque v. U.S. Dep't of Interior*,
  379 F.3d 901 (10th Cir. 2004) ..................................................................................32

*Clarke v. OPM*,
  No. H-07-0662, 2007 WL 2363295 (S.D. Tex. Aug. 17, 2007) ................................10

*Clarry v. United States*,
  85 F.3d 1041 (2d Cir. 1996) ......................................................................................27

*Coulibaly v. Kerry*,
  130 F. Supp. 3d 140 (D.D.C. 2015) ..........................................................................10

*Crane v. Napolitano*,
  No. 3:12-cv-03247-O, 2013 WL 8211660 (N.D. Tex. July 31, 2013) ...............8-9, 11

*Dalton v. Specter*,
  511 U.S. 462 (1994) ..................................................................................................34

*Davis v. Billington*,
  76 F. Supp. 3d 59 (D.D.C. 2014) ..............................................................................19

iv

*Department of Navy v. Egan,*
   484 U.S. 518 (1988) ...........................................................................................18

*Dep't of Comm. v. New York,*
   139 S. Ct. 2551 (2019) .......................................................................................25

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
   140 S. Ct. 1891 (2020) .......................................................................................36

*Detroit Int'l Bridge Co. v. Gov't of Canada,*
   189 F. Supp. 3d 85 (D.D.C. 2016),
   *aff'd,* 875 F.3d 1132 (D.C. Cir. 2017), *aff'd,* 883 F.3d 895 (D.C. Cir. 2018)..........................35

*Dickson v. Sec'y of Def.,*
   68 F.3d 1396 (D.C. Cir. 1995) ...........................................................................35

*Donovan v. Vance,*
   ---F. Supp. 3d----, 2021 WL 5979250 (E.D. Wash. Dec. 17, 2021)............................ 1, 15, 34

*E. Bay Sanctuary Covenant v. Biden,*
   993 F.3d 640 (9th Cir. 2021) ..............................................................................19

*Elgin v. Dep't of Treasury,*
   567 U.S. 1 (2012) ............................................................................................. 8-9

*Engquist v. Or. Dep't of,*
   *Argic.,* 553 U.S. 591 (2008) ........................................................................3, 24, 28

*Farkas v. Tex. Instrument, Inc.,*
   375 F.2d 629 (5th Cir. 1967) ..............................................................................32

*Farmer v. Phila. Elec. Co.,*
   329 F.2d 3 (3d Cir. 1964) ...................................................................................32

*FCC v. Fox Television Stations, Inc.,*
   556 U.S. 502 (2009) ...........................................................................................24

*FCC v. Prometheus Radio Project,*
   141 S. Ct. 1150 (2021) .......................................................................................22

*Florida v. Dep't of Health & Human Servs.,*
   19 F.4th 1271 (11th Cir. 2021) ......................................................................29-30

*Fornaro v. James,*
   416 F.3d 63 (D.C. Cir. 2005) .....................................................................9, 11-12

*Franklin v. Massachusetts,*
   505 U.S. 788 (1992) ....................................................................................34

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
   561 U.S. 477 (2010) ....................................................................................26

*Garcia v. United States,*
   680 F.2d 29 (5th Cir. 1982) ............................................................ 13, 16, 37

*Georgia v. Biden,*
   No. 21-cv-163, 2021 WL 5779939 (S.D. Ga. Dec. 7, 2021) ....................19

*Gill v. Whitford,*
   138 S. Ct. 1916 (2018) ................................................................................38

*Griener v. United States,*
   900 F.3d 700 (5th Cir. 2018) ......................................................................11

*Griffith v. FLRA,*
   842 F.2d 487 (D.C. Cir. 1988) ...................................................................25

*Gundy v. United States,*
   139 S. Ct. 2116 (2019) ................................................................................31

*Hodel v. Va. Surface Mining & Reclamation Ass'n,*
   452 U.S. 264 (1981) ....................................................................................29

*Holland Am. Ins. Co. v. Succession of Roy,*
   777 F.2d 992 (5th Cir. 1982) ............................................................... 17, 18

*Holland v. Nat'l Mining Ass'n,*
   309 F.3d 808 (D.C. Cir. 2002) ...................................................................39

*Huawei Tech. USA, Inc. v. FCC,*
   2 F.4th 421 (5th Cir. 2021) .........................................................................23

*Humana, Inc. v. Jacobson,*
   804 F.2d 1390 (5th Cir. 1986) ....................................................................15

*Hunter v. United States,*
   36 Fed. Cl. 257 (Ct. Fed. Claims 1996) .....................................................10

*In re MCP No. 165,*
   ---F.4th----, 2021 WL 5989357 (6th Cir. 2021) ............................... 3, 28, 30

*Indep. Equip. Dealers Ass'n v. EPA,*
   372 F.3d 420 (D.C. Cir. 2004) ...................................................................21

*Janvey v. Alguire,*
   647 F.3d 585 (5th Cir. 2011) ............................................................ 16, 18

*Jordan v. Fisher,*
   823 F.3d 805 (5th Cir. 2016) ............................................................. 7, 20

*King v. Burwell,*
   576 U.S. 473 (2015) ...............................................................................28

*Larson v. Domestic & Foreign Com. Corp.,*
   337 U.S. 682 (1949) ...............................................................................25

*Liberty Mut. Ins. Co. v. Friedman,*
   639 F.2d 164 (4th Cir. 1981) ........................................................... 32, 33

*Madsen v. Women's Health Ctr., Inc.,*
   512 U.S. 753 (1994) ...............................................................................38

*McAuliffe v. Rice,*
   966 F.2d 979 (5th Cir. 1992) .................................................................10

*McCray v. Biden,*
   No. 21-cv-2882 (RDM), 2021 WL 5823801 (D.D.C. Dec. 7, 2021) .......... 1, 13, 14

*Mistretta v. United States,*
   488 U.S. 361 (1989) ...............................................................................31

*Morgan v. Fletcher,*
   518 F.2d 236 (5th Cir. 1975) .................................................................17

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983) .................................................................................36

*NASA v. Nelson,*
   562 U.S. 134 (2011) ...............................................................................28

*Nat. Res. Def. Council v. Dep't of State,*
   658 F. Supp. 2d 105, 109 (D.D.C. 2009) ...............................................34

*Navy Seal 1 v. Biden,*
   ---F. Supp. 3d----, 2021 WL 5448970 (M.D. Fla. Nov. 22, 2021) ............1

*Nken v. Holder*,
  556 U.S. 418 (2009) ................................................................................................37

*Oklahoma v. Biden*,
  ---F. Supp. 3d----, 2021 WL 6126230 (W.D. Okla. Dec. 28, 2021) ............................ 1, 27, 29

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) ..................................................................................................25

*Qureshi v. Holder*,
  663 F.3d 778 (5th Cir. 2011) ..................................................................................21

*Rodden v. Fauci*,
  ---F. Supp. 3d----, 2021 WL 5545234 (S.D. Tex. Nov. 27, 2021) ..................................*passim*

*Rollins v. Marsh*,
  937 F.2d 134 (5th Cir. 1991) ....................................................................................8

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
  141 S. Ct. 63 (2020) ................................................................................................37

*Rydie v. Biden*,
  No. 21-cv-2696, 2021 WL 5416545 (D. Md. Nov. 19, 2021),
  *appeal pending*, No. 21-2359 (4th Cir.) ..................................................................*passim*

*Sackett v. EPA*,
  566 U.S. 120 (2012) ................................................................................................20

*Sampson v. Murray*,
  415 U.S. 61 (1974) ........................................................................................16, 17, 19

*Seila Law LLC v. CFPB*,
  140 S. Ct. 2183 (2020) ............................................................................................26

*Serv. Emps. Int'l Union Loc. 200 United v. Trump*,
  419 F. Supp. 3d 612 (W.D.N.Y. 2019),
  *aff'd*, 975 F.3d 150 (2d Cir. 2020) ........................................................................30

*Serv. Emps. Int'l Union Loc. 200 United v. Trump*,
  975 F.3d 150 (2d Cir. 2020) ....................................................................................15

*Sierra Club v. EPA*,
  939 F.3d 649 (5th Cir. 2019) ..................................................................................23

*Sierra Club v. Peterson*,
  228 F.3d 559 (5th Cir. 2000) ..................................................................................20

*Simon v. E. Ky. Welfare Rts. Org.*,
    426 U.S. 26 (1976) .................................................................................................17

*Smith v. Biden*,
    No. 21-cv-19457, 2021 WL 5195688 (D.N.J. Nov. 8, 2021),
    *appeal pending*, No. 21-3091 (3d Cir.) .............................................................. 1, 15, 37

*Stewart v. Potts*,
    996 F. Supp. 668 (S.D. Tex. 1998) .........................................................................23

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) .................................................................................................14

*Terveer v. Billington*,
    34 F. Supp. 3d 100 (D.D.C. 2014) .........................................................................25

*Texas v. United States*,
    524 F. Supp. 3d 598 (S.D. Tex. 2021) ....................................................................36

*Tigges v. Northam*,
    473 F. Supp. 3d 559 (E.D. Va. 2020) ......................................................................37

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018) .............................................................................................39

*U.S. Information Agency v. Krc*,
    989 F.2d 1211 (D.C. Cir. 1993) .............................................................................10

*U.S. Postal Serv. v. Gregory*,
    534 U.S. 1 (2001) .....................................................................................................24

*UAW-Lab. Empl. & Training Corp. v. Chao*,
    325 F.3d 360, (D.C. Cir. 2003) ........................................................................ 32, 33

*United States v. Fausto*,
    484 U.S. 439 (1988) ........................................................................................2, 8, 9, 10

*United States v. Whaley*,
    577 F.3d 254 (5th Cir. 2009) ...................................................................................31

*Utility Air Reg. Grp. v. EPA*,
    573 U.S. 302 (2014) .................................................................................................29

*Valley v. Rapides Parish School Board*,
    118 F.3d 1047 (5th Cir. 1997) .................................................................................17

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council,*
    435 U.S. 519 (1978) ............................................................................................36

*White v. Carlucci,*
    862 F.2d 1209 (5th Cir. 1989) ........................................................................16

*Whitman v. Am. Trucking Ass'ns,*
    531 U.S. 457 (2001) .................................................................................. 30, 31

