**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | |
|---|---|
| FEDS FOR MEDICAL FREEDOM, et al., | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) No. 3:21-cv-356 |
| | ) |
| JOSEPH R. BIDEN, JR., et al., | ) |
| | ) |
| *Defendants*. | ) |

---

## NOTICE OF SUPPLEMENTAL AUTHORITIES

As the Court is likely aware, earlier today the Supreme Court issued decisions on stay applications regarding the OSHA vaccine mandate, which imposed an undifferentiated, *de facto* vaccine mandate on millions of employees in the country (Ex. A, attached); and regarding Health and Human Services' CMS mandate, which narrowly targeted vaccines for employees who work at *certain medical facilities* that present a uniquely compelling and clear target for vaccines (Ex. B, attached). The Court stayed the former but allowed the latter to go into effect.

Neither opinion directly references the Employee Mandate challenged here. But on *every* meaningful aspect on which the Court differentiated the OSHA and CMS mandates, the Employee Mandate tracks the now-stayed OSHA mandate and *not* the CMS mandate.

The OSHA mandate—like the Federal Employee Mandate—operated indiscriminately in the workplace, without a clear statutory basis, and lacked historical roots. But the CMS mandate—unlike the Employee Mandate—was allowed to take effect

because it is narrowly targeted to certain medical facilities (indeed, only certain workers *within* those facilities), had a clear statutory basis, tracks infectious-disease-prevention requirements that the agency had long mandated, and was supported by an extensive administrative record.

With the Court's indulgence, Plaintiffs have pulled the relevant quotes from each opinion and then compare them to the Federal Employee Mandate.

## STATUTORY AUTHORITY AND SCOPE OF MANDATE

***OSHA lacked clear statutory authority for a broad workplace mandate:*** The Court found that OSHA was trying to impose the square peg of a widespread health-and-safety measure into the round hole of a statute that spoke to occupational concerns. "Although COVID-19 is a risk that occurs in many workplaces, it is not an occupational hazard in most." OSHA Op. 6. "Permitting OSHA to regulate the hazards of daily life—simply because most Americans have jobs and face those same risks while on the clock—would significantly expand OSHA's regulatory authority without clear congressional authorization." *Id.* at 7. "OSHA's indiscriminate approach fails to account for this crucial distinction—between occupational risk and risk more generally—and accordingly the mandate takes on the character of a general public health measure." *Id.* The mandate is thus "untethered, in any causal sense, from the workplace." *Id.* at 8.

The Court further noted that the "exemptions [in the OSHA mandate] are largely illusory." *Id.* at 3. And vaccines were different in kind from prior workplace rules: "But a vaccine mandate is strikingly unlike the workplace regulations that OSHA has typically imposed. A vaccination, after all, 'cannot be undone at the end of the workday.'" *Id.* at 7.

***The CMS mandate had clear and express statutory authority to target medical facilities:*** By contrast, the CMS mandate was narrowly focused on the medical nature of the facilities at issue. The Court noted that "perhaps the most basic" "function" of HHS "is to ensure that the healthcare providers who care for Medicare and Medicaid patients protect their patients' health and safety," as confirmed by *express statutory power* for HHS to impose "'requirements as [the Secretary] finds necessary in the interest of the health and safety of individuals who are furnished services in the institution.'" CMS Op. 2 (quoting 42 U. S. C. §1395x(e)(9)). The CMS mandate even narrowly targeted certain employees *within* these facilities, as it "does not cover staff who telework full-time." *Id.* at 3.

In case there were any doubt about the narrow, medical-facility-focused nature of the ruling, the Court noted it expressly: "ensuring that providers take steps to avoid transmitting a dangerous virus to their patients is consistent with the fundamental principle of the medical profession: first, do no harm. It would be the 'very opposite of efficient and effective administration for a facility that is supposed to make people well to make them sick with COVID–19.'" *Id.* at 5. Given this plain statutory authority and narrow targeting, the Court allowed the CMS mandate to take effect.

