IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| FEDS FOR MEDICAL FREEDOM, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> JOSEPH R. BIDEN, JR., in his official capacity, *et al.*, <br><br> Defendants. | Civil Action 3:21-cv-00356 |

**RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendants respectfully respond to Plaintiffs' Notice of Supplemental Authority, ECF No. 29 ("Notice"), which discusses *National Federation of Independent Business v. OSHA*, 595 U.S. ___ (2022) ("*NFIB*"), and *Biden v. Missouri*, 595 U.S. ___ (2022). To the extent that those decisions are relevant here, they confirm that Executive Order 14043 constitutes a legitimate exercise of the President's authority to oversee the Executive Branch workforce.

**I.    *NFIB* Does Not Limit The President's Authority To Oversee The Federal Workforce.**

*NFIB* addresses a statutory question irrelevant to the one at issue here: whether the Occupational Safety and Health Administration ("OSHA") has statutory authority to impose a masking, testing, and vaccination requirement on private businesses. It does not address whether the federal government may impose a vaccination requirement on its own workforce, just as numerous other employers across the country have chosen to do.

The Supreme Court uncontroversially observed in *NFIB* that "[a]dministrative agencies are creatures of statute," and "possess only the authority that Congress has provided." *NFIB*, slip. op. at 5. That is true, but the President of the United States is *not* a creature of statute; the Constitution itself vests him with executive power. U.S. Const. Art. II, sec. 1. Thus, as other courts have recognized, the President possesses independent constitutional authority to act as CEO of the Executive Branch, even absent confirming statutory authority from Congress. *See Rydie v. Biden*, No. 21-2696, 2021 WL 5416545, at *3 (D. Md. Nov. 19, 2021) ("The President derives his authority to regulate the federal workforce from the Constitution, not from Congress's enactments."), *appeal pending*, No. 21-2359 (4th Cir.); *Oklahoma v. Biden*, --- F. Supp. 3d ---, 2021 WL 6126230, at *10 (W.D. Okla. Dec. 28, 2021) ("executive order is a permissible exercise of executive authority . . . substantially for the reasons stated in *Rydie*"). Indeed, the reason that Congress sometimes *limits* the President's ability to hire or remove whomever he pleases, *see, e.g.*, 42 U.S.C. § 2000e-16 (Title VII protections for civil servants); 5 U.S.C. § 7513 (discipline "only for such cause as will promote the efficiency of the service"), is that absent such limits the President's Article II authority in this area would be untethered by statute. The appropriate question is therefore whether Congress has *prohibited* the Executive Branch from requiring its employees to be vaccinated, and even Plaintiffs do not suggest that Congress has done so.

Even if explicit congressional authorization were necessary, it exists here for the reasons Defendants have explained. *See* Defs.' Opp'n. to Mot. for Prelim. Inj. at 27 ("Opp'n Br."), ECF No. 21. Plaintiffs point to *NFIB*'s invocation of the so-called major questions doctrine, but it does not apply here. *NFIB* involved a mandate affecting 84 million private

2

sector employees. In Executive Order 14043, however, the government is not claiming "the power to regulate or license, as lawmaker," but rather "as proprietor, to manage [its] internal operation." *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 896 (1961). As the Supreme Court has repeatedly instructed lower courts, the government's role—as either regulator or proprietor—is a critical distinction. *See, e.g.*, *NASA v. Nelson*, 562 U.S. 134, 148 (2011) ("Time and again our cases have recognized that the Government has a much freer hand in dealing 'with citizen employees than it does when it brings its sovereign power to bear on citizens at large.'" (quoting *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 598 (2008))); *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 392-93 (2011) ("The government's interest in managing its internal affairs requires proper restraints on the invocation of rights by employees when the workplace or the government employer's responsibilities may be affected."). Indeed, this Court has already recognized that EO 14043 is supported by "more authority" than the "healthcare worker mandate" addressed in Part II below, because the latter applies to "nonfederal employees," Hr'g Tr. at 7:18-22—and that mandate has now been upheld by the Supreme Court in *Missouri*. Even putting aside that critical distinction, EO 14043 applies to far fewer employees than the OSHA rule. *See* Cong. Rsch. Serv., Federal Workforce Statistics Sources: OPM and OMB, https://crsreports.congress.gov/product/pdf/R/R43590/17 (approximately 2.1 million civilian workers).[1]

---

[1] Finally, Plaintiffs' halfhearted suggestion that Tenth Amendment principles are relevant here, *see* Notice at 4, may be rejected out of hand. Whatever police powers the states generally possess, the employment relationship between the federal government and its own workforce is an exclusively federal concern that states are powerless to regulate under the Supremacy Clause. *See Johnson v. Maryland*, 245 U.S. 51 (1920); *Sperry v. Florida ex rel. Florida Bar*, 373 U.S. 379, 385 (1963).

## II. The Lack Of A Perfect Historical Analogue Does Not Invalidate An Otherwise Lawful Exercise Of Executive Power.

Plaintiffs argue that because the President has never previously required vaccines for federal employees, he must lack the power to do so. *See* Notice at 4–6. That is wrong, and *NFIB* does not suggest otherwise. To the contrary, as explained above, *NFIB* is principally concerned with a specific statutory question not presented here.

