# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | |
|---|---|
| FEDS FOR MEDICAL FREEDOM, et al., | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) No. 3:21-cv-356 |
| | ) |
| JOSEPH R. BIDEN, JR., et al., | ) |
| | ) |
| *Defendants*. | ) |

**PLAINTIFFS' OPPOSED MOTION TO LIFT STAY, GRANT SUMMARY JUDGMENT AND DECLARATORY RELIEF IN PART, AND ISSUE PERMANENT INJUNCTIVE RELIEF**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

BACKGROUND .............................................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.    The Court Should Lift Its Stay ........................................................................................2

    II.   The Court Should Grant Summary Judgment and Issue Declaratory Relief on Counts 1 and 2; Issue Permanent Injunctions on Counts 1 and 2; and Dismiss Counts 3 Through 6 Without Prejudice. .................................................3

        A.  Summary Judgment ...............................................................................................3

        B.  Permanent Injunctive Relief ..................................................................................7

        C.  Dismissing Counts 3 Through 6 Without Prejudice ............................................10

    III.  Defendants' Voluntary Cessation Does Not Moot This Case ......................................10

CONCLUSION ..............................................................................................................................13

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Alpha Chi Omega*,
 708 F.3d 614 (5th Cir. 2013) ................................................................................................... 8

*Feds for Med. Freedom v. Biden*,
 581 F. Supp. 3d 826 (S.D. Tex. 2022) ............................................... 1, 4, 5, 6, 7, 9, 13

*Feds for Med. Freedom v. Biden*,
 63 F.4th 366 (5th Cir. 2023) ........................................................................................ 2, 3, 8

*FTC v. Bunte Brothers, Inc.*,
 312 U.S. 349 (1941) ................................................................................................................ 7

*Kentucky v. Biden*,
 23 F.4th 585 (6th Cir. 2022) ................................................................................................. 7

*Louisiana v. Biden*,
 55 F.4th 1017 (5th Cir. 2022) ................................................................................ 2, 3, 4, 5, 8

*Robinson v. California*,
 370 U.S. 660 (1962) ................................................................................................................ 6

*Warth v. Seldin*,
 422 U.S. 490 (1975) ................................................................................................................ 8

*West Virginia v. EPA*,
 142 S. Ct. 2587 (2022) .................................................................................................. 10, 11

*Williams v. Seidenbach*,
 958 F.3d 341 (5th Cir. 2020) ............................................................................................. 10

*Yates v. United States*,
 574 U.S. 528 (2015) ................................................................................................................ 6

**Statutes**

5 U.S.C. § 3301 ............................................................................................................................. 5

5 U.S.C. § 3302 ............................................................................................................................. 5

5 U.S.C. § 7301 ................................................................................................................. 4, 5, 6, 7

**Other Authorities**

Fed. R. Civ. P. 65(d)(2) ................................................................................................ 9, 10

American Heritage Dictionary of the English Language (1969) ........................................ 6

*Austria Reimposes Full Covid Lockdown, Makes Vaccination Compulsory*,
    REUTERS, Nov. 19, 2021 ............................................................................................ 12

CDC, *COVID Data Tracker: Daily and Total Trends*,
    https://covid.cdc.gov/covid-data-
    tracker/#trends_weeklydeaths_select_00 ...................................................................... 11

Tyler Clifford, *Philadelphia to Reimpose Indoor Mask Mandate in Public
    Spaces*, REUTERS, Apr. 11, 2022 ................................................................................ 12

*Educators*, KCRG, Aug. 26, 2021,
    https://www.kcrg.com/2021/08/26/illinois-governor-reinstates-indoor-
    mask-mandate-announces-vaccine-requirement-educators/; ........................................ 12

Christine Mai-Duc, *Los Angeles Halts Plans to Reimpose Mask Mandate as
    COVID-19 Cases Decline*, WALL ST. J., July 28, 2022 ................................................ 12

Alexandra E. Petri, *Some Universities and Schools in the U.S. Are
    Reimposing Indoor Mask Mandates*, N.Y. TIMES, May 25, 2022 ............................... 12

Webster's American Dictionary of the English Language (1838) ...................................... 6

Nathaniel Weixel, *DC to Reimpose Indoor Mask Mandate After COVID
    Infections Rise*, THE HILL, Dec. 20, 2021,
    https://thehill.com/homenews/state-watch/586588-dc-to-reimpose-
    indoor-mask-mandate-after-covid-infections-rise/ ...................................................... 12

The Fifth Circuit's mandate in this case is scheduled to issue on May 15. Once it does, this Court should: *first*, lift its stay in this case; *second*, grant summary judgment for Plaintiffs on Counts 1 and 2, along with declaratory relief on those Counts, pursuant to Count 7; *third*, dismiss Counts 3 through 6 without prejudice; and *fourth*, issue permanent injunctions against enforcement of the vaccine mandates previously imposed under Executive Orders 14,042 and 14,043. This relief is dictated by binding Fifth Circuit precedent agreeing with lower court decisions holding that both Executive Orders are unlawful and impose irreparable harm. Defendants oppose this requested relief.