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ...............................................................................................7

*Youngstown Sheet & Tube Co. v. Sawyer,*
    343 U.S. 579 (1952) ........................................................................................32

## CONSTITUTION

U.S. Const. art. II .................................................................................................26

U.S. Const. art. VI ................................................................................................29

## STATUTES

3 U.S.C. § 301 ................................................................................................. 6, 34

5 U.S.C. § 704 ......................................................................................................20

5 U.S.C. § 1214 ......................................................................................................9

5 U.S.C. § 2302 ...............................................................................................8-9, 11

5 U.S.C. § 3301 .............................................................................................26-27, 32

5 U.S.C. § 3302 ............................................................................................... 27, 32

5 U.S.C. § 7101 ....................................................................................................14

5 U.S.C. § 7123 ....................................................................................................15

5 U.S.C. § 7301 ....................................................................................................27

5 U.S.C. § 7511 ......................................................................................................9

5 U.S.C. § 7512 ................................................................................................ 9, 11

5 U.S.C. § 7513 ......................................................................................................9

5 U.S.C. § 7702 ......................................................................................................8

x

5 U.S.C. § 7703 ........................................................................................ 8-9

22 U.S.C. § 4010 ...........................................................................................10

22 U.S.C. § 4140 ...........................................................................................10

40 U.S.C. § 101 .............................................................................................32

40 U.S.C. § 121(a) .................................................................................. 34, 35

41 U.S.C. § 1303 ...........................................................................................35

**REGULATIONS**

Exec. Order No. 12564,
    51 Fed. Reg. 32,889 (Sept. 15, 1986) ......................................................27

Executive Order No. 14042,
    86 Fed. Reg. 50,985 (Sept. 14, 2021 .................................................*passim*

Executive Order No. 14043,
    86 Fed. Reg. 50,989 (Sept. 14, 2021) ...............................................*passim*

Determination of the Acting OMB Director Regarding the Revised Safer Federal Workforce
    Task Force Guidance for Federal Contractors and the Revised Economy & Efficiency
    Analysis,
    86 Fed. Reg. 63,418 (Nov. 16, 2021). ................................................. 6, 36

**OTHER AUTHORITIES**

1 Annals of Cong. 463 (1789) ........................................................................26

CDC, How COVID-19 Spreads (updated July 14, 2021),
    https://perma.cc/HP87-5VPC .................................................................4

CDC, *Science Brief: SARS-CoV-2 Infection-induced and Vaccine-induced Immunity*
    (updated Oct. 29, 2021),
    https://perma.cc/DSL8-YBLH ..............................................................23

CDC, Vaccines, Safety of COVID-19 Vaccines (updated Dec. 29, 2021),
    https://perma.cc/R9KW-US3V ...............................................................4

COVID Data Tracker Weekly Review (updated Jan. 7, 2022),
    https://perma.cc/LB5Q-EENK. ...........................................................1, 4

FAR Case No. 2021-021,
    https://perma.cc/W5WG-URJV ...................................................................35

Pandemic Response Accountability Committee, Top Challenges Facing Federal Agencies
    (June 2020),
    https://perma.cc/B7KF-V4RW ..................................................................38

Task Force, COVID-19 Workplace Safety: Guidance for Federal Contractors and
    Subcontractors (Sept. 24, 2021),
    https://perma.cc/T6G6-DSCX ......................................................................6

Task Force, Frequently Asked Questions ("Task Force FAQs"), Vaccinations,
    https://perma.cc/RLD6-EUUQ............................................................. 5, 19, 23

## INTRODUCTION

Plaintiffs challenge the authority of the federal government, in its capacity as an employer, to require COVID-19 vaccination for those who choose to work as federal civilian employees.  Nearly two years into the COVID-19 pandemic, more than 500,000 cases are being reported in the United States every day; more than 3.5 million Americans have been hospitalized, and more than 800,000 have died.  Centers for Disease Control and Prevention ("CDC"), COVID Data Tracker Weekly Review (updated Jan. 7, 2022), https://perma.cc/LB5Q-EENK.  In light of this unprecedented public health crisis, and the documented safety and efficacy of available COVID-19 vaccines, the executive order requiring vaccination of the federal workforce ("EO 14043")—designed to stem the spread of this deadly and highly contagious disease within the federal workforce and among the millions of Americans it serves—fits comfortably within the President's broad authority to oversee the Executive Branch workforce.  Every court that has considered a request to enjoin EO 14043 has denied it.[1]

This Court should do the same.  Plaintiffs' challenge to the employment condition set

---

[1] *See Oklahoma v. Biden*, ---F. Supp. 3d----, 2021 WL 6126230 (W.D. Okla. Dec. 28, 2021); *AFGE Loc. 501 v. Biden*, No. 1:21-cv-23828-JAL, ECF No. 33 (S.D. Fla. Dec. 22, 2021); *Donovan v. Vance*, ---F. Supp. 3d----, 2021 WL 5979250 (E.D. Wash. Dec. 17, 2021); *McCray v. Biden*, No. 21-cv-2882, 2021 WL 5823801 (D.D.C. Dec. 7, 2021); *Rodden v. Fauci*, ---F. Supp. 3d----, 2021 WL 5545234 (S.D. Tex. Nov. 27, 2021); *Navy Seal 1 v. Biden*, ---F. Supp. 3d----, 2021 WL 5448970 (M.D. Fla. Nov. 22, 2021); *Rydie v. Biden*, No. 21-cv-2696, 2021 WL 5416545 (D. Md. Nov. 19, 2021), *appeal pending*, No. 21-2359 (4th Cir.); Minute Entry, *Brnovich v. Biden*, No. 2:21-cv-01568-PHX-MTL, ECF No. 64 (D. Ariz. Nov. 10, 2021); *Altschuld v. Raimondo*, No. 21-cv-2779, 2021 WL 6113563 (D.D.C. Nov. 8, 2021); *Church v. Biden*, No. 21-cv-2815, 2021 WL 5179215 (D.D.C. Nov. 8, 2021); *Smith v. Biden*, No. 21-cv-19457, 2021 WL 5195688 (D.N.J. Nov. 8, 2021), *appeal pending*, No. 21-3091 (3d Cir.); *Foley v. Biden*, No. 4:21-cv-01098-O, ECF No. 18 (N.D. Tex. Oct. 6, 2021).

forth in EO 14043 falls squarely within the comprehensive ambit of the Civil Service Reform Act of 1978 ("CSRA").  Congress enacted the CSRA to govern broadly the manner in which federal employees may challenge the conditions of their employment.  This "integrated scheme of administrative and judicial review," *United States v. Fausto*, 484 U.S. 439, 446 (1988), generally precludes federal employees from preemptively filing such challenges in district court.  If not for the CSRA, federal employees could flood the federal courts with workplace grievances, turning every actual or potential dispute between them and their employer into a federal case. Plaintiffs here—federal employees who do not wish to comply with employment terms requiring vaccination against COVID-19—seek to do just that.  But binding Fifth Circuit precedent makes clear that federal employees cannot bypass the CSRA by bringing claims related to their employment under the Administrative Procedure Act ("APA").  For that reason, this case has a straightforward resolution: Plaintiffs' employment-related grievances are precluded by the CSRA and thus fall outside of district court jurisdiction.  The Court should reject Plaintiffs' attempted end run around the CSRA and dismiss their complaint for lack of jurisdiction.

Plaintiffs' challenge is also meritless.  Even if their APA claims were not precluded, they fail because they do not challenge discrete, final agency action.  And in any event, EO 14043 would meet the APA's deferential standard.  Requiring COVID-19 vaccination is a reasonable exercise of the President's authority to manage the federal workforce, and the President was not required to make detailed findings or compile an extensive administrative record to exercise that authority.  Nor can Plaintiffs avoid the strictures of the APA by seeking "non-statutory review" because EO 14043 is clearly within the President's constitutional and

2

statutory authority to regulate the federal workforce.

The Fifth Circuit's decision in *BST Holdings, LLC v. OSHA*, 17 F.4th 604 (5th Cir. 2021), on which Plaintiffs heavily rely, requires no different result, even putting aside the fact that the Fifth Circuit's stay of an Occupational Safety and Health Administration ("OSHA") rule governing private sector employees has been dissolved. *See In re MCP No. 165*, ---F.4th----, 2021 WL 5989357 (6th Cir. 2021). This case is not about the federal government's authority as regulator to require private employers to impose vaccine mandates. Nor does EO 14043 reflect an "economically and politically seismic act," Pls.' Mot. for Prelim. Inj. at 1–2, ECF No. 3 ("Mot."), or an expansion of the President's well-established authority. As the Supreme Court has recognized, "the government as employer . . . has far broader powers than does the government as sovereign." *Engquist v. Or. Dep't of Argic.*, 553 U.S. 591, 598 (2008) (citation omitted).

Plaintiffs also fail to establish irreparable harm. Most federal employees can pursue reinstatement under the CSRA, with potential back pay under the Back Pay Act, if they are ultimately found to have been wrongfully removed. Binding Supreme Court and Fifth Circuit precedent confirms that under these circumstances, any financial consequences of removal— should it even come to pass—do not constitute irreparable harm. Finally, the public interest is best served by allowing the federal government to decide how best to protect the federal workforce from a deadly virus that has caused serious disruptions to government operations and by honoring Congress's clear directive that employment disputes should be addressed through the exclusive procedures of the CSRA.

3

For those reasons, the Court should deny Plaintiffs' requested preliminary injunction.[2]

## BACKGROUND

### I.     The COVID-19 Pandemic

The virus SARS-CoV-2 causes a respiratory disease known as COVID-19.  *See* CDC, How COVID-19 Spreads (updated July 14, 2021), https://perma.cc/HP87-5VPC.  Three safe and effective COVID-19 vaccines are now widely available in the United States, millions of people have received these vaccines "under the most intense safety monitoring in U.S. history," and the CDC recommends that all eligible individuals receive a vaccine "as soon as possible."   CDC, Vaccines, Safety of COVID-19 Vaccines (updated Dec. 29, 2021), https://perma.cc/R9KW-US3V.  As of the filing of this brief, community transmission rates are higher than ever as a result of the Omicron variant; more than 700,000 new cases were reported on January 5, 2022, and more than 1,000 deaths are being reported every day.  CDC, COVID Data Tracker Weekly Review (updated Jan. 7, 2022), https://perma.cc/LB5Q-EENK.