***The Federal Employee Mandate tracks the OSHA mandate:*** The CMS mandate was based on a statute expressly authorizing health and safety measures for a targeted group of medical-focused facilities. But like the OSHA mandate, the Federal Employee Mandate lacks clear statutory authority for imposing requirements necessary to protect employees from the "hazards of daily life." At best, the President relies on the word "conduct" in 5 U.S.C. § 7301. But if OSHA—whose statutory mandate is to focus on

workplace harms—lacks the power to order vaccines as part of the workplace, it beggars belief the President nonetheless has that same power over the workplace through the guise of regulating "conduct," especially given the Court's concern that vaccines are simply *different in kind* than prior workplace requirements, a point that Plaintiffs made in this case by comparing prior Executive Orders limited to workplace harms, with the Employee Mandate, which imposes a permanent status. Further, mandating vaccines for so many employees without differentiation proves that the Employee Mandate is "untethered … from the workplace," OSHA Op. 8—just as in the OSHA mandate.

Given all this, the President cannot claim that mandating vaccines is "conduct" he can regulate as a "workplace" activity. OSHA tried that (with far more statutory authority than Defendants muster here)—and was just rejected. That alone is sufficient to find a lack of authority to issue the Employee Mandates.

But even if there were some ambiguity, the presumption is that whatever power Congress gave the President to regulate "conduct," it would not include mandating vaccines, as that "falls squarely within the States' police power," *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 617 (5th Cir. 2021), and thus would require a clear statement of authority despite the federal nexus, *Kentucky v. Biden*, ___ F.4th ___, 2022 WL 43178, at *16 (6th Cir. Jan. 5, 2022) (rejecting government's argument that the federalism clear-statement doctrine does not apply to federal contractor mandate).

## EVIDENCE OF HISTORICAL PRECEDENT

***OSHA had never previously issued anything like a vaccine mandate***. The Court also relied heavily on the fact that "OSHA has never before imposed such a mandate."

4

OSHA Op. 1. "It is telling that OSHA, in its half century of existence, has never before adopted a broad public health regulation of this kind—addressing a threat that is untethered, in any causal sense, from the workplace. This 'lack of historical precedent,' coupled with the breadth of authority that the Secretary now claims, is a 'telling indication' that the mandate extends beyond the agency's legitimate reach." *Id.* at 8.

**The CMS mandate followed a long history of infectious-disease measures at hospitals.** By contrast, HHS had "long included a requirement that certain providers maintain and enforce an 'infection prevention and control program designed . . . to help prevent the development and transmission of communicable diseases and infections.'" CMS Op. 2. "[H]ealthcare facilities that wish to participate in Medicare and Medicaid have always been obligated to satisfy a host of conditions that address the safe and effective provision of healthcare." *Id.* at 6. And again invoking the unique nature of medical facilities, the Court noted that "[v]accination requirements are a common feature of the provision of healthcare in America." *Id.* at 7.

**The Employee Mandate tracks the OSHA mandate.** There is no evidence that Defendants have ever required vaccines or anything even remotely akin for federal employees, nor is being vaccinated a common feature of federal employment. As in OSHA, this lack of precedent is a very strong indication of lack of power. In the CMS case, by contrast, the agency had long required infectious-disease-prevention tools. "The challenges posed by a global pandemic do not allow a federal agency to exercise power that Congress has not conferred upon it. At the same time, such unprecedented circumstances provide no grounds for limiting the exercise of authorities the agency has long been recognized to

have." *Id.* at 9. Because Defendants have not "long been recognized to have" the power to force their employees to undergo permanent medical procedures, the Employee Mandate tracks the now-stayed OSHA mandate.

## EXTENT OF ADMINISTRATIVE RECORD

Finally, as noteworthy for Plaintiffs' APA claims, the Court in the CMS case noted the extensive "rule-making record" supporting the CMS mandate. *Id.* at 8. Of course, there is no record (let alone an extensive one) for the Federal Employee Mandate, which provides no rationale or data whatsoever.

Respectfully submitted,

/s/ R. Trent McCotter
R. TRENT MCCOTTER (So. Dist. No. 3712529)
JONATHAN BERRY (*pro hac vice*)
MICHAEL BUSCHBACHER (*pro hac vice*)
JARED M. KELSON (*pro hac vice*)
BOYDEN GRAY & ASSOCIATES
801 17th St. NW, #350
Washington, DC 20006
(202) 706-5488
mccotter@boydengrayassociates.com

**CERTIFICATE OF SERVICE**

I certify that on January 13, 2022, a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) and served on all counsel of record.

/s/ R. Trent McCotter

R. Trent McCotter