The more relevant opinion on this question is *Missouri*, which shows that the federal government may exercise old powers in new ways when faced with new challenges. Like the Secretary of Health and Human Services, the President, in his capacity as an employer, "has never had to address an infection problem of this scale and scope before." *Missouri*, slip op. at 7. Thus, the fact that the federal employee vaccine mandate "goes further than what the [President] has done in the past to implement [workplace safety]" is not at all surprising—and it does not place the executive order outside the President's authority to regulate employee conduct. *Id.* If that were the case, the President could never respond to changing circumstances like the COVID-19 pandemic. *See generally* The Federalist No. 70, p. 425 (C. Rossiter ed. 1961) (A. Hamilton) (explaining that "vigor[ous] and expedit[ous]" decisionmaking is the "most necessary ingredient[]" of the Executive's power). Consequently, *NFIB* does not decide the case; this Court, if it reaches the merits, is free to resolve independently whether EO 14043 falls within the President's constitutional and statutory authority.

In any event, EO 14043 is not as unprecedented as Plaintiffs would have the Court believe. Before 1986, no President had sought to impose a drug-testing mandate on federal employees: It took "a new epidemic" of drug abuse to spur President Reagan's exercise of

4

executive power in response to a nationwide health crisis. *See* Address to the Nation on the Campaign Against Drug Abuse (Sept. 14, 1986), https://perma.cc/5RFU-6XS6. Recognizing that the federal government was concerned with both "the well-being of its employees" and "the successful accomplishment of agency missions," President Reagan invoked constitutional and statutory authorities similar to those at issue here and issued Executive Order 12564, which banned the use of illegal drugs by federal employees *on or off duty* and required employing agencies to implement robust drug-testing programs. 51 Fed. Reg. 32,889 (Sept. 15, 1986). That executive order was not rendered unlawful by its novelty, and neither is this one.

### III. Executive Order 14043 Is Not Subject To APA Review And Requires No Rulemaking Record.

In *Missouri*, the Supreme Court held that, "given the rule-making record," the interim final rule was not arbitrary and capricious under the Administrative Procedure Act (APA). *Missouri*, slip op. at 6. Plaintiffs contend that because there is no similar record here, the agencies' vaccine requirements must be arbitrary and capricious. Notice at 6. But the agencies' vaccine requirements are not final rules subject to the APA, nor is the executive order itself. *See* Opp. Br. 20–21; *see also Rodden*, 2021 WL 5545234, at *3 (relevant "final agency action" is an employing agency's ultimate decision as to whether an individual employee "receives an exemption, whether and what additional remedial measures and procedures should be taken, and whether and how [that employee] should be disciplined). In any event, the vaccination requirement is amply supported by CDC's determination, adopted by the President, that vaccination is the best way to fight COVID-19. *See* Opp. Br. at 23. Nothing in *Missouri* suggests otherwise.

**IV.     The Court Lacks Jurisdiction Under The CSRA.**

Finally, Plaintiffs ignore the most salient difference between this case and *NFIB*, which is that the Civil Service Reform Act divests this Court of jurisdiction by creating "the comprehensive and exclusive procedures for settling work-related controversies between federal civil-service employees and the federal government." *Rollins v. Marsh*, 937 F.2d 134, 139 (5th Cir. 1991) (emphasis added). Plaintiffs' reliance on 1980s-era cases to contend that these principles do not apply to programmatic challenges to generally applicable policies, *see* Pls.' Reply, ECF No. 23 at 1-4, is unambiguously foreclosed by modern Supreme Court precedent. *See Elgin v. Dep't of Treasury*, 567 U.S. 1, 7-8 (2012) (CSRA precluded district court action seeking not only "reinstatement to their former positions, backpay, benefits, and attorneys' fees," but also "a declaratory judgment that the challenged statutes are unconstitutional"). Writing for the Court, Justice Thomas rejected the federal employee's contention that he "could challenge the constitutionality of the statute authorizing an agency's action in district court, but the MSPB would remain the exclusive forum for other types of challenges to the agency's decision." *Id.* at 14. That is the exact same contention that Plaintiffs advance here, and this Court is bound by the Supreme Court's rejection of it in *Elgin*.

Dated: January 18, 2022                             Respectfully submitted,

                                                                BRIT FEATHERSTON
                                                                United States Attorney
                                                                Eastern District of Texas

                                                                /s/ *James G. Gillingham*
                                                               JAMES G. GILLINGHAM
                                                               Assistant United States Attorney
                                                               Eastern District of Texas
                                                               Acting Under Authority Conferred by 28 U.S.C. §

6

515
Attorney in Charge
Texas Bar #24065295
110 N. College Street; Suite 700
Tyler, Texas 75702
Telephone: (903) 510-9346
Facsimile: (903) 590-1436
James.Gillingham@usdoj.gov

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

  I certify that on January 18, 2022, a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) and served on all counsel of record.

         */s/ James G. Gillingham*
         JAMES G. GILLINGHAM