## BACKGROUND

On December 21, 2021, Plaintiffs filed a Complaint seeking injunctive and declaratory relief in the above-captioned matter, challenging the vaccine mandate in Executive Order 14,042 for federal contractors and the vaccine mandate in Executive Order 14,043 for federal employees. ECF No. 1. Counts 1 and 2 argued that those Executive Orders are ultra vires and illegal. Counts 3 through 6 raised Administrative Procedure Act and nondelegation claims. Count 7 asked for declaratory relief. *See id*.

On January 21, 2022, this Court issued a preliminary injunction against enforcement of Executive Order 14,043 but stayed any decision on Executive Order 14,042, which was by then already the subject of a nationwide injunction. *See Feds for Med. Freedom v. Biden*, 581 F. Supp. 3d 826 (S.D. Tex. 2022). On February 21, 2022, the Court stayed this case at the parties' request, pending appeal. ECF No. 45.

The *en banc* Fifth Circuit subsequently issued an opinion affirming this Court's preliminary injunction, holding that Plaintiffs' claims are not precluded by the Civil Service Reform Act and that this Court had not abused its discretion in concluding that Plaintiffs were likely to succeed on the merits of their ultra vires claim against Executive Order 14,043, that Plaintiffs had demonstrated irreparable harm, and that the injunction should extend nationwide. *See Feds for Med. Freedom v. Biden*, 63 F.4th 366 (5th Cir. 2023) (*en banc*). In a separate suit, the Fifth Circuit also affirmed a preliminary injunction against enforcement of Executive Order 14,042, finding it likewise ultra vires and illegal. *See Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022).

President Biden has since announced that Executive Orders 14,042 and 14,043 would be withdrawn effective at the end of May 11, 2023. The announcements do not disclaim the power to reissue the mandates, nor even acknowledge that courts have found them unlawful. *See* Exs.1–2.

## ARGUMENT

**I.     The Court Should Lift Its Stay.**

Because the Fifth Circuit has completed its review of the preliminary injunctions against Executive Orders 14,042 and 14,043, Plaintiffs request that this Court lift the stay previously entered in this action.

**II.   The Court Should Grant Summary Judgment and Issue Declaratory Relief on Counts 1 and 2; Issue Permanent Injunctions on Counts 1 and 2; and Dismiss Counts 3 Through 6 Without Prejudice.**

**A.   Summary Judgment**

Because the Fifth Circuit has now held that both of the challenged Executive Orders are unlawful, Plaintiffs move for summary judgment in their favor against Defendants on Count 1 (ultra vires claim for Executive Order 14,043) and Count 2 (ultra vires claim for Executive Order 14,042), and also declaratory relief on those Counts, pursuant to Count 7. These are pure matters of law.

The Fifth Circuit decisions agreed with lower court opinions concluding the employee and contractor mandates are both unlawful, and those decisions now bind this Court and dictate that summary judgment be entered in Plaintiffs' favor on Counts 1 and 2. Regarding the employee mandate, the Fifth Circuit held that "we substantially agree" with "the district court's reasoning" on the merits finding Executive Order 14,043 is unlawful. *Feds for Med. Freedom*, 63 F.4th at 387. And regarding the contractor mandate, the Fifth Circuit unequivocally held that "Executive Order 14042 is unlawful." *Louisiana*, 55 F.4th at 1033. That settles the matter.

Even if the Fifth Circuit's *en banc* decision in *Feds for Medical Freedom* had pretermitted any discussion of the lawfulness of Executive Order 14,043, summary judgment would still be required on Count 1 here because *Louisiana*'s binding rationale concerning Executive Order 14,042 confirms that Executive Order 14,043 is also illegal.