---

[2] Plaintiffs' challenges to Executive Order 14042 ("EO 14042"), which addresses COVID-19 vaccine requirements for federal contractors, also fail.  But the Court need not address those claims now because enforcement of COVID-19 safety clauses in government contracts has been enjoined nationwide for the foreseeable future.  *See* Order, *Georgia v. Biden*, No. 21-14269-F (11th Cir. Dec. 17, 2021).  This Court has already appropriately determined that the *Georgia* injunction obviates any present need to consider challenges to EO 14042.  *See* Tr. of Jan. 4, 2022 Status Conf.; *see also* Minute Entry, *Texas v. Biden*, No. 3:21-cv-00309 (S.D. Tex. Dec, 10, 2021).  For that reason, this brief does not contain an extensive response to the substance of Plaintiffs' challenge to EO 14042.  Defendants reserve their rights to supplement this response to more fully address Plaintiffs' challenge to EO 14042 as appropriate should the need arise.

## II.      Executive Order 14043

President Biden issued Executive Order No. 14043 on September 9, 2021.  *See* Executive Order on Requiring Coronavirus Disease 2019 Vaccination for Federal Employees, 86 Fed. Reg. 50,989 (Sept. 14, 2021) ("EO 14043").   EO 14043 reflects the President's determination that COVID-19 threatens "[t]he health and safety of the Federal workforce, and the health and safety of members of the public with whom they interact, [which] are foundational to the efficiency of the civil service."  EO 14043 § 1.  "[I]n light of the public health guidance"—particularly CDC's determination "that the best way to slow the spread of COVID-19 and to prevent infection by the Delta variant or other variants is to be vaccinated"—EO 14043 instructs each federal agency to "implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its Federal employees, with exceptions only as required by law."  *Id.* §§ 1, 2.  It also directs the Safer Federal Workforce Task Force ("Task Force") to issue guidance "on agency implementation of this requirement."  *Id.* § 2.

Task Force guidance recognizes that federal employees may be eligible for exceptions based on a medical condition or religious objection, and advises that federal employees who have not requested or received an exception be fully vaccinated no later than November 22, 2021.  It further advises that an employee who requests an exception should not be disciplined while the request is pending.  *See generally* Task Force, Frequently Asked Questions ("Task Force FAQs"), Vaccinations, https://perma.cc/RLD6-EUUQ.  An employee who does not comply with the vaccination requirement (and does not have a pending exception request)

may be subject to a phased enforcement process in which agency employers "work with employees to achieve their compliance." *Id.*

## III.   Executive Order 14042

On September 9, 2021, the President issued Executive Order No. 14042, 86 Fed. Reg. 50,985 (Sept. 14, 2021) ("EO 14042") to "promote[] economy and efficiency in Federal procurement by ensuring that the parties that contract with the Federal Government provide adequate COVID-19 safeguards to their workers performing on or in connection with a Federal Government contract or contract-like instrument." EO 14042 § 1. Those safeguards are to be set forth in guidance issued by the Task Force, *id.* § 2(a), and become binding if the United States Office of Management and Budget ("OMB") Director, pursuant to a delegation of the President's statutory authority, determines that they would "promote economy and efficiency in Federal contracting if adhered to by Government contractors and subcontractors." *Id.* § 2(c) (citing 3 U.S.C. § 301). The Task Force issued initial guidance pursuant to EO 14042 on September 24, 2021. *See* Task Force, COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors (Sept. 24, 2021), https://perma.cc/T6G6-DSCX. On November 10, 2021, the Task Force issued updated guidance and the Acting OMB Director made a new economy-and-efficiency determination. *See* Determination of the Acting OMB Director Regarding the Revised Safer Federal Workforce Task Force Guidance for Federal Contractors and the Revised Economy & Efficiency Analysis, 86 Fed. Reg. 63,418, 63,418-21 (Nov. 16, 2021). The revised guidance provides that federal contractors that are a party to a covered contract are to "ensure that all covered contractor employees are fully vaccinated" by January 18, 2022. *Id.* At present, EO

6

14042 is preliminarily enjoined on a nationwide basis. *See* Order, *Georgia v. Biden*, No. 21-14269-F (11th Cir. Dec. 17, 2021).

## IV.  This Lawsuit

Plaintiffs are a "nonprofit membership organization" called Feds for Medical Freedom ("FMF"), a local American Federation of Government Employees bargaining unit ("Local 918"), a federal contractor, and 62 individual FMF members (primarily federal employees and some federal contractor or sub-contractor employees). They seek to preliminarily enjoin "all Defendants (excluding President Biden himself but including all parties listed in Rule 65) from implementing or enforcing" EO 14042 and EO 14043. Mot. at 30.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). The party seeking such relief bears the burden to show: (1) "a substantial threat of irreparable injury," (2) "a substantial likelihood of success on the merits," (3) "that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted," and (4) "that the grant of an injunction will not disserve the public interest." *Jordan v. Fisher*, 823 F.3d 805, 809 (5th Cir. 2016) (citation omitted). A preliminary injunction should not be "granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Id.*

## ARGUMENT

## I.  The Court Lacks Jurisdiction.

Plaintiffs carry the burden of establishing this Court's subject matter jurisdiction. At the preliminary injunction stage, "the plaintiffs must make a 'clear showing' that they have

standing to maintain the preliminary injunction." *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017). Plaintiffs cannot meet that burden here.

### A.    The Federal Employees' Claims Are Precluded By The CSRA.

The CSRA constitutes "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Fausto*, 484 U.S. at 445. It "prescribes in great detail the protections and remedies applicable to [personnel actions against federal employees], including the availability of administrative and judicial review." *Id.* at 443. As the Fifth Circuit has explained, the CSRA's remedies are "the *comprehensive and exclusive* procedures for settling work-related controversies between federal civil-service employees and the federal government." *Rollins v. Marsh*, 937 F.2d 134, 139 (5th Cir. 1991) (emphasis added).[3] "Given the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 8, 11-12 (2012). Thus, the CSRA's comprehensive scheme provides covered employees with their exclusive means of redress (whether or not it provides any remedy), and district courts lack jurisdiction over employment-related grievances. *See generally Fausto*, 484 U.S. 439; *see also Crane v. Napolitano*, No. 3:12-cv-03247-O, 2013 WL 8211660, at *2 (N.D. Tex. July 31, 2013) ("[W]hen a particular employee's class or asserted claim has been excluded from

---

[3] Only claims of discrimination may be brought in district court through separate anti-discrimination statutes as specifically provided for by the CSRA, 5 U.S.C. §§ 2302(d), 7702, 7703(b)(2). Here, Plaintiffs have not alleged any claims of discrimination that, after having been administratively exhausted, could proceed in district court pursuant to those statutes.

the CSRA's framework for administrative and judicial review of adverse personnel actions, that excluded employee cannot seek redress in a federal district court."). This is true "even when the employee raises constitutional challenges to federal statutes and seeks equitable relief." *Id.* (citing *Elgin*, 567 U.S. 1).[4]

The CSRA provides different administrative and judicial review procedures depending on the nature of the challenged employment action and the types of claims asserted. More serious "adverse actions"—suspension for more than 14 days, reduction in grade, reduction in pay, removal, or furlough of 30 days or less, 5 U.S.C. § 7512—may generally be appealed directly to the Merit Systems Protection Board ("MSPB"), with judicial review in the Federal Circuit. *Id.* §§ 7513(d), 7703(b)(1). Corrective action for a less severe "personnel action" may generally be sought, depending on the nature of the employee's allegation, through agency administrative processes, negotiated grievance rights, or through the Office of Special Counsel. *Id.* § 1214(a)(3); *id.* § 2302. No relief is available outside those channels because "so far as review of determinations under the CSRA is concerned, what you get under the CSRA is what you get." *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005) (Roberts, J.); *see also Crane*, 2013 WL 8211660, at *3.[5]

---

[4] Plaintiffs assert no constitutional claims in their motion for preliminary injunction. Although they assert claims based on the nondelegation doctrine in their complaint, their motion only raises that doctrine as part of their statutory argument. *See* Mot. at 15 (urging a narrow reading of the statutes authorizing the EOs because "if the Executive did have such dramatic power uncabined by statutory text, it would violate the nondelegation doctrine").

[5] Under the CSRA, limited federal-employee categories lack appeal rights, including political appointees, Foreign Service personnel, Central Intelligence Agency employees, and non-veteran Federal Bureau of Investigation employees. *See* 5 U.S.C. § 7511(b). But this exclusion was intentional, and those excluded employees lack the ability to pursue employment-related statutory claims in district court. *See Fausto*, 484 U.S. at 447-55. As to

Critically, a federal employee may not "circumvent th[e] [CSRA's] detailed scheme governing federal employer-employee relations by suing under the more general APA." *Broadway v. Block*, 694 F.2d 979, 986 (5th Cir. 1982); *see also McAuliffe v. Rice*, 966 F.2d 979 (5th Cir. 1992). To hold otherwise would "encourage aggrieved employees to bypass the statutory and administrative remedies in order to seek direct judicial relief and thereby deprive the Government of the opportunity to work out its personnel problems within the framework it has so painstakingly established." *Broadway*, 694 F.2d at 985 (citation omitted); *see also Coulibaly v. Kerry*, 130 F. Supp. 3d 140, 147 (D.D.C. 2015) ("[T]he [APA] offers no workaround for CSRA preclusion: Federal employees may not use the APA to grieve an employment-related matter by challenging an agency's failure to abide by its own procedures and regulations, a personnel policy at a systemic level, or an agency's statutory interpretation." (citation omitted)). Where the CSRA applies, district court review is precluded, and "this bar . . . cannot be circumvented by suing under the APA." *Clarke v. OPM*, No. H-07-0662, 2007 WL 2363295, at *6 (S.D. Tex. Aug. 17, 2007).