*Louisiana* held that "questions surrounding the vaccine and pandemic generally are undoubtedly of 'vast economic and political significance,'" *id.* at 1033, which applies

3

equally to the federal *employee* vaccine mandate, especially given the government's assertion of breathtaking power over the private lives of "*any and all* [federal] employees – *full-time or part-time* – … at any location," *id.* at 1032. *Louisiana* also rejected the argument, raised by the government here, that the major-questions doctrine is inapplicable to delegations directly to the President. *Id.* at 1031 n.40. The government would therefore require clear statutory authority to support the employee mandate, but there is no such clarity here.

*Louisiana* further held that "more than their conduct," such vaccine mandates "purport[] to govern [employees'] individual healthcare decisions." *Id.* at 1030. This Court had similarly concluded that even assuming the employee mandate regulates "conduct" in the abstract, it is still invalid because 5 U.S.C. § 7301 doesn't apply to "private behavior by civilian federal workers outside the context of their employment." *Feds for Medical Freedom*, 581 F. Supp. 3d at 834.

*Louisiana* highlighted the government's failure to provide a "dividing line" on the President's asserted power and described the "close nexus" test as "no line at all." 55 F.4th at 1031. The employee mandate presents the same problem. Like Plaintiffs did here, *Louisiana* pointed to examples like unilaterally requiring employees to "take birth control in order to reduce absenteeism." *Id.* at 1032. *Louisiana* further rejected the government's argument, also made here, that market forces prevent presidential overreach. *Id.* at 1028.

Moreover, *Louisiana* recognized that Congress "could have drafted vaccination-related laws or even made clear its intent regarding the President's proprietary authority," but it didn't. *Id.* at 1032. Congress didn't do so regarding employees, either.

4

And *Louisiana* affirmed an injunction against enforcement of the contractor mandate even though "'the Government has a much freer hand in dealing with *citizen employees and government contractors* than it does when it brings its sovereign power to bear on citizens at large.'" *Id.* (emphasis added). Even acknowledging the government's freer hand with federal employees, there still is no authority to mandate that they be vaccinated.

Like *Louisiana*, this case is not about "the federal *government*'s power, exercised properly, to mandate vaccination of its employees," but instead "whether the *President* can, with the stroke of a pen and without the input of Congress, require millions of federal employees to undergo a medical procedure." *Feds for Medical Freedom*, 581 F. Supp. 3d at 829.

The Fifth Circuit has made clear—in two different published opinions, one of which was issued by the *en banc* Court—that the President cannot do so.

Further, even setting aside the Fifth Circuit's decisions, this Court has already held that the President lacks authority to issue the employee mandate, and that holding was correct. None of the three statutory sources invoked by the government—5 U.S.C. §§ 3301, 3302, and 7301—provides the President with the asserted power, *Feds for Med. Freedom*, 581 F. Supp. 3d at 833–34, and at the Fifth Circuit, the government candidly acknowledged that "the statutes here are narrow in scope," CA5.Gov.Reply.Br.19.

Sections 3301 and 3302 appear in a subchapter of Title 5 entitled "Examination, Certification, and Appointment," and in a chapter entitled "Examination, Selection, and Placement," which confirms these statutes have no bearing on whether *existing* employees

5

can keep their jobs. *See Yates v. United States*, 574 U.S. 528, 540 (2015) (headings "supply cues" to interpreting statutes). And § 3302's authorization to "prescribe rules" must be interpreted in context of the entire statute, which demonstrates its limited reach to subjects like "exempt[ing] certain employees from civil-service rules and from certain reports and examinations, and … prohibit[ing] marital and disability discrimination." *Feds for Med. Freedom*, 581 F. Supp. 3d at 833. Thus, "not even a generous reading of the text provides authority for a vaccine mandate." *Id.*

Section 7301's authorization to issue rules regarding "conduct" similarly does not provide the President authority to issue vaccine mandates. Being vaccinated is not "conduct" in its commonly understood sense. *See* The American Heritage Dictionary of the English Language (1969) ("[t]he way a person acts; behavior"); Webster's American Dictionary of the English Language (1838) ("personal behavior; course of actions; deportment" or "[m]anagement; mode of carrying on"). A permanent and irreversible measure results in a status, not the regulation of conduct. *See Robinson v. California*, 370 U.S. 660, 666–67 (1962) (distinguishing status and conduct).