---

Foreign Service personnel, Congress has passed a "companion measure" to the CSRA—the Foreign Service Act ("FSA")—to govern employment disputes. *See U.S. Information Agency v. Krc*, 989 F.2d 1211, 1217 (D.C. Cir. 1993). Like the CSRA, the FSA "provides a 'comprehensive system for reviewing personnel action[s] taken against'" Foreign Service officers, excluding other remedies not set forth in the statute. *Id.* (quoting *Fausto*, 484 U.S. at 455). Under the FSA, a career Foreign Service officer can only be removed upon a finding by the Foreign Service Grievance Board ("FSGB") that the agency has established sufficient cause for removal. *See* 22 U.S.C. § 4010(a)(2)(A). FSGB decisions are reviewable in district court, *see* 22 U.S.C. § 4140, but must first be administratively exhausted. *See, e.g.*, *Hunter v. United States*, 36 Fed. Cl. 257, 259 (Ct. Fed. Claims 1996). Plaintiffs fail to allege such exhaustion, so the Court lacks jurisdiction over any claims by Foreign Service employees. *See Caldwell v. L-3 Vertex Aerospace*, No. 3:13CV123TSL-JMR, 2013 WL 1768683, at *1 n.1 (S. D. Miss. Apr. 24, 2013) ("If exhaustion is a jurisdictional requirement, then the burden is on plaintiff to plead and prove exhaustion . . . .").

Here, Plaintiffs' complaint constitutes a challenge to a current alleged "significant change in duties, responsibilities, or working conditions," 5 U.S.C. § 2302(a)(2)(A)(xii), or to hypothetical future removals or suspensions, *see id.* § 7512. Either way, the CSRA precludes Plaintiffs from pursuing their claims in this Court. *See, e.g., Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018) (CSRA shows "Congress's intent to entirely foreclose judicial review to employees to whom the CSRA denies statutory review"). As another district court in this Circuit has explained, "[i]f the CSRA provides a remedy for Plaintiffs' challenged disciplinary action, then the CSRA's remedy is Plaintiffs' exclusive avenue for redressing their claims . . . . If the CSRA does not provide a remedy for Plaintiffs' challenged disciplinary action . . . , then a federal district court cannot provide relief because it would be affording a greater remedy than that provided by the CSRA." *Crane*, 2013 WL 8211660, at *3 n.2; *see also Rydie*, 2021 WL 5416545, at *2 (concluding that federal employees' challenge to EO 14043 was likely precluded by the CSRA).

Plaintiffs assert that they "do not challenge individual employment decisions in this suit," Compl. ¶ 13, and insist that their challenge is to "agency implementations and expansions" of EO 14043, Mot. at 17. But as this Court has noted, the relevant employer agency "will decide who receives an exemption, whether and what additional remedial measures and procedures should be taken, and *whether and how individual employees should be disciplined*." *Rodden*, 2021 WL 5545234, at *3 (emphasis added). Because what Plaintiffs characterize as the operative "final agency action" is actually a (still hypothetical) personnel decision, the CSRA provides the exclusive remedial scheme. It matters not that Plaintiffs characterize their suit as a challenge to the "legality of a systemwide policy." *Fornaro*, 416 F.3d

11

at 68 (citation omitted).  "Allowing an alternative route to relief in the district court because plaintiffs frame their suit as a systemwide challenge to [a personnel] policy would substitute an entirely different remedial regime for the one Congress intended to be exclusive . . . ." *Id.*; *see also AFGE v. Sec'y of Air Force*, 716 F.3d 633, 639 (D.C. Cir. 2013) ("[A] plaintiff's inability to use the APA to circumvent the CSRA's requirements 'applies to a systemwide challenge to an agency policy interpreting a statute just as it does to the implementation of such a policy in a particular case." (citation omitted)).

### B.    The Federal Employee Plaintiffs' Claims Are Not Ripe.

Even if this action were not precluded by the CSRA, the Court would still lack jurisdiction because Plaintiffs' claims are speculative and unripe.  The vast majority of Plaintiffs have submitted exception requests to their employing agencies.  *See* Decl. of John D. Cunningham, Ex. 1; Decl. of Barry W. Carpenter, Ex. 2; Decl. of Maria X. Cordero, Ex. 3; Decl. of Mark Arbeen, Ex. 4; Decl. of Amanda Jackson, Ex. 5; Decl. of Gavin M. Frost, Ex. 6; Decl. of John E. Christie, Ex. 7; Decl. of Melanie Ramirez, Ex. 8; Decl. of Alicyn Moorman, Ex. 9; Decl. of Pamela Bentley, Ex. 10; Decl. of D'Andra Hankinson, Ex. 11; Decl. of Ismael Martinez, Ex. 12; Decl. of Erica Nieto, Ex. 13; Decl. of Laura Glading, Ex. 14; Decl. of Roger Sternitzke, Ex. 15; Decl. of  Dwayne M. Harris, Ex. 16.; Decl. of Jacqueline A. Greaney, Ex. 17.  Other Plaintiffs may do so in the future.  *Compare, e.g.*, Compl. ¶ 16, 22, 23, 29, 32 (describing unvaccinated plaintiffs who do not say whether they plan to request an exception), *with* Compl. ¶¶ 18, 19, 24, 41, 56 (describing unvaccinated plaintiffs who allege they have no plans to request an exception).  As this Court has previously held, the claims of individuals with pending exception requests are not ripe.  *Rodden*, 2021 WL 5545234, at \*2-3; *see also, e.g.*,

*Church*, 2021 WL 5179215, at *8-10; *McCray*, 2021 WL 5823801, at *8-9.  Indeed, at least one

Plaintiff has already received a religious accommodation, *see* Compl. ¶ 72, obviating the need

for this Court to address her claim.[6]

Claims by Plaintiffs who have not submitted exception requests are also unripe because

of the administrative mechanisms for determining whether and what discipline may be

imposed for being unvaccinated.  As Plaintiffs' submissions indicate, federal employees have

ample opportunities to contest any proposed suspension or removal from employment

through a multi-step administrative process.  *See*, *e.g.*, Exs. 15, 27 to Pls.' Mot., ECF Nos. 3-

15, 3-27.  And if removal occurs for any federal employee at the conclusion of this process,

most federal employees have options for challenging their removal, as discussed above.  *See*

*supra* Part I.A.  Ripeness principles counsel in favor of "letting the administrative process run

its course . . . before binding parties to a judicial decision" regarding the terms of federal

employment.  *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012); *Garcia v. United*

*States*, 680 F.2d 29, 31 (5th Cir. 1982) (a court has "no right to speculate that the administrative

---

[6] Certain Plaintiffs are vaccinated or have received an exception but allege that they will be injured by an "inevitable" future vaccination requirement.  *See* Compl. ¶¶ 39, 42, 72.  Such speculation is insufficient to satisfy Article III.  Another Plaintiff allegedly "does not consent to having to share his medical history with the federal government," *id.* ¶ 50, but offers no evidence that he has not complied with the vaccination requirement or is likely to be subject to workplace discipline as a result.  Cunningham Decl., Ex. 1.

bodies will make erroneous decisions which must be reversed by a court decision"); *see also*, *e.g.*, *Church*, 2021 WL 5179215, at *8-10; *McCray*, 2021 WL 5823801, at *8-9.

### C.     The Labor Organization Plaintiff Lacks Standing and Cannot Pursue Relief in District Court in Any Event.

Local 918 allegedly "represents the bargaining unit members of the Federal Protective Service and Cybersecurity and Infrastructure Security Agency components of [DHS]." Compl. ¶ 11.  To start, Local 918 pleads no injury to itself as an organization.  *See, e.g.*, Compl. ¶ 146 ("Local 918 asserts harms via its members . . . .").  It must thus establish associational standing to assert the rights of its members, *i.e.*, that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (citation omitted).  The first requirement demands "specific allegations establishing that at least one identified member has suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009).  Here, Local 918 lacks associational standing because the complaint fails to identify even a single member who allegedly faces harm attributable to EO 14043.  *See* ECF No. 33 at 16, *AFGE Loc. 501* (labor union lacked associational standing to challenge EO 14043 where it failed "to identify any members," "much less one that has suffered or will suffer harm").

In any event, because Local 918 is a federal-employee union, its claims are precluded by the Federal Service Labor-Management Relations Statute, 5 U.S.C. § 7101 *et seq.*, which comprehensively governs labor-management relations in the federal sector and channels administrative review through the Federal Labor Relations Authority, with direct judicial

review in the federal courts of appeals, 5 U.S.C. § 7123. *See, e.g., Am. Fed'n of Govt. Emps., AFL-CIO v. Trump*, 929 F.3d 748, 756 (D.C. Cir. 2019); *Serv. Emps. Int'l Union Loc. 200 United v. Trump*, 975 F.3d 150, 152 (2d Cir. 2020). That preclusion encompasses the statutory claims that Plaintiffs assert here. *Id.*

## II. Plaintiffs Fail To Establish Irreparable Injury.

To satisfy their burden of proving irreparable harm, Plaintiffs must demonstrate "a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986). Yet as several federal courts to consider the question have held, a federal employee's choice between complying with a COVID-19 vaccination mandate and suffering job-related consequences is not irreparable harm. *See Rydie*, 2021 WL 5416545, at *5; *Altschuld*, 2021 WL 6113563, at *3–5; *Church*, 2021 WL 5179215, at *13–15; *Smith*, 2021 WL 5195688, at *8–9; *Donovan*, 2021 WL 597925, at *7. There is no reason for this Court to hold otherwise.