This Court also correctly held that *even assuming* the vaccine mandate regulates conduct, the vaccine mandate is still ultra vires because § 7301 is best read as authorizing regulation of *workplace and employment* conduct, and "[a]ny broader reading would allow the President to prescribe, or proscribe, certain private behavior by civilian federal workers outside the context of their employment." *Feds for Med. Freedom*, 581 F. Supp. 3d at 834. The government has claimed there is no textual limitation to employment conduct, but that

6

is wrong. Section 7301 expressly references conduct for those "in the executive branch," indicating a clear tie to conduct in their executive branch capacity.

Nor does the President have Article II authority to impose the employee mandate. *Feds for Med. Freedom*, 581 F. Supp. 3d at 834–35. The government's refusal to argue that any part of the CSRA is unconstitutional forecloses reliance on inherent Article II power to circumvent the strictures of that statute. In any event, there is no prior example of any President in the Nation's history invoking inherent Article II authority to impose medical procedures of any type on civilian employees—let alone *every* employee. "The dearth of analogous historical examples is strong evidence that [the provision] does not contain such a power," especially given that "the threat of absenteeism is hardly unique to COVID-19." *Kentucky v. Biden*, 23 F.4th 585, 608 (6th Cir. 2022); *see FTC v. Bunte Brothers, Inc.*, 312 U.S. 349, 352 (1941).

\* \* \*

The Court should enter summary judgment in favor of Plaintiffs on Counts 1 and 2, and issue declaratory relief on those Counts pursuant to Count 7.

### B.     Permanent Injunctive Relief

The Court should also enter permanent injunctive relief against the enforcement of the vaccine mandates previously imposed under Executive Orders 14,042 and 14,043. To obtain a permanent injunction, a party must show "(1) that it has suffered an irreparable injury; (2) ... monetary damages are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in

7

equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013).

The Fifth Circuit's decisions agreed that each of these factors was satisfied in the context of Executive Orders 14,042 and 14,043. *See Louisiana*, 55 F.4th at 1033–35; *Feds for Med. Freedom*, 63 F.4th at 387. Indeed, Plaintiffs have amply documented irreparable harm from both Executive Orders. *See* ECF Nos. 3-12 to 3-32; ECF Nos. 13-1 to 13-2; ECF Nos. 16-1 to 16-3; ECF No. 35-1. Nothing has changed in the meantime, except that Defendants can no longer claim any inequity or harm to the public from a permanent injunction, given that this Court's preliminary injunction has been in place for well over a year and Defendants have chosen to withdraw the mandates, at least for the moment (as discussed further below).

In terms of scope, the injunction against Executive Order 14,042 should extend relief to all Plaintiffs, including all members of the associational and corporate Plaintiffs. *See Warth v. Seldin*, 422 U.S. 490, 515 (1975). And the injunction against Executive Order 14,043 should remain nationwide, consistent with the Fifth Circuit's decision affirming the scope of this Court's preliminary injunction. The Fifth Circuit listed several reasons why a nationwide injunction against enforcement of Executive Order 14,043 was appropriate in these unique circumstances:

> The [district] court carefully carved the President out of its injunction, which is an obviously imperfect analogue to the English king but an equally obvious good-faith recognition of the rule. It also recognized that, unlike the plaintiffs in both *New York* and *Hawaii*, the lead plaintiff in this case has over 6,000 members spread across every State in the Nation and nearly every federal agency in the entire Government.

8

> ROA.1770. And plaintiffs cited multiple instances in the aftermath of Executive Order 14043 where the Government wrongfully targeted unvaccinated federal employees who sought exemptions—despite assurances from the Government that it would not do so. ROA.1454, 1464, 1600, 1625, 1645. The court therefore expressed its "fears that limiting the relief to only those before it would prove unwieldy and would only cause more confusion." ROA.1770. On this record and absent binding precedent from the Supreme Court, we cannot say that the district court abused its discretion in rejecting the Government's assurances that it could and would comply with an injunction limited to the plaintiffs' members.

*Feds for Med. Freedom*, 63 F.4th at 387–88.

None of those concerns about limiting the scope of injunctive relief has changed in the meantime. If anything, they have grown, as Feds for Medical Freedom's membership has expanded, making it all the more difficult to try and tailor relief to the approximately 8,000 members now scattered across nearly every federal agency and located in every state and many foreign countries. Moreover, given that Defendants have now voluntarily withdrawn the mandates, there is no reason for them to oppose maintaining the status quo by permanently enjoining enforcement nationwide of Executive Order 14,043. Defendants cannot claim any interest in having that mandate go into effect in particular states or at particular agencies, nor can Defendants claim any benefit from having additional courts weigh in at this time.