As a threshold matter, Plaintiffs' claims that they face imminent harm are unjustified on this record. Only one plaintiff—Michael Schaecher—alleges imminent removal (on January 10, 2022). Compl. ¶ 62; Mot. at 25. But on December 23, 2021, the North Carolina National Guard rescinded Schaecher's removal letter, and it is now uncertain when it will take further disciplinary action. *See* Decl. of Jonathan P. Hearn, Ex. 18. Plaintiff Schaecher is therefore not in imminent danger of irreparable harm. Moreover, as discussed above, Plaintiffs who have submitted exception requests but have not received decisions do not have

ripe claims and cannot, for the same reasons, show irreparable injury. The same is true for any plaintiff who may request an exception in the future. *See supra* Part I.B.[7]

Plaintiffs claim that federal employees will face irreparable harm based on loss of employment. *See* Mot. at 26–29. But the Supreme Court has long held that, absent a "genuinely extraordinary situation," the loss of employment—and any financial or reputational damage stemming therefrom—is not an irreparable harm. *Sampson v. Murray*, 415 U.S. 61, 91, 92 n.68 (1974). That is so because "irreparable" harm requires that there be "no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). And as the Fifth Circuit has often recognized, "[i]t is practically universal jurisprudence in labor relations in this country that there is an adequate remedy for individual wrongful discharge after the fact of discharge," *i.e.*, "reinstatement and back pay." *Garcia*, 680 F.2d at 31–32; *see also White v. Carlucci*, 862 F.2d 1209, 1212 (5th Cir. 1989). Even if Plaintiffs were certain to be removed for their refusal to be vaccinated—and they are not—any financial consequences of termination would not be irreparable, in part because Plaintiffs could

---

[7] Plaintiffs submitted affidavits from three Internal Revenue Service ("IRS") employees—Mia J. Pratt, Ashley Kjarbo, and Brian Kjarbo—who allege that they recently received Proposed Suspension Letters based on their failure to become vaccinated. *See* Exs. 34–36 to Pls.' Notices of Additional Exs., ECF Nos. 13-1, 13-2, 16-1. These individuals also allege that they have submitted religious exception requests. *Id.* However, Plaintiffs fail to explain that Pratt and the Kjarbos did not follow the IRS's procedures for recording that they had requested religious exceptions. After reviewing these individuals' requests, Treasury has rescinded the Proposed Suspension Letters that were sent to Pratt and the Kjarbos. *See* Decl. of Christina Ballance, Ex. 19. As Ms. Ballance states in her declaration, the Treasury Department will not discipline an employee for not being vaccinated while a religious or medical exception request is being adjudicated. *Id.*

generally seek reinstatement under the CSRA and back pay under the Back Pay Act.  *See*

*Sampson*, 415 U.S. at 92 n.68.[8]

Plaintiffs posit a number of theories in an attempt to circumvent *Sampson* and its

progeny, but none establishes irreparable harm.  *First*, although Plaintiffs assert that they face

"uniquely damaging losses that money could never repair," their allegations flow from the

potential loss of employment.  *See* Mot. at 28.  And the case law is clear that even economic

injuries that "severely . . . affect a particular individual" do not suffice because they are based

on "external factors common to most discharged employees."  *Sampson*, 415 U.S. at 92 n.68;

*Morgan v. Fletcher*, 518 F.2d 236, 238–40 (5th Cir. 1975) (no irreparable injury where job loss

would cause a 45% reduction in family's income, foreclosure of family home, and loss of

medical insurance benefits).[9]

---

[8] Plaintiffs' reliance on *Burgess v. Federal Deposit Insurance Corp.*, 871 F.3d 297 (5th Cir. 2017) and *Valley v. Rapides Parish School Board*, 118 F.3d 1047 (5th Cir. 1997) is misplaced.  In those cases, the Fifth Circuit found irreparable harm only after holding that the plaintiffs were likely to succeed on their claims that they had suffered adverse employment actions subject to "constitutionally infirm hearing[s]."  *Burgess*, 871 F.3d at 304 (citing *Valley*, 118 F.3d at 1056).  Here, Plaintiffs do not (and cannot) allege that they have suffered employment loss subject to similarly unconstitutional hearings, nor have they yet pursued review under the CSRA or the FSA. *See supra* Part I.A.

[9] Plaintiff Joshua Roberts alleges that he faces an irreparable injury because if he loses his job, he and his wife may not qualify to adopt two infant children that he and his wife have been foster parenting.  *See* Mot. at 28.  These alleged injuries, however, are entirely speculative as he provides no evidence as to whether the adoption agency would deny him parenting rights.  *See Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1982).  And even if Roberts alleged a concrete injury, there would be a significant redressability issue: Roberts's purported injury stems not from the conduct of his employer but from the independent action of the adoption agency.  Because this Court cannot redress an injury that "results from the independent action of some third party not before the court," this Court lacks jurisdiction to review Roberts's claim.  *See Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 42 (1976).

*Second*, Plaintiffs cite *Department of Navy v. Egan*, 484 U.S. 518 (1988), and argue that federal employees who lose their security clearances for violating the vaccine mandate "will be forever barred from challenging [their] removal[s]." Mot. at 28. *Egan* is inapposite here. In that case, the Supreme Court held that decisions to revoke or deny a security clearance are not subject to review. 484 U.S. at 524–27. But Plaintiffs cite nothing to suggest that the government might deny or revoke a security clearance for violating the vaccine mandate. Nor do they cite anything in the challenged Executive Orders or guidance to suggest that any adverse employment actions thereunder would implicate the sort of national security concerns addressed in *Egan*. *See Egan*, 484 U.S. at 528–29 (distinguishing security clearance decisions from other kinds of adverse employment decisions). Although Plaintiffs submit an affidavit of a federal employee who states, in conclusory fashion, that he "believe[s] DOD will revoke [his] clearance if [he] do[es] not comply with DOD's vaccination policy," Ex. 24 to Pls.' Mot., ECF No. 3-24, it is sheer speculation that a clearance would be revoked on this basis and thus wholly insufficient to establish irreparable harm. *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) ("[T]here must be more than an unfounded fear on the part of the applicant."). As discussed above, any Plaintiffs who are terminated for violating the mandate can challenge the removal itself under the CSRA. *See supra* Part I.A. Such alleged harm is therefore not irreparable. *See Janvey*, 647 F.3d at 600.

*Third*, two Plaintiffs—Julia Badger and Laura Brunstetter—allege that they face a "crisis of conscience" due to religious objections. Mot. at 28 (citing Compl. ¶¶ 17, 20)). Both plaintiffs, however, have pending religious accommodation requests. *See* Compl. ¶¶ 17, 20. Thus, they cannot show any imminent danger of irreparable harm because they will not be

disciplined while those requests are pending, *see* Task Force FAQs, and their requests could be granted, in which case they would not be disciplined for not getting vaccinated. *See Rodden*, 2021 WL 5545234, at *2 (no irreparable harm where plaintiffs have claimed an exemption from the vaccine mandate); *Church*, 2021 WL 5179215, at *10 (same).

*Fourth*, Plaintiffs assert that they cannot recover monetary damages under the APA or an *ultra vires* claim. *See* Mot. at 29 (citing *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021)). But as discussed, Plaintiffs can generally seek relief under the CSRA for any hypothetical adverse actions, including potential removal. Plaintiffs therefore cannot establish irreparable harm because they can "recover monetary damages flowing from their injury." *E. Bay Sanctuary Covenant*, 993 F.3d at 677. And even if back pay were ultimately unavailable, a federal employee still cannot establish irreparable injury based on nothing more than the possibility of economic loss. *See Davis v. Billington*, 76 F. Supp. 3d 59, 66 (D.D.C. 2014); *see also Sampson*, 415 U.S. at 92 n.68 ("an insufficiency of savings or difficulties in immediately obtaining other employment" is insufficient).

Finally, Plaintiffs have not shown a substantial likelihood of irreparable harm arising from EO 14042 because no plaintiff alleges facts sufficient to show that any government contract clause described in EO 14042 is currently, or even will soon be, enforced against them. Plaintiffs filed this action and sought emergency injunctive relief on December 21, 2021, two weeks after the U.S. District Court for the Southern District of Georgia issued a nationwide injunction enjoining the Federal Government "from enforcing the vaccine mandate for federal contractors and subcontractors in all covered contracts in any state or territory of the United States of America." *Georgia v. Biden*, No. 1:21-cv-163, 2021 WL

5779939, at *12 (S.D. Ga. Dec. 7, 2021).  Although Defendants have challenged that injunction and expect to ultimately prevail on the merits, that nationwide injunction currently remains in place and as long as it remains in place, no plaintiff has shown a substantial likelihood of irreparable harm.  *See, e.g.*, *Jordan*, 823 F.3d at 809.

## III.   Plaintiffs' Challenge To EO 14043 Is Unlikely To Succeed On The Merits.

### A.      Plaintiffs' APA Claim Fails.

Notwithstanding the clear precedent holding that federal employees are limited to the remedies and review scheme provided by the CSRA, *see supra* Part I.A, Plaintiffs purport to bring claims under the APA.  *See* Compl. ¶¶ 185-198; Mot. at 16-25.  Specifically, Plaintiffs contend that certain federal agencies' "implementations and expansions" of EO 14043 and the associated Task Force guidance violate the APA's bar on arbitrary and capricious agency action.  Mot. at 17; *see also id.* at 18.  Even if the CSRA did not preclude Plaintiffs' APA claim, the claim would still fail.

#### i.       Plaintiffs Do Not Challenge Final Agency Action.

A plaintiff invoking the APA generally must challenge "final agency action for which there is no other adequate remedy in a court."  *Sackett v. EPA*, 566 U.S. 120, 125 (2012) (quoting 5 U.S.C. § 704).  "Final agency actions are actions which (1) 'mark the consummation of the agency's decisionmaking process,' and (2) 'by which rights or obligations have been determined, or from which legal consequences will flow.'"  *Sierra Club v. Peterson*, 228 F.3d 559, 565 (5th Cir. 2000) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)).

Plaintiffs fail to meet this threshold requirement for APA review.  Plaintiffs claim that every agency now has adopted "the same policy of mandating full vaccination, or receipt of a

religious or medical accommodation, by November 22, 2021[,] or else face discipline up to and including termination."  Compl. ¶ 124.  According to Plaintiffs, the adoption of this general policy, whether implicit or publicly acknowledged, constitutes final agency action subject to APA review.[10]  *See* Mot. at 17.  Not so.  As a general matter, an agency has not consummated its decisionmaking process until all administrative steps—including nonjudicial remedies provided by schemes like the CSRA—are exhausted.  *See Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011) (finding that termination of asylum is not final agency action because "it represents only an intermediate step in a multi-stage administrative process, succeeded (or accompanied) by removal proceedings").  And as this Court has recognized, the relevant "final agency action" implementing EO 14043 is an employing agency's ultimate decision as to whether an individual employee "receives an exemption, whether and what additional remedial measures and procedures should be taken, and whether and how [that employee] should be disciplined."  *Rodden*, 2021 WL 5545234, at \*3.[11]  Plaintiffs are thus unlikely to succeed on their APA claim.

---

[10] Plaintiffs do not contend that EO 14043 or the Task Force Guidance are, themselves, final agency action.  That is for good reason, as neither the President nor the Task Force is subject to the APA.  *Rodden*, 2021 WL 5545234, at \*2-3.