Pursuant to Rule 65(d)(2), the injunctions should thus run against Defendants (except President Biden himself, against whom Plaintiffs do not seek injunctive relief); Defendants' "officers, agents, servants, employees, and attorneys"; and "other persons who

9

are in active concert or participation with anyone described in Rule 65(d)(2)(A)." Fed. R. Civ. P. 65(d)(2).

### C. Dismissing Counts 3 Through 6 Without Prejudice

Because Counts 3 through 6 seeking review of Executive Orders 14,042 and 14,043 under the Administrative Procedure Act are unnecessary at this point to provide Plaintiffs with relief, and this Court and the Fifth Circuit never resolved those claims, Plaintiffs request that the Court dismiss Counts 3 through 6 without prejudice.[1]

### III. Defendants' Voluntary Cessation Does Not Moot This Case.

Defendants oppose this requested relief and claim this case is moot because the President voluntarily ceased the offending conduct by withdrawing the mandates, effective at the end of the day on May 11, after suffering repeated losses in courts across the country.

"'[V]oluntary cessation does not moot a case' unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022). This means the government must demonstrate that it is "absolutely clear" there is no reasonable chance it "'reimpose[s]" vaccine mandates. *Id.*

The government cannot make that extraordinarily strong showing. Most notably, the announcement and new Executive Order withdrawing the mandates do not state Defendants will refrain from issuing such mandates in the future. *See* Exs.1–2. Nor do they disclaim the power to do so. In fact, they do not even acknowledge that the mandates were found unlawful by courts, let alone signal any form of acquiescence or agreement with

---

[1] Plaintiffs cannot use Rule 41 to voluntarily dismiss those specific claims. *See Williams v. Seidenbach*, 958 F.3d 341, 345 (5th Cir. 2020) (*en banc*).

those rulings. The announcement and new Executive Order thus provide no hints—let alone "absolute[]" confirmation, *West Virginia*, 142 S. Ct. at 2607—that repeated adverse court decisions have somehow chastened Defendants from issuing such mandates in the future.

Defendants maintained the mandates long after COVID-19 fatality figures had dropped dramatically, making clear that Defendants did not drop the mandates because of any new development or sudden change in that area. When the vaccine mandates were first imposed in September 2021, weekly death totals were just shy of 15,500 and had reached over 25,000 per week earlier in the pandemic.[2] But in Spring 2022 those totals dropped dramatically and have stayed relatively low since then. For example, totals topped 3,500 only *once* between April 20, 2022, and January 4, 2023, and were routinely below 3,000[3]— yet Defendants never suggested during that lengthy stretch that it was time to withdraw the mandates. In the week during which the White House first announced it would end the COVID-19 national emergency, *see* Ex.3, COVID-19 deaths were at 3,065 (week of February 8, 2023; announcement made February 10, 2023),[4] which represented a noticeable *upswing*.[5] There is no evidence to support a claim that the decision to end the vaccine mandates was actually because of any new decrease in COVID-19 figures, or—

---

[2] CDC, *COVID Data Tracker: Daily and Total Trends*, https://covid.cdc.gov/covid-data-tracker/#trends_weeklydeaths_select_00 (last visited May 12, 2023).

[3] *Id.*

[4] *Id.*

[5] *Id.*

11

more importantly—that low COVID-19 figures mean Defendants wouldn't re-issue the mandates in the future.

Even if there had been a noticeable decline in COVID-19 figures, that still would not moot the case. COVID-19 restrictions have often changed and expanded over time. The Safer Federal Workforce Task Force's update log demonstrates how frequently the federal government revised its COVID restrictions as the pandemic has cyclically waxed and waned. *See* Ex.4. And most importantly, the trend is not always towards relaxing restrictions. Numerous jurisdictions reimposed COVID-19 restrictions even after lengthy pauses or withdrawals of prior restrictions.[6] Withdrawing a mandate today hardly means it won't be reimposed down the road.

The risk of the government restarting its prior behavior is even greater here than in other contexts because of the ease with which Defendants could reimpose the mandates.