[11] It makes no difference, contrary to Plaintiffs' arguments, *see* Mot. at 16–17, that agencies have communicated detailed guidance to employees regarding their plans for implementing EO 14043.  That guidance does not legally bind the agencies to any particular course of action with respect to any given employee, and so does not represent the consummation of the agency's decisionmaking.  And an expectation of "[p]ractical consequences, such as the threat of having to defend [oneself] in an administrative hearing should the agency actually decide to pursue enforcement," is not sufficient to establish final agency action.  *Indep. Equip. Dealers Ass'n v. EPA,* 372 F.3d 420, 428 (D.C. Cir. 2004) (citation omitted).

ii.     **Plaintiffs' APA Claim Fails On Its Merits.**

Even if the Court were to reach the substance of Plaintiffs' APA claim, it should conclude that the federal employee vaccination requirement is not arbitrary and capricious. Pursuant to the APA's "deferential" standard, a court "may not substitute its own policy judgment for that of the agency" and instead "simply ensures that the agency has acted within a zone of reasonableness." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021); *see also City of Abilene v. EPA*, 325 F.3d 657, 664 (5th Cir. 2003) (agency need only satisfy "minimal standards of rationality"). The federal employee vaccination requirement easily meets this standard.

Plaintiffs first assert that the federal employee vaccination requirement is unreasoned and unsupported, with "individual agency documents" providing no detailed rebuttal to Plaintiffs' battery of questions about (among other things) the possibility of an alternative testing requirement, the adequacy of immunity from prior infection, and the relevance of differential risk environments based on employees' work and location. *See* Mot. at 18-21. Far from demonstrating irrationality, Plaintiffs' grab-bag of questions underscores why challenges to federal workplace decisions are governed by the CSRA, not the APA: Requiring federal agencies to compile an extensive administrative record addressing all of the kinds of considerations that Plaintiffs raise anytime the agencies enact or modify internal employment policies, set or revise employment terms or conditions, or take discrete personnel actions would seriously and needlessly impede the operations of the federal government—to the detriment of the public the government is supposed to serve.

In any event, contrary to Plaintiffs' claims, the federal employee vaccination requirement is well supported. The President, the Task Force, and federal agencies have explicitly relied on the CDC's determination that vaccination is the best way to slow the spread of COVID-19. *See* EO 14043 § 1; Task Force FAQs; *see also, e.g.*, DOC COVID-19 Workplace Safety Plan, Doc. 1-1, at 5.[12] It is reasonable for the President and agencies to rely on such expert evaluations of relevant scientific and medical data in setting public health protocols for the federal workforce in the midst of an ever-changing pandemic. And "[a] reviewing court must be most deferential" in this context, where a "decision is based upon [an agency's] evaluation of complex scientific data within its technical expertise." *Sierra Club v. EPA*, 939 F.3d 649, 680 (5th Cir. 2019) (citation omitted); *Stewart v. Potts*, 996 F. Supp. 668, 678 n.8 (S.D. Tex. 1998) (APA does not permit a court to "evaluate [agency's] scientific methods").

Relatedly, Plaintiffs contend that the federal employee vaccination requirement runs afoul of the APA because it is "illogical, inconsistent, and contrived," Mot. at 21, essentially arguing that the federal government should have adopted more individualized personnel policies for its employees. But Plaintiffs' disagreement with the President's and federal agencies' assessment that the scientific data regarding vaccination and COVID-19 warranted a systematic approach would provide no basis for invalidating agency action under the APA. *See, e.g.*, *Huawei Tech. USA, Inc. v. FCC*, 2 F.4th 421, 451 (5th Cir. 2021) (an agency may "weigh[] the evidence differently than [a commenter] and reach[] contrary but reasonable policy

---

[12] CDC public health experts—after conducting an extensive review and issuing a comprehensive brief on the issue—continue to recommend vaccination for individuals who have recovered from a SARS-CoV-2 infection. *See* CDC, *Science Brief: SARS-CoV-2 Infection-induced and Vaccine-induced Immunity* (updated Oct. 29, 2021), https://perma.cc/DSL8-YBLH.

conclusions"); *California v. Azar*, 950 F.3d 1067, 1096 (9th Cir. 2020). Likewise, given the meaningful differences between public and private employees (including the federal government's employment relationship with the former and the different statutory and constitutional authorities involved), there is no "internal inconsistency" in the federal government subjecting its own employees to a higher standard of conduct than that applicable to regulated parties. *See Engquist*, 553 U.S. at 599 ("[G]overnment has significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large."). And an employee's reliance on the prior absence of a vaccination requirement is similarly irrelevant to the President's decision: EO 14043 simply imposes a new condition of federal employment and does not constitute a reversal of any "prior policy" position. *Cf. FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514 (2009).

Plaintiffs ultimately resort to rhetoric, contending that the federal employee vaccination requirement was adopted with a "false explanation" and "contrived premise" in order to implement a nationwide vaccine mandate. Mot. at 23-24. These assertions are inconsistent with the President's determination in EO 14043 that a vaccination requirement for federal employees would support the health and safety of the federal workforce and the efficiency of the civil service—a judgment well supported by scientific assessments and the government's recent experience during the pandemic. It is also incompatible with the "presumption of regularity [that] attaches to the actions of Government agencies." *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001). And even if there were any basis for Plaintiffs' assertions, a court may not "set aside an agency's policymaking decision solely because it might have been influenced

24

by political considerations or prompted by an Administration's priorities." *Dep't of Comm. v. New York*, 139 S. Ct. 2551, 2573 (2019).

In short, Plaintiffs' APA claim is unlikely to succeed, and the Court should reject Plaintiffs' invitation to second-guess the President's considered determination about how best to manage the Executive Branch.

### B.    EO 14043 Is Not Ultra Vires.

Having failed to satisfy the APA's requirements, Plaintiffs attempt to "institute a non-statutory review action" against EO 14043.  *See* Mot. at 10-11.  But the narrow doctrine upon which they rely is inapplicable, and in any event, EO 14043 is a lawful exercise of the President's constitutional and statutory authority to regulate the federal workforce.

### i.    Plaintiffs Cannot Invoke Non-Statutory Review.

While courts have recognized an equitable cause of action to enjoin *ultra vires* official conduct in certain circumstances, this is a "doctrine[] of last resort" that is "intended to be of extremely limited scope."  *Terveer v. Billington*, 34 F. Supp. 3d 100, 123 (D.D.C. 2014) (quoting *Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988)).  The "modern cases make clear" that an officer may be said to act *ultra vires* "only when he acts 'without any authority whatever.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 n.11 (1984) (citation omitted); *see also Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949) (suit must allege that official is "not doing the business which the sovereign has empowered him to do," not just that the official acted illegally).  EO 14043 is an exercise of the President's well-established constitutional and statutory authority (as described below) to set the terms and conditions of federal employment.  Because the "business" of the "sovereign" certainly encompasses issuing

that kind of directive, this is not the rare case in which a non-statutory cause of action is available to enjoin *ultra vires* conduct.[13]

### ii.    EO 14043 Is A Valid Exercise of the President's Authority.

At the outset, Plaintiffs' assumption that the President required explicit congressional authorization to set the terms of employment in the Executive Branch is wrong.  The President is the head of the Executive Branch, and "[u]nder our Constitution, the 'executive power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020) (quoting U.S. Const. art. II, § 1, cl. 1 & § 3).  And "if any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492 (2010) (quoting 1 Annals of Cong. 463 (1789)).  Thus, as another court explained in rejecting a challenge to EO 14043, "[t]he President derives his authority to regulate the federal workforce from the Constitution, not from Congress's enactments." *Rydie*, 2021 WL 5416545, at *3.  And while Congress "can limit the scope of the President's discretion in this arena, it *endorsed* his action here," *id.* (emphasis added), with at least three affirmative grants of authority to regulate federal employment.  *See* 5 U.S.C. §§ 3301;

---

[13] Plaintiffs rely on *Chamber of Commerce of the United States v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996), but that case involved the "anomalous situation" in which (1) there was no other avenue for judicial review; and (2) the challenged executive order was in "palpable violation of" another statute (the National Labor Relations Act). *Id.* at 1326-27, 1330.  Here, by contrast, Plaintiffs could obtain review of any final agency action applying the federal employee vaccination mandate to them through well-established statutory channels (primarily, the CSRA), and EO 14043 is not a "palpable violation" of any other statute (and Plaintiffs do not contend otherwise). *Id.*

3302; 7301; *see also Clarry v. United States*, 85 F.3d 1041, 1047 (2d Cir. 1996) ("The President has broad authority pursuant to 5 U.S.C. §§ 3301 and 7301 to regulate employment matters").

Plaintiffs' passing textual arguments to the contrary are meritless. EO 14043 does not regulate "status," *id.*, but the act of becoming vaccinated. That is plainly "conduct" within the meaning of 5 U.S.C. § 7301, similar to the well-established Reagan-era requirement that federal employees abstain from the use of illegal drugs, both on and off duty. *See* Exec. Order No. 12564, 51 Fed. Reg. 32,889 (Sept. 15, 1986) (relying on the same statutory sources of authorization as EO 14043). And there is no basis for this Court to second-guess the President's finding that requiring federal civilian employees to be vaccinated would serve the "efficiency" of the civil service, within the meaning of 5 U.S.C. § 3301. *See* EO 14043 § 1; *Rydie*, 2021 WL 5416545, at *5 (EO 14043 serves "[t]he effective administration of the federal government"); *Oklahoma*, 2021 WL 6126230, at *10 (finding EO 14043 to be a "permissible exercise of executive authority").[14] In light of "the obvious intent of Congress to confer broad discretion upon the President," this Court must "restrict [itself] to the limited scope of judicial review which follows." *Am. Fed. of Gov't Emps. v. Hoffman*, 543 F.2d 930, 938 (D.C. Cir. 1976).