---

[6] *See, e.g.*, Tyler Clifford, *Philadelphia to Reimpose Indoor Mask Mandate in Public Spaces*, REUTERS, Apr. 11, 2022, https://www.reuters.com/world/us/philadelphia-reimpose-indoor-mask-mandate-public-spaces-2022-04-11/; Alexandra E. Petri, *Some Universities and Schools in the U.S. Are Reimposing Indoor Mask Mandates*, N.Y. TIMES, May 25, 2022, https://www.nytimes.com/live/2022/05/25/world/covid-19-mandates-vaccine-cases#masks-hawaii-delaware; Nathaniel Weixel, *DC to Reimpose Indoor Mask Mandate After COVID Infections Rise*, THE HILL, Dec. 20, 2021, https://thehill.com/homenews/state-watch/586588-dc-to-reimpose-indoor-mask-mandate-after-covid-infections-rise/; *Austria Reimposes Full Covid Lockdown, Makes Vaccination Compulsory*, REUTERS, Nov. 19, 2021, https://www.nbcnews.com/news/world/austria-reimposes-full-covid-lockdown-makes-vaccination-compulsory-rcna6103; *Illinois Governor Reinstates Indoor Mask Mandate, Announces Vaccine Requirement for Educators*, KCRG, Aug. 26, 2021, https://www.kcrg.com/2021/08/26/illinois-governor-reinstates-indoor-mask-mandate-announces-vaccine-requirement-educators/; *see also* Christine Mai-Duc, *Los Angeles Halts Plans to Reimpose Mask Mandate as COVID-19 Cases Decline*, WALL ST. J., July 28, 2022, https://www.wsj.com/articles/los-angeles-halts-plans-to-re-impose-mask-mandate-as-covid-19-cases-decline-11659048736 (noting Los Angeles dropped mandate, then announced reinstatement, then changed once again).

All it takes is "the stroke of a pen." *Feds for Med. Freedom*, 581 F. Supp. 3d at 829. Defendants thus could institute mandates at a moment's notice—unless, of course, this Court has issued permanent injunctions prohibiting them.

Finally, Defendants have vigorously fought all litigation against the mandates, including long after suffering repeated losses across the country. For example, barely two weeks ago, Defendants asked the Supreme Court to extend the deadline to seek *certiorari* on its contractor mandate loss in the Sixth Circuit, and the new deadline will not expire for nearly another month. *See Biden v. Kentucky*, No. 22A859 (U.S.), https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/22a859.html (extending deadline to June 9, 2023). DOJ's request for an extension was submitted just three days before the White House formally announced it would withdraw the mandates, and months after it had indicated the COVID-19 emergency would end on May 11. The withdrawal decision was surely baked by that time, yet DOJ nonetheless sought to preserve its right to keep fighting all the way to the Supreme Court, even after the mandates are withdrawn. In short, withdrawing the mandates now is certainly not because of a lack of interest among Defendants in defending such mandates in court or unilaterally imposing them in the future.

For all these reasons, the government cannot meet the exceedingly high bar for overcoming voluntary cessation. The case is therefore not moot.

## CONCLUSION

The Court should lift its stay; grant summary judgment in Plaintiffs' favor and against Defendants on Counts 1 and 2, and issue declaratory relief on those Counts pursuant

13

to Count 7; dismiss Counts 3 through 6 without prejudice; and issue permanent injunctions against enforcement of the vaccine mandates previously imposed under Executive Orders 14,042 and 14,043.

Dated: May 12, 2023

Respectfully submitted,

/s/ R. Trent McCotter
R. TRENT MCCOTTER*
  So. Dist. No. 3712529
  Texas Bar No. 24134174
JONATHAN BERRY (*pro hac vice*)
MICHAEL BUSCHBACHER (*pro hac vice*)
JARED M. KELSON (*pro hac vice*)
BOYDEN GRAY & ASSOCIATES
801 17th St. NW, #350
Washington, DC 20006
(202) 706-5488
mccotter@boydengrayassociates.com

* ATTORNEY-IN-CHARGE

## CERTIFICATE OF WORD AND PAGE COUNTS

I hereby certify that the total number of words in this document, exclusive of those sections designated for omission, is 4038 words, as registered by Microsoft Word. I further certify that this document, exclusive of those sections designated for omission for word limit purposes, is 14 pages. I further certify that this document is in size 13 Times New Roman font.

/s/ R. Trent McCotter

R. Trent McCotter

## CERTIFICATE OF SERVICE

I certify that on May 12, 2023, a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) and served on all counsel of record.

/s/ R. Trent McCotter

R. Trent McCotter

## CERTIFICATE OF CONFERENCE

I certify that from April 21 to May 12, 2023, counsel for Plaintiffs and Defendants communicated via e-mail regarding the relief requested in this motion. Defendants oppose the relief requested.

/s/ R. Trent McCotter

R. Trent McCotter