###### iii.     Plaintiffs' Extra-Textual Interpretive Doctrines Are Inapplicable.

Plaintiffs' primary argument that EO 14043 exceeds the President's authority relies on neither the Constitution nor any of the relevant civil service statutes. Rather, Plaintiffs

---

[14] Plaintiffs' suggestion that these statutes do not encompass the authority to impose "new requirements" or conditions that apply to "current" employees, Mot. at 12, is similarly meritless. 5 U.S.C. § 3302 authorizes "rules governing the competitive service"; 5 U.S.C. § 7301 authorizes "regulations for the conduct of employees in the executive branch"; and there is no warrant for this Court to read into these statutes language that is not there. *See, e.g.*, *Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 518 (5th Cir. 2004).

contend that EO 14043 involves a "massive assertion of Executive power . . . unclaimed in the Nation's history," Mot. at 12-13, and that consequently the Court should apply various interpretive doctrines to override the clear constitutional and statutory authorization for EO 14043. Plaintiffs' argument misconstrues EO 14043—which merely imposes another in a long line of conditions that federal employees must meet to retain their federal employment—and ignores that the federal "Government has a much freer hand in dealing 'with citizen employees than it does when it brings its sovereign power to bear on citizens at large.'" *NASA v. Nelson*, 562 U.S. 134, 148 (2011) (quoting *Engquist*, 553 U.S. at 598). None of the "key interpretive doctrines," Mot. at 11, that Plaintiffs invoke has any application to EO 14043.

*First*, Plaintiffs' reliance on the "major questions doctrine" is misplaced. The cases Plaintiffs reference stand only for the proposition that the deference agencies receive under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), is inappropriate where an agency regulates on questions of major public significance. *See King v. Burwell*, 576 U.S. 473, 485-86 (2015). This "seldom-used" doctrine is "hardly a model of clarity, and its precise contours . . . remain undefined." *In re MCP No. 165*, 2021 WL 5989357, at *7. Whatever those contours, the doctrine is plainly inapplicable here: EO 14043 is presidential— not agency—authority; the government is not seeking *Chevron* deference; the government is not seeking to regulate private citizens; and the constitutional and statutory provisions speak in unmistakable terms.

Most fundamentally, the terms of employment that the government sets for its own workforce do not have "vast economic and political significance"; the government is not seeking to ban evictions across the United States, *see Ala. Ass'n of Realtors v. Dep't of Health &*

*Human Servs.*, 141 S. Ct. 2485 (2021), or to regulate billions of dollars of carbon emissions, *Utility Air Reg. Grp. v. EPA*, 573 U.S. 302 (2014).  Rather, in EO 14043, the government is merely seeking to manage its *own* operations.  Nor does the "unprecedented politicization" surrounding COVID-19 provide a basis to limit the President's existing authority, especially since "mandatory vaccinations for the public at large have long been held valid," and so "there was no reason for Congress to be more specific" in confirming the President's authority to require vaccination as a term of federal employment.  *Florida v. Dep't of Health & Human Servs.*, 19 F.4th 1271, 1288 (11th Cir. 2021).  EO 14043 is a purely internal employment policy that does not regulate private parties, and no "major questions" are presented.  *See Oklahoma*, 2021 WL 6126230, at *10 (rejecting invocation of major questions doctrine in challenge to EO 14043).

*Second*, Plaintiffs contend that "clear authorization from Congress" is required for "an agency to undertake" any action that "intrudes into an area that is the particular domain of state law."  Mot. at 13 (quoting *BST*, 17 F. 4th at 617).  But the President's regulation of the federal workforce is not a subject that is "within the States' police power."  *Id.* (quoting *BST*, 17 F. 4th at 617).  As discussed above, the President's authority to set the terms and conditions of federal employment is "clearly conferred in the Constitution," and "endorsed" by several congressional enactments.  *Rydie*, 2021 WL 5416545, at *3.  Simply put, "[t]he federal government's exercise of its enumerated powers does not infringe on powers reserved to the states under the Tenth Amendment," *id.* (citing *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 291-92 (1981); U.S. Const. art. VI, cl. 2), so EO 14043's imposition of an additional condition on federal employment does not "significantly alter the balance between

29

federal and state power," Mot. at 14 (citation omitted); *see Florida*, 19 F.4th at 1291-92 (rejecting challenge to federal vaccination requirement because "it is black-letter law that the federal government does not 'invade[]' areas of state sovereignty simply . . . because it exercises its authority in a manner that 'displaces the States' exercise of their police powers' (citation omitted)); *In re MCP No. 165*, 2021 WL 5989357, at *17 ("[T]hat states may regulate COVID-19 safety measures does not operate to preclude the federal government from doing so.").

*Third*, this case obviously does not involve "an administrative interpretation of a statute [that] invokes the outer limits of Congress' power." Mot. at 14 (citation omitted). As discussed above, EO 14043 is an exercise of the President's well-established constitutional authority, ratified by Congress, to set the terms of federal employment—not an "administrative interpretation." Whatever the outer limits of the President's broad authority to regulate federal employment matters, this case presents no occasion to explore them. *See Florida*, 19 F.4th at 1288 ("By its very nature, a broad grant of authority . . . which plainly encompasses [challenged administrative action] . . . does not require an indication that specific activities are permitted.").

### iv.    Plaintiffs' Reliance on the Nondelegation Doctrine Fails.

To support their ultra vires claim, Plaintiffs alternatively invoke the nondelegation doctrine as a canon of statutory interpretation. *See* Mot. at 15–16. "In a delegation challenge, the constitutional question is whether the statute has delegated legislative power to the agency." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001). Yet the President has inherent authority under Article II to set internal employment policy for the Executive Branch, and the statutes that Plaintiffs invoke do not delegate the President authority that would otherwise belong exclusively to Congress. *See Serv. Emps. Int'l Union Loc. 200 United v. Trump*,

419 F. Supp. 3d 612, 620–21 (W.D.N.Y. 2019) (executive order was "not an impermissible exercise of legislative power, but a function of the President's role as head of the executive branch and his associated broad statutory authority to regulate executive branch employment policies"), *aff'd*, 975 F.3d 150 (2d Cir. 2020); *see also Gundy v. United States*, 139 S. Ct. 2116, 2137, 204 L. Ed. 2d 522 (2019) (Gorsuch, J., dissenting) ("when a congressional statute confers wide discretion to the executive, no separation-of-powers problem may arise if the discretion is to be exercised over matters already within the scope of executive power" (internal quotation marks omitted)).

Even if this case involved a delegation of legislative power, the claim would still fail. Congress may lawfully delegate decision-making authority so long as it "clearly delineates [1] the general policy, [2] the public agency which is to apply it, and [3] the boundaries of this delegated authority." *Mistretta v. United States*, 488 U.S. 361, 372-73 (1989) (citation omitted). This standard is so deferential that the Supreme Court has "almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law." *Whitman*, 531 U.S. at 474–75 (quoting *Mistretta*, 488 U.S at 416 (Scalia, J., dissenting)); *see also Gundy*, 139 S. Ct. at 2129 ("Only twice in this country's history . . . ha[s] [the Court] found a delegation excessive—in each case because 'Congress had failed to articulate *any* policy or standard' to confine discretion." (quoting *Mistretta*, 488 U.S. at 373 n.7). Indeed, "some amount of delegation is unavoidable," *United States v. Whaley*, 577 F.3d 254, 263 (5th Cir. 2009), and the Supreme Court has "over and over upheld even very broad delegations," *Gundy*, 139 S. Ct. at 2129 (collecting examples). The statutes relied upon here are narrow in scope—dealing with the President's authority to set employment policy for

31

the executive branch—and make clear that regulations must be tied to factors such as "the efficiency of [the] service," 5 U.S.C. § 3301(1), and "good administration," *id.* § 3302. Plaintiffs' invocation of the nondelegation doctrine fails.

## IV.   Plaintiffs' Challenge to EO 14042 Is Unlikely To Succeed On The Merits.[15]

### A.   The President's Powers Under The FPASA Are Well-Settled.

Under well-settled judicial precedent interpreting the scope of the President's power under the Federal Property and Administrative Service Act ("FPASA"), EO 14042 is lawful. "'When the President acts pursuant to an express or implied authorization of Congress, his authority is at its maximum.'" *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. Kahn*, 618 F.2d 784, 787 n.13 (D.C. Cir. 1979) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635–36 (1952) (Jackson, J., concurring)).  Congress expressly authorized the President to prescribe federal procurement policies so long as those policies are "consistent" with U.S.C. Title 40, Subtitle I.  So presidential procurement policies are authorized if they "reasonably relate[] to [the FPASA's] purpose of ensuring efficiency and economy in government procurement" as described in 40 U.S.C. § 101.  *Liberty Mut. Ins. Co. v. Friedman*, 639 F.2d 164, 170 (4th Cir. 1981); *accord UAW-Lab. Empl. & Training Corp. v. Chao*, 325 F.3d 360, (D.C. Cir. 2003); *Farkas v. Tex. Instrument, Inc.*, 375 F.2d 629, 632 n.1 (5th Cir. 1967).

Since the 1960s, federal appellate courts have routinely held that the FPASA authorizes the President to manage government contracting through executive orders.  *See, e.g.*, *Farkas*, 375 F.2d at 632; *Farmer v. Phila. Elec. Co.*, 329 F.2d 3, 7 (3d Cir. 1964); *City of Albuquerque v.*

---

[15] As noted above, the Court has indicated that it plans to stay consideration of the challenge to EO 14042.  Defendants respectfully reserve their rights to provide a more robust response to Plaintiffs' arguments against EO 14042 should the need arise.

*U.S. Dep't of Interior*, 379 F.3d 901 (10th Cir. 2004) (urban renewal); *Chao, 325 F.3d at 366* (posting labor rights); *see also AFGE v. Carmen*, 669 F.2d 815 (D.C. Cir. 1981) (conservation of gasoline during an oil crisis); *Chamber of Com. of U.S. v. Napolitano*, 648 F. Supp. 2d 726, 729 (D. Md. 2009) (e-Verify requirements). Indeed, even cases relied on by Plaintiffs confirm that the FPASA "does vest broad discretion in the President." *Reich*, 74 F.3d at 1330, 1333 (affirming the "President's authority to pursue 'efficient and economic' procurement" through EOs, but holding the challenged order conflicted with another statute).

The President's authority to direct government procurement is consistent with the Congressional grant of authority in the FPASA, so long as those policies are "reasonably related to the [FPASA's] purpose of ensuring efficiency and economy in government procurement." *Liberty Mut. Ins. Co.*, 639 F.2d at 170. Courts have "emphasized the necessary flexibility and 'broad-ranging authority'" that FPASA provides. *Chao*, 325 F.3d at 366 (quoting *Khan*, 618 F.2d at 789). The standard is "lenient" and can be satisfied even when "the order might in fact increase procurement costs" in the short run. *Id.* at 366–67. "[T]his close nexus requirement [] mean[s] little more than that President's explanation for how an Executive Order promotes efficiency and economy must be reasonable and rational." *Napolitano*, 648 F. Supp. 2d at 738 (one sentence explanation sufficient); *see also Reich*, 74 F.3d at 1333 ("The President's authority to pursue 'efficient and economic' procurement . . . certainly reach[es] beyond any narrow concept of efficiency and economy in procurement.") (collecting examples).

As the District Court in the Eastern District of Washington recently held: "Executive Order 14042 easily satisfies the nexus requirement. The express language of the Order states

33

that it promotes federal government economy and efficiency by ensuring federal contractors implement adequate COVID-19 safeguards to protect their workers, which helps reduce the spread of COVID-19, thereby decreasing worker absences, reducing labor costs, and improving work efficiency at federal contractor worksites." *Donovan*, 2021 WL 5979250 at *6.[16]

### B.    The APA Does Not Apply to the President or the OMB Determination.

Neither EO 14042 nor the OMB Determination are subject to the APA because neither is an "agency action."  "Because the President is not an 'agency' for purposes of the APA, presidential action is not subject to judicial review under that statute." *Nat. Res. Def. Council v. Dep't of State*, 658 F. Supp. 2d 105, 109 (D.D.C. 2009) (citing *Franklin v. Massachusetts*, 505 U.S. 788, 800–01 (1992); *Dalton v. Specter,* 511 U.S. 462, 470 (1994)).  The President delegated to the OMB Director, pursuant to 3 U.S.C. § 301, the authority to determine whether the Task Force Guidance "will promote economy and efficiency in Federal contracting."  *See* EO 14042, § 2(c).  Section 301 authorizes the President "to designate and empower the head of any department or agency in the executive branch, . . . to perform without approval, ratification, or other action by the President [] any function which is vested in the President by law," including the President's power to direct government contracting pursuant to 40 U.S.C. § 121(a).  When exercising delegated authority, the official "stands in the President's shoes" and "cannot be subject to judicial review under the APA."  *NRDC*, 658 F. Supp. 2d at 109 &

---

[16] This Court should follow the reasoning of *Donovan* given the "lenient standard by which courts judge the nexus requirement."  *Donovan*, 2021 WL 5979250, at *6.  The other district courts that have found EO 14042 likely exceeds the President's statutory authority failed to appropriately assess EO 14042's nexus under this deferential standard.

n.5, 111; *see also Detroit Int'l Bridge Co. v. Gov't of Canada*, 189 F. Supp. 3d 85, 100 (D.D.C. 2016), *aff'd*, 875 F.3d 1132 (D.C. Cir. 2017) and *aff'd*, 883 F.3d 895 (D.C. Cir. 2018).

Even if the OMB Determination were subject to the APA, Plaintiffs are wrong to argue that the President and OMB Director have acted "contrary to law" because only the Federal Acquisition Regulatory Council ("FAR Council") can issue government-wide procurement regulations. Mot. at 24–25. Plaintiffs cite nothing to show that the FAR Council's authority to issue regulations means that it is the only entity that can direct government-wide procurement or set government-wide procurement policy. Although 41 U.S.C. § 1303 gives the FAR Council authority to "issue and maintain" the Federal Acquisition Regulation ("FAR"), it does not displace the President's authority to "prescribe [procurement] policies and directives" under 40 U.S.C. § 121(a), authority that extends both to contracts subject to the FAR and to those contracts that are not. Section 2(a) of EO 14042 is a directive under the President's authority to agencies, to the extent permitted by law, to include a clause in all contracts that fall within the categories set forth in Section 5(a), whether subject to the FAR or not. Meanwhile, Section 3(a) of EO 14042 is a directive under the President's authority to the FAR Council to incorporate the clause into the FAR in the long run and to help agencies incorporate it into agency-specific regulations in the short run, underscoring the FAR Council's role to issue and maintain the FAR. *See* FAR Case No. 2021-021, https://perma.cc/W5WG-URJV.

Moreover, even if the OMB Determination were subject to the APA, the arbitrary-and-capricious claims would also fail because the OMB Determination provides "a rational connection between the facts found and the choice made." *Dickson v. Sec'y of Def.*, 68 F.3d

35

1396, 1404–05 (D.C. Cir. 1995) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)); *see also supra* Part III.A.ii. (discussing APA standard of review).

The OMB Determination is eminently reasonable. OMB's Acting Director approved the revised Task Force Guidance because she concluded that "[t]he safety protocols that are set forth" in the guidance "are meant to ensure that COVID-19 does not easily spread within the workplace, so that Federal contractor employees can continue to be productive." 86 Fed. Reg. at 63423. The requirement promotes economy and efficiency in federal contracting because decreasing worker absences lowers costs. As OMB has explained, "[r]educing the number of infected people mechanically reduces transmission," and "evidence also indicates that vaccines also reduce transmission by people who contract 'breakthrough' infections." *Id.* at 63422. In conjunction with the other safety protocols described in the OMB Determination, the vaccination requirements will "prevent infection and illness and preserve the productivity" of federal contractors. *Id.* While Plaintiffs raise a number of complaints about the policy, it is well-settled law that the government need not "explore 'every alternative device and thought conceivable by the mind of man'" before making a decision. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915 (2020) (quoting *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council*, 435 U.S. 519, 551 (1978)); *see also State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 51 (declining to "require an agency to consider all policy alternatives in reaching [a] decision").

## V.      The Public Interest Weighs Against Injunctive Relief.

Where a plaintiff challenges a government policy, the third and fourth elements of the test for preliminary relief "merge" into a single consideration. *Texas v. United States*, 524 F.

Supp. 3d 598, 663 (S.D. Tex. 2021) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).  This factor tilts decisively in the government's favor.

     *First*, a preliminary injunction would harm the government's interest in handling employment disputes through the administrative procedures established by Congress.  As discussed more fully above, the CSRA creates comprehensive procedures for work-related controversies involving most federal civil servants. *See supra* Part I.A.  In *Garcia*, for example, a federal employee "discharged for violation of work rules" sought to preliminarily enjoin his discharge without first exhausting his administrative remedies.  680 F.2d at 30–31.  The Fifth Circuit found it "quite clear" that granting the requested injunction "would have a far more disruptive effect on the administrative processes established by the government to handle cases such as these than would, on balance, be the burden on the employee resulting from a refusal to grant the injunction." *Id.* at 32.  So too here.

     *Second*, enjoining EO 14043 would harm the public interest in slowing the spread of COVID-19 among millions of federal employees and the members of the public with whom they interact.  As the Supreme Court has recognized, "[s]temming the spread of COVID-19 is unquestionably a compelling interest." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020).  Accordingly, numerous courts reviewing "executive action designed to slow the spread of COVID-19" have concluded that "[t]he public interest in protecting human life— particularly in the face of a global and unpredictable pandemic—would not be served by" an injunction. *Tigges v. Northam*, 473 F. Supp. 3d 559, 573–74 (E.D. Va. 2020); *see also, e.g.*, *Rydie*, 2021 WL 5416545, at *5; *Altschuld*, 2021 WL 6113563, at *5; *Church*, 2021 WL 5179215, at *18–19; *Smith*, 2021 WL 5195688, at *9.

*Third*, "[t]he effective administration of the federal government, in which Defendants and the public have a deep and abiding interest, would likely be hampered by an injunction." *Rydie*, 2021 WL 5416545, at \*5.  The COVID-19 pandemic has interfered with numerous aspects of the government's work by, *e.g.*, forcing office closures, limiting official travel, and causing staffing shortages. *See generally* Pandemic Response Accountability Committee, Top Challenges Facing Federal Agencies (June 2020), https://perma.cc/B7KF-V4RW.  Thus, enjoining EO 14043 would likely interfere with the government's ability to resume normal, pre-pandemic operations.

This public interest heavily outweighs any harm Plaintiffs might experience.  Plaintiffs do not face an imminent prospect of removal, and some of the individual plaintiffs have requested exceptions to the vaccination requirement, which might be granted; and they will not face discipline as long as their requests are under consideration.  Moreover, Plaintiffs do not face irreparable harm because any covered federal employee may pursue remedies under the CSRA and, if applicable, the Back Pay Act.  Preliminary relief is consequently inappropriate in these circumstances.

## VI.   Any Relief Should Be Narrowly Tailored.

If the Court were to disagree with Defendants' arguments, any relief should be no broader than necessary and only extend to Plaintiffs with standing (and consequently, not extend to any Plaintiff with a pending exception request).  "A plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018), and "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765

(1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). Nationwide injunctions, in contrast, "take a toll on the federal court system—preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch." *Trump. v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring); *see also, e.g.*, *Holland v. Nat'l Mining Ass'n*, 309 F.3d 808, 815 (D.C. Cir. 2002) ("Allowing one circuit's statutory interpretation to foreclose . . . review of the question in another circuit would squelch the circuit disagreements that can lead to Supreme Court review."). As noted above, EO 14043 at issue here has been challenged in numerous other cases, underscoring why this Court should not attempt to decide its legality for all parties and for all time. *See supra* n.1.

## CONCLUSION

For the foregoing reasons, the court should deny Plaintiffs' preliminary injunction motion.

Dated: January 10, 2022                    Respectfully submitted,

                                           BRIT FEATHERSTON
                                           United States Attorney
                                           Eastern District of Texas

                                            /s/ *James G. Gillingham*
                                           JAMES G. GILLINGHAM
                                           Assistant United States Attorney
                                           Eastern District of Texas
                                           Acting Under Authority Conferred by 28 U.S.C. §
                                           515
                                           Attorney in Charge
                                           Texas Bar #24065295
                                           110 N. College Street; Suite 700
                                           Tyler, Texas 75702
                                           Telephone: (903) 510-9346

Facsimile: (903) 590-1436
James.Gillingham@usdoj.gov

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 10, 2022, a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) and served on all counsel of record.

/s/     *James G. Gillingham*
JAMES G. GILLINGHAM